# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**   **2. PLEASE TYPE OR PRINT**   **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: Balwinder Singh v. The City of New York, et al. | District Court or Agency: Eastern District | Judge: Hon. Eric R. Komitee |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket: December 6, 2022 | District Court Docket No.: 19CV00632 |
| | Date the Notice of Appeal was Filed: January 4, 2023 | Is this a Cross Appeal? ☐ Yes ☑ No |

**Attorney(s) for Appellant(s):**
☑ Plaintiff  ☐ Defendant

Counsel's Name: Joshua Fitch, Cohen & Fitch LLP
Address: 233 Broadway Suite 900 NY, NY 10279
Telephone No.: 212-374-9115
Fax No.: 332-777-2172
E-mail: jfitch@cohenfitch.com

**Attorney(s) for Appellee(s):**
☐ Plaintiff  ☑ Defendant

Counsel's Name: Sylvia Hinds-Radix, Corporation Counsel
Address: 100 Church Street NY, NY 10007
Telephone No.: 212-356-0800
Fax No.:
E-mail:

Has Transcript Been Prepared? NO

Approx. Number of Transcript Pages:

Number of Exhibits Appended to Transcript:

Has this matter been before this Circuit previously? ☐ Yes ☑ No

If Yes, provide the following:

Case Name:

2d Cir. Docket No.:

Reporter Citation: (i.e., F.3d or Fed. App.)

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

1. Federal Jurisdiction

☐ U.S. a party
☑ Federal question (U.S. not a party)
☐ Diversity
☐ Other (specify): _____

2. Appellate Jurisdiction

☑ Final Decision
☐ Interlocutory Decision Appealable As of Right
☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))
☐ Other (specify): _____

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| [✓] Pre-trial<br>[ ] During trial<br>[ ] After trial | [ ] Default judgment<br>[ ] Dismissal/FRCP 12(b)(1)<br>  lack of subject matter juris.<br>[ ] Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal<br><br>[ ] Dismissal/other jurisdiction<br>[✓] Dismissal/merit<br>[✓] Judgment / Decision of the Court<br>[✓] Summary judgment<br>[ ] Declaratory judgment<br>[ ] Jury verdict<br>[ ] Judgment NOV<br>[ ] Directed verdict<br>[ ] Other (specify): | [✓] Damages:    [ ] Injunctions:<br><br>[✓] Sought: $ TBD  [ ] Preliminary<br>[ ] Granted: $ _____  [ ] Permanent<br>[ ] Denied: $ _____  [ ] Denied |

**PART C: NATURE OF SUIT (Check as many as apply)**

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| [ ] Antitrust<br>[ ] Bankruptcy<br>[ ] Banks/Banking<br>[✓] Civil Rights<br>[ ] Commerce<br>[ ] Energy<br>[ ] Commodities<br>[ ] Other (specify): _____ | [ ] Communications<br>[ ] Consumer Protection<br>[ ] Copyright □ Patent<br>[ ] Trademark<br>[ ] Election<br>[ ] Soc. Security<br>[ ] Environmental | [ ] Freedom of Information Act<br>[ ] Immigration<br>[ ] Labor<br>[ ] OSHA<br>[ ] Securities<br>[ ] Tax | [ ] Admiralty/<br>  Maritime<br>[✓] Assault /<br>[ ] Defamation<br>[ ] FELA<br>[ ] Products Liability<br>[✓] Other (Specify):<br><br>**Battery** | [ ] Admiralty/<br>  Maritime<br>[ ] Arbitration<br>[ ] Commercial<br>[ ] Employment<br>[ ] Insurance<br>[ ] Negotiable<br>  Instruments<br>[ ] Other Specify | [ ] Civil Rights<br>[ ] Habeas Corpus<br>[ ] Mandamus<br>[ ] Parole<br>[ ] Vacate Sentence<br>[ ] Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| [ ] Hague Int'l Child Custody Conv.<br>[ ] Forfeiture/Penalty<br>[ ] Real Property<br>[ ] Treaty (specify): _____<br>[ ] Other (specify): _____ | [ ] Arbitration<br>[ ] Attorney Disqualification<br>[ ] Class Action<br>[ ] Counsel Fees<br>[ ] Shareholder Derivative<br>[ ] Transfer | [✓] Yes    [ ] No<br><br>Will appeal raise a matter of first impression?<br><br>[ ] Yes    [✓] No |

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?    [ ] Yes   [✓] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?   [ ] Yes   [✓] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

| Date: 1/18/2023 | Signature of Counsel of Record: |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

*ADDENDUM "A":*

**(1)     Nature of the Action.**

**    *Background Facts***

    Plaintiff Balwinder Singh suffered violations of his constitutional rights in connection with defendants' acts of false arrest and unprovoked and unjustified excessive force. The defendants are, respectively, Police Officer Mandeep Cheema and the City of New York.

## FACTUAL BACKGROUND

    In the early morning hours of February 28, 2018, police were called to plaintiff's residence by plaintiff's wife out of concern that plaintiff had consumed too much alcohol and needed to go to the hospital. Shortly thereafter, in response to his wife's phone call, two EMS workers arrived at plaintiff's home. Following their arrival, the EMS workers evaluated plaintiff and determined that he had to go to the hospital for further observation even though plaintiff was exhibiting no objective signs of needing medical attention or of physically harmful behavior to himself or others. When plaintiff refused their request to go to the hospital voluntarily, the EMS workers called the police to assist in removing plaintiff the hospital.

    At approximately 7:00 a.m., defendant officer Cheema as well as two non-party officers arrived and entered plaintiff's home. After approximately eight (8) minutes of calm interaction with plaintiff where plaintiff had exhibited no signs of aggression or violence, defendant Cheema nevertheless informed plaintiff that he had no choice about going to the hospital and that he could either go voluntarily without handcuffs or be forcibly handcuffed and taken involuntarily. Plaintiff reluctantly agreed to go voluntarily, however, as plaintiff was in the process of leaving his house, and despite exhibiting no signs of aggressive or threatening behavior, defendant Cheema suddenly grabbed plaintiff without warning and violently slammed him to the ground with the full weight of his six-foot-three, 265-pound frame on top of plaintiff. As a result, plaintiff severely injured his shoulder and suffered other physical injuries. Plaintiff was never formally charged or prosecuted with any crime nor was plaintiff ever alleged to have engaged in any criminal behavior that night. All relevant portions of this incident were captured by surveillance video within plaintiff's home.

**    *Procedural History***

    Plaintiff commenced this action on February 1, 2019, alleging constitutional violations under 42 U.S.C. § 1983 sounding in excessive force and false arrest. Following the completion of discovery, on July 12, 2021, plaintiff moved for summary judgment on the excessive force claim, and on September 24, 2021, defendants cross-moved for summary judgment on the excessive force (state law assault and battery) and false arrest claims. On April 9, 2022, the District Court referred both motions to Magistrate Judge

Steven Tiscione for Report and Recommendation ("R&R). On June 28, 2022, Magistrate Judge Tiscione issued a R&R recommending that plaintiff's motion for summary judgment and the portion of defendants' motion for summary judgment on the claim of excessive force (and state law claims for assault and battery) be denied and proceed to trial. However, the R&R also recommended that the portion of defendants' motion for summary judgment on the claim of false arrest be granted and that claim be dismissed (copy of the R&R annexed hereto as Exhibit 1). Following the R&R, neither party filed any objections.

Nonetheless, the District Court *sua sponte* conducted *de novo* review of the R&R; and, on September 30, 2022, the District Court issued a Memorandum and Order adopting the portion of the R&R recommending dismissal of plaintiff's false arrest claim but rejecting the portion of the R&R recommending denial of defendants' motion for summary judgment on the excessive force claim (state law assault and battery claims) and dismissed those claims (copy annexed hereto as Exhibit 2). The Clerk then entered Judgment on that Order on December 6, 2022 (copy annexed hereto as Exhibit 3).

**The Result Below.**

As relevant to this appeal, by Memorandum and Order dated September 30, 2022, and Judgment on that Order dated December 6, 2022, the District Court denied plaintiff's motion for summary judgment on excessive force and granted defendants' motion for summary judgment in its entirety, finding that there was probable cause for plaintiff's arrest and that the use of force on plaintiff was justified as a matter of law, dismissing plaintiffs' case.

**(2)     Copy of the Notice of Appeal and Current Docket Sheet**

A copy of plaintiff's Notice of Appeal, dated and filed January 4, 2023, is annexed hereto as Exhibit 4.  A current copy of the docket sheet from the District Court is annexed hereto as Exhibit 5.

**(3)     Copy of Relevant Opinions/Orders Including Transcripts**

As reflected in sections 1 and 2 above, copies of the relevant opinions and orders set forth below are annexed hereto as Exhibits 1-3.

Annexed hereto as Exhibit 1 is a copy of the Magistrate Judge's REPORT AND RECOMMENDATION dated June 28, 2022.

Annexed hereto as Exhibit 2 is a copy of the District Court's MEMORANDUM AND ORDER dated September 30, 2022.

Annexed hereto as Exhibit 3 is a copy of the District Court's JUDGMENT dated December 6, 2022.

*ADDENDUM "B":*

## I.    Issues Presented on Appeal.

1.       Whether the District Court Order on Summary Judgment improperly dismissed plaintiff's state and federal causes of action for excessive force, assault and battery on the basis of reasonableness and justification?

2.       Whether the District Court Order on Summary Judgment improperly dismissed plaintiff's state and federal causes of action for excessive force, assault and battery on the basis of qualified immunity?

3.       Whether the District Court Order/Magistrate Report Recommendation on Summary Judgment improperly dismissed plaintiff's federal cause of action for false arrest?

4.       Whether the District Court Order/Magistrate Report and Recommendation on Summary Judgment improperly resolved factual disputes, weighed evidence and drew inferences against plaintiff in contravention of the summary judgment standard?

## II.    Standard of Review

All issues described above are subject to a *de novo* standard of review.

# EXHIBIT

## "1"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

BALWINDER SINGH,

                              Plaintiff,

       -against-

THE CITY OF NEW YORK, P.O. MANDEEP
CHEEMA, Tax Id. No. 950196, Individually and in his
Official Capacity, and POLICE OFFICERS "JOHN
DOE" #1-10, Individually and in their Official Capacity
(the name John Doe being fictitious, as the true names are
presently unknown),

                           Defendant.

-----------------------------------------------------------X

<u>**REPORT AND RECOMMENDATION**</u>

**19-CV-00632 (EK) (ST)**

**TISCIONE, United States Magistrate Judge:**

On February 1, 2019, Balwinder Singh ("Plaintiff") filed a Complaint against the City of

New York, and Police Officers Mandeep Cheema and John Doe #1-10 (collectively,

"Defendants"). Plaintiff alleged, *inter alia*, claims for false arrest and excessive force in

violation of the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983;

and claims for false arrest, assault, and battery under New York law. Now before this Court are

(1) Plaintiff's Motion for Summary Judgment on the excessive force claim; and (2) Defendants'

Cross-Motion for Summary Judgment on excessive force, false arrest, and New York law claims.

The Honorable Eric Komitee referred the Motions to the undersigned to issue a Report and

Recommendation.

For the reasons stated below, this Court respectfully recommends that (1) Plaintiff's

Motion for Summary Judgment be denied; and (2) Defendants' Cross-Motion for Summary

Judgment be granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

Plaintiff, an Indian American male, is a resident of Queens, New York. Compl. ¶ 6.

Defendant City of New York is a municipal corporation that maintains New York City Police Department ("NYPD"). Police Officers Mandeep Cheema and John Doe #1-10 are employed by NYPD. *Id*. ¶¶ 7-10.

On February 28, 2018, around mid-night, Plaintiff was shopping when he ran into an old friend. Pl.'s Mot. at 1; Pl.'s Dep. Tr. at 31, Ex. A, DE 46. Plaintiff's friend asked him to join him for a beer and Plaintiff agreed. *Id*. On the way home, Plaintiff purchased a pack of six beers. *Id*. When Plaintiff reached home, he continued to drink beer throughout the night in his living room. *Id*. Admittedly, Plaintiff consumed at least four beers that night. Pl.'s Dep. Tr. at 34. Notably, in 2004, Plaintiff received treatment for alcohol abuse and had been sober for many years. Pl.'s Mot. at 1.

At approximately 6:15 a.m., Plaintiff's wife found Plaintiff in an intoxicated state. *Id*. at 2. Out of concern for Plaintiff's health, his wife called 911 to request medical attention. *Id*.; Defs.' Cross Mot. at 3. Upon receiving the medical request, the 911 operator immediately transferred Plaintiff's wife to the Emergency Medical Services ("EMS"). *Id*.

At approximately 6:30 a.m., two EMS workers or Emergency Medical Technicians ("EMT"), Nicole Milonas and Marisabel Schiapira, arrived at Plaintiff's residence from Jamaica Hospital Medical Center ("JHMC"). *Id*. The EMTs found Plaintiff to be intoxicated and determined that he needed medical evaluation. *Id*. Even though Plaintiff refused to go to the hospital, the EMTs concluded that he needed medical evaluation because his wife had previously stated that "[he] [was] a harm to himself" and also because Plaintiff was "non-cooperative with

2

[the EMTs'] questioning." *Id.*  EMT Milonas further noted that Plaintiff showed aggressiveness in his response to their questioning, yelled profanities, and belligerently approached the EMTs, but he was otherwise not violent towards anyone and did not physically assault anyone.  *Id.*; Milonas Dep. Tr. at 49, Ex. E, DE 46.  Because Plaintiff refused to go to the hospital voluntarily, EMT Milonas called the police for assistance.  Defs.' Cross Mot. at 3.  It is undisputed that Plaintiff had a Glasgow Coma Score of 15, which indicated that he had the mental capacity to refuse medical attention at that time.  Pl.'s Mot. at 2; PHC Report, Ex. L, DE 48.

At approximately 7:00 a.m., Cheema and his fellow Police Officers, Justin Davis and Malinda Walker (collectively, "Police Officers"), entered Plaintiff's residence.  Pl.'s Mot. at 3.  After initially trying to convince Plaintiff to voluntarily go to the hospital, Cheema finally told Plaintiff that he had no choice and that he would be taken to the hospital one way or the other.  *Id.* at 4; Cheema Dep. Tr., Ex. C at 85-86, DE 46.  Specifically, Cheema told Plaintiff that he could either go voluntarily, without handcuffs or the Police Officers would forcibly handcuff Plaintiff and take him to the hospital.  Pl.'s Mot. at 4.  Plaintiff agreed to go voluntarily.  *Id.* at 5.

As Plaintiff readied himself and stood near the front door of his apartment, surrounded by all three Police Officers, he jokingly stated that he no longer wanted to go to the hospital.  *Id.*  Plaintiff then put his arms behind his back and jokingly stated the Police Officers should "handcuff [him]." Pl.'s Mot. at 5-6; Cheema Dep. Tr. at 165, Ex. C, DE 46.  As Officer Cheema approached Plaintiff to handcuff him, Plaintiff then brought his hands forward to the front of his body, smiled back at Officer Cheema, and said, "I'm just joking.  You're not going to handcuff me," after which Plaintiff took a step forward towards the door where Officer Walker was standing.  Pl.'s Mot. at 6; Cheema's Dep. Tr. at 102; Video, Ex. G(1) at 7:57-8:03; Ex. G(2); Ex. G(3)).  At that point, Cheema grabbed Plaintiff from behind, wrapped his arms across Plaintiff's

chest in a seatbelt hold, and took Plaintiff to the ground. Defs.' Rule 56.1 St., ¶ 102-105; Pl.'s Mot. at 7. Cheema then handcuffed Plaintiff, with Davis' assistance. *Id.* Cheema believed Plaintiff had taken a "sudden" step towards Walker, who was standing against the front door. Cheema Dep. Tr. at 103, Ex. C, DE 46; Defs.' Mot. at 4.

After Plaintiff was handcuffed, all three Police Officers assisted him to his feet. Defs.' Rule 56.1 St. ¶ 106. Plaintiff was then escorted out of the location and transported to JHMS. *Id.* ¶¶ 110-111. At approximately 8 a.m., Plaintiff's blood alcohol level was still approximately three times the legal driving limit. *Id.* ¶¶ 112-114. Officer Cheema left Plaintiff in the care of JHMC shortly after his arrival. *Id.* ¶ 117. Plaintiff was discharged from JHMC at approximately 3 p.m. the same day. *Id.* ¶ 119.

Cheema testified that his actions, including taking Plaintiff to the ground, were "based off of everything that happened from the time that [they] got in and to that very moment, and the different levels of escalation." Defs.' Rule 56.1 St. ¶¶ 81-82. Plaintiff, on the other hand, highlights the impact of his fall and Cheema's weight of two hundred sixty-five-pounds and height of six feet and three inches with which he slammed Plaintiff to the ground. Cheema Dep., Ex. C at 7, DE 46; Pl.'s Mot. at 3. As a result of the fall, Plaintiff landed directly on his right shoulder, which had previously been injured in a car accident he had in 2010, and also hit his head on the ground. Pl.'s Mot. at 7. The fall caused Plaintiff to suffer an abrasion to his head and exacerbated his previous injuries. *Id.*; *see* Plaintiff's Expert Reports, Cohen Dec., Ex. K; Photographs of Plaintiff's Face Injury, Cohen Dec., Ex. L.

### B. Procedural History

On February 1, 2019, Plaintiff filed a Complaint against Defendants. DE 1. The Complaint alleged claims for excessive force, false arrest, and failure to intervene in violation of

the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983 and claims for false arrest, assault and battery, intentional infliction of emotional distress, and negligent hiring, training, or retention under New York law. *Id.*

On November 29, 2021, Plaintiff filed his Motion for Summary Judgment for excessive force and Defendants filed their Cross-Motion for Summary Judgment for excessive force, false arrest, failure to intervene, and New York law claims for assault, battery, negligent hiring and retention, and intentional infliction of emotional distress. DE 46-48. Plaintiff withdrew the federal law claim for failure to intervene and the state law claims for negligent hiring and retention, and intentional infliction of emotional distress. *See* Pl.'s Opp., n. 17 at 27.

On April 9, 2022, The Honorable Eric Komitee referred the Motions to the undersigned to issue a Report and Recommendation. *See* Order Referring Motion, DE dated Apr. 9, 2022.

## II.    JURISDICTION

This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth Amendment to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## III.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor

of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

## IV. DISCUSSION

### A. Reasonableness of Cheema's Use of Force under 42 U.S.C. § 1983 is a Question for the Factfinder

Plaintiff moves for summary judgment on his claim for Cheema's use of excessive force when he slammed Plaintiff to the ground. Defendants cross-move for summary judgment on Plaintiff's claim for excessive force.

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d. Cir. 2006); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). "Determining excessiveness requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Douglas v. City*

*of New York*, 730 Fed. Appx. 12, 16 (2d Cir. 2018) (citing *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *See Graham* v. Connor, 490 U.S. 386, 395 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  The reasonableness of force can only be determined based on an assessment of the totality of the circumstances.  *See Graham*, 490 U.S. at 395; *Sullivan v. Gagnier*, 225 F. 3d 161, 165 (2d Cir. 2000).

When determining whether police officers have employed excessive force, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham*, 490 U.S. at 397.  The touchstone of the inquiry is reasonableness, and in measuring it, the courts consider factors "including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas*, 165 F.3d at 143.  Indeed, the Supreme Court has further elaborated that it does "not consider this list to be exclusive," stating "[w]e mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Excessive force claims require an objective assessment of the reasonableness of any force "at the moment" it was used. *Graham*, 490 U.S. at 396-97.  Indeed, the Supreme Court has cautioned that in analyzing excessive force claims, courts must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

Here, Plaintiff neither committed any crime nor violated any law nor resisted arrest. Defendants' primary contention is that Plaintiff took a step towards Officer Walker that seemed to be a potential physical threat. Though the Second Circuit has not yet ruled on the issue, many courts have viewed the "immediate threat to the safety of the officers or others" as the most important *Graham* factor. *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2019 WL 2785594 at 18 (D. Conn. July 2, 2019); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994); *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (this factor "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force"). It is this factor in particular that "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015).

The Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture because there are disputed issues of material fact that preclude a grant of summary judgment. The reasonableness of the use of force is to be judged in light of the facts and circumstances with which an officer is presented. *Graham*, 490 U.S. at 397. And here, Cheema's use of force used against Plaintiff was deployed as an instantaneous response to a potential safety threat he posed against Walker. At the moment force was applied, Cheema believed that Plaintiff posed a potential physical threat to Walker or others. Cheema Dep. Tr. at 103, Ex. C, DE 46; Defs.' Mot. at 4. It is undisputed that no force was used against Plaintiff up to the point where he made a sudden movement toward Officer Walker. When Plaintiff jokingly avoided arrest and took a step while raising his hands towards the front door of his apartment where Walker stood, Cheema took Plaintiff to the floor. Cheema's observations led him to

believe that Plaintiff was intoxicated, erratic, and belligerent. In that moment, Cheema made a split-second determination to take Plaintiff to the ground. *Smith v. City of New Haven*, 166 F. Supp. 2d 636, 643 (D. Conn. 2001) (concluding on summary judgment that there was a genuine issue of material fact as to whether officers used excessive force when they "forced [the plaintiff] to the ground, face down," and when one of the officers then "sat on his back"); *Rogoz*, 796 F.3d at 248 (holding that "[t]he question of [Plaintiff's] credibility was a matter for the factfinder; it was not a matter that the court could properly resolve on a motion for summary judgment.").

Upon reviewing Plaintiff's Motion for Summary Judgment, were a jury to view evidence in favor of non-movants/Defendants, it could reasonably conclude that Cheema used a reasonable amount of force because Plaintiff posed a threat towards his fellow Police Officers. On Defendants' Cross-Motion, were a jury to credit evidence in favor of Plaintiff, it could reasonably conclude that when Cheema pushed Plaintiff to the ground, he used an unreasonable amount of force. *See e.g.*, *Rogoz*, 796 F.3d at 248 (denying summary judgment because factual issues existed as to whether arrestee had been complying with arresting officer's directions); *Baker v. City of New York*, 551 F.Supp.3d 258 (S.D.N.Y. 2021) (Viewing the evidence "in the light most favorable" to Plaintiff and drawing "all reasonable inferences in its favor, […] the Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.")

Thus, this Court respectfully recommends that Plaintiff's Motion and Defendants' Cross

Motion for Summary Judgment be denied because there are genuine issues of fact as to the

reasonableness of Cheema's use of force against Plaintiff.

### B. Officer Cheema had Probable Cause to Arrest Plaintiff

Defendants moves for summary judgment on Plaintiff's false arrest claims under 42

U.S.C. § 1983 and New York law.

The Fourth Amendment of the United States Constitution provides a right to be free from

unreasonable seizures, which includes the right to be free from arrest without probable cause.

*See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Probable cause to arrest is justification,

and "is a complete defense to an action for false arrest." *Id.* (quoting *Bernard v. United States*, 25

F.3d 98, 102 (2d Cir. 1994)); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.

1995); *Broughton v. State,* 37 N.Y.2d 451, 458 (1975).  Probable cause depends on the "totality

of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 233 (1983).  "In sum, probable cause does

not demand any showing that a good-faith belief be correct or more likely true than false."

*Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citing *Texas v. Brown*, 460 U.S. 730, 742

(1983)).

The elements of a false arrest claim under §1983 are analogous to those under New York

law.[1]  *Id.*; *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (a § 1983 claim

for false arrest that is alleged to have occurred in New York is "substantially the same as a claim

---

[1]The Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  "Claims are part of the same case or controversy if they derive from a common nucleus of operative fact[s]." *SAT Int'l Corp. v. Great White Fleet (US) Ltd.*, No. 03-CV-7481, 2006 WL 661042, at 5 (S.D.N.Y. Mar. 16, 2006) (citation omitted).  Here, Plaintiff's state and federal claims arise out of a common nucleus of operative facts, namely, Plaintiff's seizure and transportation to JHMS.

for false arrest under New York law); *Hygh v Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (the elements of a claim of false arrest under § 1983 are "substantially the same as the elements of a false arrest claim under New York law). Under federal and state law, a plaintiff bringing a false arrest and/or false imprisonment claim must demonstrate that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Hatcher v. City of New York*, 15-CV-7500 (VSB), 2018 WL 1583036 at 3 (S.D.N.Y. Mar. 27, 2018); *Singer*, 63 F.3d at 118. With respect to both the constitutional claim and the state law, probable cause operates as a complete defense. *Weyant*, 101 F.3d at 852.

Here, it is undisputed that Defendants intended to confine Plaintiff, Plaintiff was conscious of the confinement, and Plaintiff did not consent to the confinement. At issue is whether Plaintiff's arrest was privileged and whether Defendants had probable cause to arrest Plaintiff.

New York Mental Hygiene Law ("NYMHL") provides that "[a] person who appears to be incapacitated by alcohol and/or substances to the degree that there is likelihood to result in harm to the person or to others may be taken by…a police officer…to a treatment facility for purposes of receiving emergency services." *Ortiz v. City of N.Y.*, No. 15 Civ. 2206 (DLC), 2016 WL 7009059 at 2 (S.D.N.Y. Nov. 30, 2016) (citing N.Y. Mental Hyg. Law § 22.09(b)(2)). A person is "incapacitated" if he or she "as a result of the use of alcohol and/or substances, is unconscious or has his or her judgment otherwise so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment." *Id*. § 22.09(a)(2). Under NYMHL, the terms "likely to result in harm" or "likelihood to result in harm" are specifically defined as:

11

a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (ii) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

NYMHL § 22.09(a)(3). In interpreting this statute, courts have concluded that a "showing of probable cause in the mental health context requires only probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015), aff'd, 665 Fed. App'x. 49 (2d Cir. 2016); *Dunkelberger v. Dunkelberger*, No. 14–CV–3877 (KMK), 2015 WL 5730605, at 12 (S.D.N.Y. Sept. 30, 2015). Whether a person seized pursuant to the NYMHL is later found to be mentally competent and released is irrelevant to the probable cause analysis. *See Bayne v. Provost*, No. 1:04 CV 44, 2005 WL 1871412 at 7 (N.D.N.Y. Aug. 4, 2005).

Consequently, "[a] warrantless seizure [under NYMHL] for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (citation omitted). In such instances, the relevant probable cause inquiry "is whether the facts and circumstances known to the [officers] at the time they determined to take Plaintiff into custody were sufficient to warrant a person of reasonable caution in the belief that Plaintiff might be […] conducting himself in a manner [ ] likely to result in serious harm to himself as those terms are defined by the MHL." *Burdick v. Johnson*, No. 1:06–CV–1465 (LEK/RFT), 2009 WL 1707475 at 6 (N.D.N.Y. June 17, 2009) (internal citations omitted).

Here, the circumstances known to Cheema indicated that Plaintiff was heavily intoxicated to the point that he might pose a danger to himself or others. First, Plaintiff's wife called 911 to

request medical attention.  Defs.' Rule 56.1 St., ¶¶ 61-64, 91.  Plaintiff's wife reported that

Plaintiff was heavily intoxicated and that he was a harm to himself even though she later testified

that her intention was to convey that Plaintiff's health was at risk.  *Id*. ¶ 67.  Second, the EMTs

determined, based on their own observations, that Plaintiff was intoxicated and needed medical

evaluation.  The EMTs felt unsafe based on Plaintiff's aggressive movements toward them and

requested police assistance.  *Id*. ¶¶ 68-73.  The EMTs told the Police Officers that Plaintiff was

uncooperative towards their questioning and that he needed to go to the hospital for treatment.

*Id*.  Third, Cheema's own observations of Plaintiff's intoxication led him to conclude that

Plaintiff was too intoxicated to care for himself.  Cheema observed that Plaintiff was drunk and

incoherent.  *Id*. ¶¶ 72, 75-76.  Cheema also overheard Plaintiff making threats toward his wife in

his native language, Punjabi.  *Id*. ¶¶ 88-89.  Ultimately, while attempting to "jokingly" avoid

arrest, Plaintiff took a step towards the front door where Walker stood, at which point, Cheema

believed that Plaintiff posed a potential physical threat and took him to the ground to arrest him.

Pl.'s Mot. at 6; Cheema's Dep. Tr. at 102.  Based on these facts, a reasonable officer could have

concluded there was probable cause to believe Plaintiff was incapacitated within the meaning of

NYMHL § 22.09 and needed to be transported to the hospital for treatment.  See e.g., *Vallen v.*

*Connelly*, No. 99 Civ. 9947(SAS), 2004 WL 555698 at 8-9 (S.D.N.Y. Mar. 19, 2004) (holding

that the defendants had probable cause to arrest the plaintiff under the NYMHL because he

posed as danger to himself or others); *Burdick*, 2009 WL 1707475 at 6 (holding that probable

cause to arrest the plaintiff existed because he could have been a potential danger).

Thus, this Court recommends that Defendants' Cross-Motion for Summary Judgment

should be granted for Plaintiff's false arrest claim because Cheema had probable cause to arrest

Plaintiff under 42 U.S.C. §1983 and under NYMHL.

### C. Reasonableness of Cheema's Use of Force under New York Law is a Question for the Factfinder

Plaintiff's Complaint also alleged New York law claims for assault and battery against Defendants. Defendants move for summary judgment on the alleged assault and battery claims.

The Second Circuit recently reiterated that the elements of, and defenses to, a state law assault and battery claim are the same as for a federal excessive force claim. *See Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021). "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" *Id.* at 410 (citing *Posr v. Doherty,* 944 F.2d 91, 94-95 (2d Cir. 1991). Here, Plaintiff's assault and battery claims are predicated on the same conduct of Plaintiff's seizure and transportation to JHMS, and are governed by the same standard of reasonableness, as his excessive force claim under § 1983.

"To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officers' conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" *Tardif*, 991 F. 3d at 410 (citing *Nimely v. City of N.Y.*, 414 F. 3d 381, 391 (2d Cir. 2005)). The Court went on to explain that the justification defense available for law enforcement action under New York law "requires the jury to conduct precisely the same analysis as does the reasonableness standard" under the Fourth Amendment. *Tardif*, 991 F.3d at 410 (citing *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)). This defense extends to any force utilized in the performance of any "public duty." *See Id.*, at 411.

The Court finds that Plaintiff's assault and battery claims, similar to Plaintiff's excessive force claims, cannot be resolved as a matter of law at this juncture because there are disputed issues of material fact that preclude a grant of summary judgment. There are numerous disputes

concerning what the circumstances confronting Cheema were, including whether Plaintiff did in fact pose a threat to any or all the Officers. *See e.g., Rizk v. City of New York*, 462 F.Supp.3d 203, 228 (E.D.N.Y. 2020) (holding that "the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same" and since "genuine issues of material facts preclude the Court from determining whether defendants used excessive force […] [,] defendants' motion for summary judgment with respect to the assault and battery claim is [also] denied.").

As stated above, this Court respectfully recommends that Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment be denied for excessive force claims under 42 U.S.C. § 1983. In that vein, this Court further respectfully recommends that summary judgment for Plaintiff's state law claims for battery and assault should also be denied.

### D. Defendants are Entitled to Qualified Immunity for Plaintiff's False Arrest Claims but Factual Issues Preclude Resolution of this Issue for Excessive Force, Assault and Battery Claims

Defendants seek qualified immunity for Plaintiff's claims including false arrest, excessive force, and New York law claims for assault and battery. Plaintiff argues that Defendants are not immune from the claims alleged.

"Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983." *Guan v. City of New York*, 2020 WL 6688855 at 13 (S.D.N.Y. Sept. 18, 2020); quoting *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016). The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party

asserting the injury, demonstrate a violation of a constitutional right; and (2) the court must then consider whether the officials' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Jones v. Parmley*, 465 F.3d 46 (2d. Cir. 2006); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." *Id.*

As to false arrest, qualified immunity protects an officer "so long as he had 'arguable probable cause' to arrest, which 'exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Brock v. City of New York*, 15-CV-1832 (VSB), 2018 WL 3579099 at 7-8 (S.D.N.Y. July 25, 2018) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ). "[T]o determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." *Myers*, 819 F.3d at 625. Here, even if Defendants' actions were not supported by probable cause, they were objectively reasonable under the circumstances. The facts establish that Plaintiff's wife requested medical help because he was highly intoxicated; that EMTs concluded his condition constituted incapacitation; and that Cheema's own observations led him to believe that Defendant was intoxicated and needed evaluation. Accordingly, Defendants are entitled to qualified immunity, which is an alternative basis to dismiss Plaintiff's false arrest claim, since Defendants did have probable cause to arrest Plaintiff. *See Vallen*, 2004 WL 555698 at 10; *Burdick*, 2009 WL 1707475 at 7.

As to excessive force, Defendants argue that Cheema's use of force to slam Plaintiff to the ground was objectively reasonable since he posed a threat to Walker. Since the reasonableness of Defendants' actions is examined when deciding the excessive force claim as discussed above, as well as in the second step of the qualified immunity test, "[t]he conclusion that factual disputes preclude summary resolution of the excessive force claims also precludes a finding that the officers are entitled to qualified immunity with respect to the excessive force claims." *Hicks v. The City of New York*, 2015 WL 5774575 at 10 (E.D.N.Y. Aug. 27, 2015); quoting *Ryan v. Moss*, 2013 WL 956722, at 11 (W.D.N.Y. Mar.12, 2013).

As to New York law claims of false arrest, assault and battery, "New York law…grant[s] government officials qualified immunity except where the officials' actions are undertaken in bad faith or without a reasonable basis." *5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009) (citing *Papineau*, 465 F.3d at 63). The Court in *5 Borough Pawn* further explained that qualified immunity under state law that, "as is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions." *5 Borough Pawn*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009) (citations omitted); *Hargroves v. City of N.Y.*, No. 03-CV-1668 (RRM)(VMS), 2014 U.S. Dist. LEXIS 41661, at 10-11 (E.D.N.Y. Mar. 26, 2014) (citing *Papineau*, 465 F.3d at 64 (reasoning that federal qualified immunity analysis "applies to, and controls, the qualified immunity questions presented under New York law")). "[T]hus, where an officer's actions are deemed objectively reasonable, that officer will be immune under both federal and state law." *Hargroves*, 2014 U.S. Dist. LEXIS 41661, at *10-11; *see also Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 250 n.5 (E.D.N.Y. 2011) (applying the court's qualified immunity analysis on the federal claims to the identical state-law claims). Even where qualified immunity under state law is not specifically

invoked, courts have held that, "because of the similarities between the federal and New York doctrines of qualified immunity, if defendants would be entitled to qualified immunity under federal law, summary judgment [is] similarly appropriate on…state law [claims]" *Garcia v. Cty. of Westchester*, No. 11-CV-7258 (KMK), 2017 U.S. Dist. LEXIS 191980, at *50 (S.D.N.Y. Nov. 20, 2017) (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)). Since Defendants have qualified immunity for arresting Plaintiff under federal law, Defendant also have qualified immunity for arrest under New York State law. As to Plaintiff's claim of assault and battery, since the reasonableness of Defendants' actions is examined when resolving these claims as well as in the second step of the qualified immunity test, the conclusion that factual disputes preclude summary resolution of the assault and battery claims also precludes a finding that the officers are entitled to qualified immunity with respect to such state law claims. *See Jones*, 465 F.3d at 64 (denying qualified immunity as to New York law claims of assault and battery since the resolution of these claims involves the assessment of reasonableness).

Thus, this Court respectfully recommends that Defendants should have qualified immunity as to Plaintiff's false arrest claim, whereas the issue of qualified immunity should be resolved by the factfinder as to Plaintiff's excessive force, assault, and battery claims.

## V. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment be denied, and Defendants' Cross-Motion for Summary Judgment be granted as to false arrest and denied as to excessive force, assault, and battery claims because there are issues of fact as to whether Cheema's use of force was reasonable under the given circumstances. Defendants are further entitled to qualified immunity for Plaintiff's false arrest

claims but factual issues preclude resolution of this issue for excessive force, assault and battery claims.

## VI.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at 30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
          June 28, 2022

# EXHIBIT

# "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

BALWINDER SINGH,

                    Plaintiff,             **MEMORANDUM & ORDER**
                                                  19-CV-632(EK)(ST)

        -against-

CITY OF NEW YORK, P.O. MANDEEP
CHEEMA, individually and in his
official capacity, et al.,

                   Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

        Balwinder Singh brought this suit against several
defendants, alleging Fourth Amendment claims under 42 U.S.C.
§ 1983, and various state-law claims.[1]  The parties cross-moved
for summary judgment; those motions are the subject of
Magistrate Judge Tiscione's Report and Recommendation (R&R)
dated June 28, 2022.  ECF No. 55.  The R&R recommends that the
Court deny Plaintiff's motion for summary judgment, grant
Cheema's motion for summary judgment on Singh's false-arrest
claim, and deny Cheema's motion on the claims for excessive
force, and assault and battery.

---

[1] The full list of defendants included: the City of New York; P.O.
Mandeep Cheema; and police officers "John Doe" #1-10.  As discussed in
Section II.B of this order, Singh's remaining claims are as follows: Section
1983 excessive force, state-law false arrest, and state-law assault-and-
battery against defendant Cheema; and Section 1983 municipal-liability
against the City.  The only claims at issue in the instant cross-motions are
the claims against Cheema.

Having reviewed the record, I adopt the R&R in part.
Singh's motion for summary judgment on his excessive-force claim
is DENIED.  Cheema's motion for summary judgment on Singh's
claims for false arrest and excessive force under Section 1983,
and assault and battery under state law, is GRANTED.  As
detailed below, Cheema is entitled to qualified immunity on the
excessive-force claim because no clearly established law
prohibited the force he applied in the effort to handcuff Singh
under the instant circumstances.  Summary judgment is warranted
on Singh's false-arrest claim, as well, for the reasons set out
in the R&R.

## I.   Background

The R&R capably sets out the factual background, which
I will not repeat wholesale here.  Because I diverge from the
R&R's recommendations on the excessive-force claim (and
corresponding state-law battery claim), I recite certain key
facts underlying those claims below.  I view the facts in the
light most favorable to Singh, drawing any inferences in his
favor.

Early in the morning on February 28, 2018, Singh's
wife called 911 to say that her husband was intoxicated and that
they were fighting.  Audio of 911 Call 01:22, Pl. Ex. D.  She
asked the operator to send an ambulance.  Pl. Rule 56.1
Statement of Material Facts ("Pl. 56.1") ¶ 7, ECF No. 46-2.  EMS

workers arrived at Singh's home shortly thereafter and determined that he needed to go to the hospital because he was acting irrationally, speaking incoherently, and displayed an unsteady gait. Pl. 56.1 ¶ 13; Dep. of Nicole Milonas 85:24-86:4, ECF No. 46-8. Singh was uncooperative and refused to go to the hospital, so EMS workers called for police assistance. Pl. 56.1 ¶¶ 20-21. It is undisputed that Plaintiff's blood alcohol level was more than three times the legal driving limit when he was tested at the hospital two hours later. Pl. Resp. to Def. Rule 56.1 Statement of Material Facts ("Pl. Resp to Def. 56.1") ¶¶ 114-15, ECF No. 49-1 (admitting that Plaintiff's BAC was 247 mg/dL two hours after his wife called 911).

Singh's home security system recorded video and audio of the EMS workers' arrival and call to police, but Singh deleted this recording after the incident. Pl. Resp. to Def. 56.1 ¶ 54. (Before he did so, Singh used his cell phone to record the portion of the video showing what he alleges to be excessive force, as discussed below.[2]) Nevertheless, it is undisputed that EMS contacted the NYPD, stating that they were attending to an uncooperative subject, and indicating — in two

---

[2] Singh contends that he deleted the video by "accident" and that it would have been overwritten anyway, fourteen days later, absent preservation. But Singh obviously realized that the video might be relevant later, and selected the portion he wanted to preserve. Pl. Resp. to Def. 56.1 ¶¶ 51-55; Pl. Ex. G(1), Video (hereinafter "Video").

successive communications — that they required the NYPD's
assistance "ASAP."[3]  When the officers arrived at Singh's home,
Officer Cheema spoke with the EMTs on the scene.  One of the
EMTs — Cheema did not recall which — told him, in substance,
that Singh was being uncooperative to the point where they felt
unsafe.  *Id.* ¶ 82.

Singh continued to refuse to go to the hospital.  Pl.
56.1 ¶¶ 33-35.  During this time, Singh addressed his wife in
Punjabi.  Cheema, who understood what Singh was saying,
testified that Singh was blaming his wife for the situation,
stating, "You did this to me, you're going to pay, you did
this," and "You're going to pay for what you did."  Dep. of
Mandeep Cheema ("Cheema Dep.") 77:15-23, 80:12-13, ECF No. 48-7.
Singh disputes that he threatened his wife but acknowledges that
he blamed her for the situation.  Pl. Resp. to Def. 56.1 ¶ 89
(Singh testified that he told her: "this is not right, you are
sending me to the hospital with handcuffs on.  This is not
right.  I had not done anything.").  After trying to convince
Singh to go to the hospital voluntarily, Cheema gave Singh a
choice: he could either go voluntarily, or the officers would
have to take him in handcuffs.  Pl. 56.1 ¶¶ 29-31; Cheema Dep.

---

[3] Pl. Resp. to Def. 56.1 ¶¶ 75-76 (admitting that the EMTs communicated
to police "PLZ SEND RMP [radio motor patrol car], UNCO-COP PT [uncooperative
patient]," and requested assistance a few minutes later, saying "RMP NEEDED
ASAP").

85:7-87:15.  Singh agreed to go voluntarily and began to get dressed.  Pl. 56.1 ¶¶ 31-33.

Singh's cell phone video shows the moments leading up to the incident, and the incident itself.  Singh and the officers stood close to the front door, preparing to leave the apartment.  Officer Malinda Walker opened the front door, as Officer Justin Davis stood to the side.  Video 7:24.  Officer Cheema stood behind Singh.  Rather than walking out, however, Singh leaned forward slightly and extended his arms behind his back, towards Officer Cheema.  Video 7:30.  There is no audio, but it is undisputed that at this point, Singh told Officer Cheema the officer would "have to handcuff" him.  Pl. 56.1 ¶ 34; Def. Rule 56.1 Statement of Material Facts ¶ 35, ECF No. 48-2.

Just as Officer Cheema took out handcuffs and began to place them on Singh, however, Singh abruptly withdrew his hands from behind his back, and said, "I'm just joking. You're not going to handcuff me."  Pl. 56.1 ¶ 35.  The video, which captured the scene from behind Cheema and Singh – and thus provides a perspective similar to Cheema's – shows that Singh withdrew his hands from behind his back and brought them out in front of him.  At the same time, he took a quick step away from Cheema and toward both the open door and Officer Walker.  Video 7:57-8:03; Dep. of Balwinder Singh ("Singh Dep.") 61:15-20, ECF No. 48-6; Dep. of Malinda Walker 58:3-7, ECF No. 48-9.

As Singh stepped toward Officer Walker and the open door, Officer Cheema followed, moving forward and wrapping his arms around Singh from behind – his right arm over Singh's right shoulder, and his left arm under Singh's left arm.  Video 8:00-8:05.  Still holding onto Singh, Cheema pulled Singh's body to the right and then down to the ground.  Video 8:05.  Once Singh was on the ground, Cheema and the two other officers handcuffed him, lifted him up, and escorted him out the door.  Video 8:00-8:45.

The parties dispute how to characterize Cheema's maneuver: Singh refers to it as "body-slamming," *see* Pl. Opp. to Def. Mot. for Summ. J. ("Pl. Opp.") 22-26, ECF No. 49-1, but Defendants call it an "arm-bar takedown."  Def. Br. in Support of Def. Mot. for Summ. J. ("Def. Br.") 12, ECF No. 48-1.  These competing characterizations are not critical, given that the action was captured on video, and the video speaks for itself.

Cheema's action caused an abrasion and bruising on Singh's forehead and exacerbated Singh's pre-existing shoulder injury.  *See* Photos of Pl. Face Injury, Ex. L to Cohen Decl., ECF No. 46-15; Pl. Expert Reports, Ex. K to Cohen Decl., ECF No. 46-14.

## II.  Legal Standard on Review of Report & Recommendation

Generally speaking, when neither party files objections to a report and recommendation, the district court

reviews the recommendation for clear error.  See Advisory Comm. Notes to Fed. R. Civ. P. 72(b); *accord State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 481 (E.D.N.Y. 2013). Nevertheless, a district judge retains authority to "accept, reject, or modify" any recommendation.  28 U.S.C. § 636(b)(1). Section 636 gives R&Rs no "presumptive weight," *Mathews v. Weber*, 423 U.S. 261, 271 (1976); instead, district courts are free to review the case "in whole or in part anew."  *Id*.[4]

### III. Discussion

**A.    Excessive Force Claim**

1.    <u>Fourth Amendment Law on Excessive Force</u>

Under the Fourth Amendment, a police officer's application of force is excessive "if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). Courts must view the "reasonableness of a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

---

[4] *See also Mathews*, 423 U.S. at 271 (a district judge is "free to follow [the R&R] or wholly to ignore it," but either way the "authority and the responsibility to make an informed, final determination, we emphasize, remains with" him or her); *Cole v. Rogers*, No. 14-CV-3216, 2017 WL 1155002, at *1 (E.D.N.Y., 2017) (Bianco, D.J.) ("Although the parties have waived any objections to the R&R and thus de novo review is not required, the Court has conducted a *de novo* review of the R&R in an abundance of caution.").

Whether a particular use of force is reasonable or excessive depends on the specific facts and circumstances. Courts generally look at three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* Force must be "reasonably related to the nature of resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Some circuit courts have recognized the second factor — the immediate threat to officer safety — as the most important. *See Pauly v. White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017) ("The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others, is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force."); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (second factor is "the most important single element of the three specified factors").

When a subject refuses an order to place his hands behind his back to be handcuffed, officers may do what is "necessary to subdue [him] and apply handcuffs." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009). The application of force is excessive in this context

(perhaps tautologically) when it goes "*beyond* what [is] necessary" to do the same. *Id.*; *see also Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (plaintiff may prevail on excessive force claim "if he is able to show that [the officer] used more force than was necessary to subdue him").

 2.  <u>Qualified Immunity in the Excessive-Force Context</u>

  Singh's Fourth Amendment claim against Cheema, a police officer, must be viewed through the lens of qualified immunity. *E.g.*, *City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (per curiam). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When an official asserts a qualified immunity defense, courts consider whether "(1) the official violated a statutory or constitutional right, and (2) . . . the right was clearly established at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016).[5] "Officials are entitled to qualified immunity when their decision was reasonable, even if mistaken;

---

  [5] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

the doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015).

In excessive-force claims, the reasonableness inquiry often "overlap[s]" with the qualified immunity analysis. *See, e.g.*, *Cowan v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003). The difference is that "the qualified immunity inquiry goes on to ask whether any constitutional violation was clearly established." *Jackson v. Tellado*, 236 F. Supp. 3d 636, 661 (E.D.N.Y. 2017). A constitutional right is clearly established "when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas*, 142 S. Ct. at 7; *see also Jones v. Treubig,* 963 F.3d 214, 224 (2d Cir. 2020) (right is clearly established when it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

The effort to identify clearly established controlling law "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). The Supreme Court has "repeatedly told courts not to define clearly established law at

too high a level of generality." *City of Tahlequah*, 142 S. Ct. at 11. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.; see also Kisela v. Hughes,* 138 S. Ct. 1148, 1152-53 (2018) (defendants will be "entitled to qualified immunity unless existing precedent *squarely governs the specific facts* at issue") (emphasis added).

Thus, although courts "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* This is especially true in excessive force cases: the Supreme Court has said that "specificity is especially important in the Fourth Amendment context," where "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.; see also Kisela*, 138 S. Ct. at 1153 ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.").

The upshot is that qualified immunity may protect an officer who employs force that is objectively excessive under the Fourth Amendment, provided that the officer could *reasonably* — but mistakenly — have believed otherwise in the press of circumstances: "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

In recent qualified immunity cases, the Supreme Court has emphasized the importance of video evidence at the summary judgment stage. "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment," which "usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, where the record contains uncontroverted video evidence, the court "should . . . view the facts in the light depicted by the videotape." *Id.* at 381. Following this protocol, the Supreme Court recently unanimously overruled two courts of appeals on qualified immunity grounds based on video footage of the events. In *City of Tahlequah*, the Court summarized the video footage of a police shooting before holding that the officers had not violated clearly established law. 142 S. Ct. at 10-11. And in *Rivas-Villegas*, the Court relied on footage showing the defendant-officer placing his knee

on the suspect's back "for no more than 8 seconds," to conclude that the officer was entitled to qualified immunity. 142 S. Ct. at 7.

Watching the video evidence here, it is not clear that any constitutional violation occurred — let alone a violation of clearly established Fourth Amendment law.

3. Cheema's Actions Did Not Violate Clearly Established Law

As this caselaw establishes, a defendant is entitled to summary judgment when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to" the plaintiff, no reasonable jury "could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008). Put differently, summary judgment is appropriate here if no reasonable jury could conclude that Cheema violated a legal obligation that was "sufficiently clear that every reasonable official would have understood" his conduct to violate that obligation. *Rivas-Villegas*, 142 S. Ct. at 7.

Evaluating the evidence and drawing inferences as such, no reasonable jury could so conclude. Simply put, neither Plaintiff nor the R&R (nor I) have surfaced any case recognizing

13

a "clearly established" right that Cheema's actions, even viewed
in the light most favorable to the plaintiff, could be held to
violate.

        a.    Supreme Court and Second Circuit Cases on
              Excessive Force

      The Supreme Court and Second Circuit have decided a
substantial number of qualified immunity cases involving
allegations of excessive force.  Given the primacy of the
"clearly established" standard here, it behooves us to review
these cases in some detail.

      In *City of Tahlequah*, the Supreme Court unanimously
held that officers were entitled to qualified immunity.  142 S.
Ct. at 11.  There, the suspect's ex-wife had called the police
to say that he was intoxicated and that she was concerned the
situation would get "ugly."  *Id.* at 10.  The Court reviewed
uncontroverted video evidence of the incident, which showed that
when the officers tried to arrest the suspect, he refused to
comply with their orders; and when he picked up a hammer and
appeared ready to throw it at the officers, they shot him.  *Id.*
at 10-11.  The Court declined to reach the constitutional
question, instead proceeding directly to the "clearly-
established" question.  *Id.* at 12.  The Court held that none of
the cases relied on by the Tenth Circuit came even "close to
establishing that the officers' conduct was unlawful."  *Id.*

Accordingly, the officers were thus entitled to qualified immunity. *Id.*

In *Husbands ex rel. Forde v. City of New York*, the Second Circuit upheld the district court's grant of summary judgment to an officer who had punched a *minor* suspect in an effort to put him in handcuffs. 335 F. App'x at 128-29. The record showed that the plaintiff, whom the police believed had a gun (but from whom no gun was recovered), "was doing something with his hands that made it difficult to arrest him." *Id.* at 129. Where the officers reasonably feared for their safety, the court held that "[o]ne punch to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force." The court held that no constitutional violation occurred *at all*, clearly established or otherwise. *Id.*

The case that best supports Singh's argument is perhaps *Brown v. City of New York*, 798 F.3d 94, 102-03 (2d Cir. 2015). There, the district court had granted summary judgment on constitutional — not qualified immunity — grounds, holding that no Fourth Amendment violation could be found where, after the plaintiff had refused to give her hands to be handcuffed, the officer took her to the ground, pushed her face into

pavement, and then pepper sprayed her twice in the face while she was on the ground. *Id.*

The alleged excessive force in that case, too, was video-recorded. Assessing the video, the Second Circuit found that all three *Graham* factors favored the plaintiff: the suspected crime was minor, she "posed no threat whatever to the safety of the officers or others," and "[a]s for actively resisting arrest, [she] was not fleeing, nor physically attacking an officer, *nor even making a move that an officer could reasonably interpret as threatening* an attack." *Id.* (emphasis added). On that basis, the Second Circuit concluded that the "assessment of a jury [was] needed." *Id.* at 103; *see also id.* (stating that, for purposes of the constitutional analysis, "the factual determination of excessiveness" was for the jury in that case).

Singh's actions are distinguishable from Ms. Brown's. His quick move toward Officer Walker is reasonably interpreted as threatening, and / or as a first step toward flight through the open door. Moreover, the amount of force the police used is

distinguishable: Brown was pepper-sprayed twice in the face at close range; no similar force was applied to Singh.[6]

*Brown* is distinguishable on another ground, as well: the Court of Appeals' analysis relied fairly prominently on the size disparity between the plaintiff and the officers who effectuated her arrest. 798 F.3d at 101 ("Officer Plevritis was 5'10" and weighed 215 pounds; Officer Naimoli was 5'7" and weighed 150–160 pounds; Brown was 5'6" and weighed 120 pounds."). Reviewing the record, the Court of Appeals observed that "no reason appears why, with Brown standing, each officer could not have simply held one of her arms, brought it behind her, and put handcuffs on her wrists." *Id.* at 102. The court continued:

> Police officers must be entitled to make a reasonable selection among alternative techniques for making an arrest. But when the amount of force used by two police officers involves taking a 120-pound woman to the ground and twice spraying her directly in the face with pepper spray, the availability of a much less aggressive technique is at least relevant to making

---

[6] Singh contends that Cheema's use of force exacerbated a pre-existing shoulder injury, Pl. Br. in Support of Pl. Mot. for Summ. J. 7, ECF No. 46-1, but the Second Circuit has limited the inferences that may be drawn from that contention in assessing whether the force was excessive. In *Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012), the plaintiff had "resisted arrest by refusing to stand up or to permit himself to be handcuffed"; he alleged that the defendant patrolmen employed excessive force when they "turned him onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling his arms, sweatshirt and waist." In the process, they caused a "rotator cuff tear" that was "an extension of a pre-existing" injury. *Id.* at 881. The Second Circuit wrote that the plaintiff's shoulder injury did not support a claim of excessive force because the officers "had no reason to know that [his] existing shoulder injury might be aggravated if his arms were pulled or he were handcuffed." *Id.* Here, too, Cheema had no reason to know about Singh's pre-existing shoulder condition.

the ultimate determination of whether excessive force
was used.

*Id.* at 103.  Here, in contrast, Singh significantly outweighed

Officer Walker – the officer in whose direction he was headed

after he evaded Cheema's effort to handcuff him.  According to

the deposition testimony, Singh is five-foot-seven and weighed

190 pounds at the time of arrest, while Officer Walker was five-

foot-two and weighed approximately 140 pounds.  Singh Dep.

60:25-61:2; Dep. of Malinda Walker 6:2-13, ECF No. 48-9.[7]

The case of *Lennox v. Miller*, 968 F.3d 150, 156 (2d

Cir. 2020), is likewise distinguishable; there, the officer

brought plaintiff to the ground *after* he had already handcuffed

her, and then "put his full body weight on her, kneeling on her

back, and slammed her head into the ground, notwithstanding the

fact that she had already been handcuffed and positioned face

down."  *Id.*  The court held that a "jury could find that [the

officer] used unreasonable force on an individual who was not

resisting arrest and who was secured in such a manner that she

posed no threat to public safety."  *Id.*; *cf. Dunham v. City of

New York*, No. 11-CV-01223, 2021 WL 918373, at *7 (S.D.N.Y. Mar.

10, 2021) (no qualified immunity where "a reasonable jury could

---

[7] Following remand, the district court granted summary judgment again,
but on qualified immunity grounds — *i.e.*, on the basis that the Fourth
Amendment law had not been clearly established when Ms. Brown was arrested.
The Second Circuit upheld that decision.  *Brown v. City of New York*, 862 F.3d
182, 190-92 (2d Cir. 2017).

find that [plaintiff] no longer posed an immediate threat . . .

and . . . was no longer resisting," and therefore "that the

officers *gratuitously* inflicted pain in a manner that was not a

reasonable response to the circumstances once Plaintiff was no

longer resisting arrest" (emphasis added)).  For obvious

reasons, *Dunham* does not map well onto the instant facts: the

video leaves no dispute that Singh had declined to submit to

handcuffing at the time of Cheema's brief action.

Plaintiff cites some of these cases in passing, but in

the end does not successfully identify a source of clearly

established law that Cheema's actions could be found to violate.

In one brief paragraph analyzing the qualified immunity defense

to the excessive-force claim, the R&R invokes the unpublished

report and recommendation of the magistrate judge in *Hicks v.

City of New York*, 2015 WL 5774575, at *3 (E.D.N.Y. 2015).  The

allegations in that case were markedly different from those

here:

> Plaintiff states that the officers used something to
> break down his door and that the first officer to
> enter was wearing a helmet and shield.  He claims this
> officer punched him in the face and that the other
> officers attacked him by punching, kicking, and tasing
> him even before he had a chance to say anything.
> Specifically, Hicks claims that when the first officer
> entered, plaintiff simply stood there, tried to ask
> what was going on, but the officer punched him in the
> face and his head was slammed against a wall.
> According to plaintiff, even though he put up no
> fight, he was attacked by approximately eight officers
> and taken down to the floor. . . .  Plaintiff alleges

19

> that he was struck below his right eye with a taser
> prong, that this taser prong hooked into his cheek,
> and that an officer yanked the hooked prong out of his
> face.  He was also struck with the taser in the left
> arm and in his torso several times.

*Id.*; *see also id.* at *10 ("Hicks asserts he did nothing to

provoke any use of force and that the defendants' punches, kicks

and taser use were gratuitous.").  There was no video evidence

in that case.  *Hicks* does not "clearly establish," at the

requisite level of specificity, any rule of law applicable to

this case.[8]

> b.  Cheema's Actions "Clearly Violate" No Rule
>     Emerging from These Cases

Applying these cases to the undisputed evidence here,

including especially the video footage, no reasonable jury could

conclude that Officer Cheema violated clearly established law.

Two of the three *Graham* factors strongly favor Cheema.  First,

the video makes clear that Singh was resisting being handcuffed.

Plaintiff acknowledges that he refused to go to the hospital

voluntarily, at which point Cheema gave Singh the choice: come

voluntarily, or the officers would place him in handcuffs.  Pl.

---

[8] Furthermore, it is not entirely clear that an order issued at the
district court level can "clearly establish" anything for purposes of
qualified immunity.  The Supreme Court has recently suggested (albeit
obliquely) that the relevant universe of case law may be limited to Supreme
Court authority.  *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012)
("Assuming arguendo that controlling Court of Appeals' authority could be a
dispositive source of clearly established law in the circumstances of this
case, the Tenth Circuit's cases do not satisfy the 'clearly established'
standard here."); *Rivas-Villegas*, 142 S. Ct. at *2 ("Even assuming that
controlling Circuit precedent clearly establishes law for purposes of § 1983
. . . .").

Opp. 4 (citing Cheema Dep. 82-89).  Singh first indicated his
intent to go voluntarily, but then changed course: he said that
the officers would "have to handcuff him."  Pl. 56.1 ¶¶ 33-35.
As the video shows, Singh then extended his hands behind him,
and Officer Cheema took out handcuffs and began to place them on
Singh.  Then Singh changed course again: he withdrew his hands
from behind his back, brought them out in front of him, and took
a quick step away from Cheema.  Video 7:55-8:00.

Second, the video shows that it was utterly reasonable
for Cheema to conclude that Singh posed a risk to officer safety
and a risk of flight through the open door.  The video shows
Singh taking a sudden step towards Cheema's partner, Officer
Walker, with his (Singh's) hands out in front of him.[9]  Cheema
watched Singh move in that direction.  *E.g.*, Cheema Dep. 102:16-
24 ("It was a sudden step towards my partner. . . . At that
point, based off of his behavior, and based off of everything
that led up to that point, just different levels of aggression
that he kept displaying the whole time, his behavior changing,
and at that point I no longer felt, like, okay this is a safe

---

[9] Cheema testified, and Singh does not dispute, that as Singh withdrew
his hands and stepped away from Cheema, he stated, "I'm just joking, you're
not going to handcuff me."  Pl. 56.1 ¶ 35.  It should go without saying that
Singh cannot benefit from his claim to have been joking.  Even if he had been
joking about *submitting to be handcuffed*, that says nothing about his intent
to flee or harm someone else on the premises.  Moreover, Singh's subjective
motivations are largely irrelevant.  "Our focus is not on [plaintiff's]
motivations but instead on the sequence of events from the perspective of a
reasonable officer at the scene."  *Tracy v. Freshwater*, 623 F.3d 90, 93, 97
(2d Cir. 2010).

scene. . . ."). The video also corroborates Cheema's testimony that he could not see Singh's hands and did not know what he was doing with them, because the video shows Cheema standing behind Singh as he moves forward towards Officer Walker. Video 8:00; *see* Cheema Dep. 103:10-11 ("It was just the initial action of him bringing his hands to the front and saying, 'No, no, no, you're not going to handcuff me.' Then he took that sudden step, which made me no longer feel safe.").[10]

As Judge Tiscione acknowledged, "Cheema's use of force against Plaintiff was deployed as an instantaneous response to a potential safety threat he posed against Walker." R&R 8. Singh might have been able to overpower Walker or grab one of the officers' weapons. *See generally Pinero v. Burbran*, 18-CV-4698, 2021 WL 4224727, at *4 (S.D.N.Y. Sept. 16, 2021) ("Plaintiff's active resistance of arrest and his physical hold on [the officer's] uniform posed the immediate threat that Plaintiff would be able to overpower the officers or grab one of their weapons."); *see also MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (use of a taser was objectively reasonable where fleeing motorist pulled into an abandoned lot in surrender, got out of his car and kneeled on the ground, but

---

[10] The third officer on this scene — Officer Davis — shared Cheema's assessment that Singh was potentially dangerous. *E.g.*, Dep. of Justin Davis 120:15-122:24, ECF No. 48-8 ("I didn't know what he was going to do. . . . I thought he could attack anybody.").

subsequently "rose to his feet, turned to face the officers with his hands free and outstretched, and refused to return to the ground.").

In sum, given Singh's apparent refusal to be handcuffed, his erratic behavior and high level of intoxication, the fact that the EMTs told him that before the police arrived, Singh was uncooperative to the point where they were concerned for their safety, and his sudden movement in the direction of Officer Walker, no reasonable jury could find Cheema liable over a qualified immunity defense. Cheema is entitled to qualified immunity (and therefore summary judgment) on Plaintiff's excessive-force claim.

**B.    State-Law Claim for Assault and Battery**

Summary judgment is also granted as to Plaintiff's state-law assault and battery claim.

"Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009). While "the doctrine of qualified immunity applies to federal causes of action but is not generally understood to protect officials from claims based on state law," *Stein ex rel. Stein v. Barthelson*, 419 Fed. Appx. 67, 71 (2d Cir. 2011), New York State has its own analogue. The

New York courts "grant government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006).

Given my analysis on the excessive force claim, qualified immunity applies to the battery claim too. *See, e.g.*, *Felix v. City of New York*, 408 F. Supp. 3d 304, 312 (S.D.N.Y. 2019) ("The finding of qualified immunity on the excessive force claims requires a grant of summary judgment on assault and battery as well."); *Mesa v. City of New York*, No. 9-CV-10464, 2013 WL 31002, at *27 (S.D.N.Y. Jan. 3, 2013) ("Thus, as the force employed against Mesa was objectively reasonable under the circumstances - giving rise to a finding of qualified immunity - her assault and battery claims must fail as well.").

\*    \*    \*    \*    \*

There is a robust debate underway — in federal courts, in the academic literature, and elsewhere — about the origins and application of the doctrine of qualified immunity. *See, e.g.*, *McKinney v. City of Middletown,* 2022 WL 4454475, at *12-14, *20-23 (2d Cir. Sept. 26, 2022) (discussing the wisdom of qualified immunity in majority and dissenting opinions); *see also* William Baude, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45 (2018). Together with *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), the doctrine of qualified immunity creates

a void in the constitutional landscape: it is a regular occurrence that citizens who believe their constitutional rights have been violated run headlong into the qualified immunity doctrine when they bring claims against individual law enforcement officers, and into *Monell* when they pursue the relevant municipality.

District courts must, however, take the law of qualified immunity as they find it.  And the facts of this case — involving an officer who used a single, facially reasonable maneuver to subdue a suspect who was undisputedly resisting arrest after a series of erratic actions (whether his intent was "joking" or not) — do not even approach the point where the shield of qualified immunity begins to lift, given recent Supreme Court precedent.

## C.   Other Claims

Plaintiff originally brought additional claims against Cheema, the City, and "John Does" #1-10.  In Plaintiff's opposition brief, he agreed to dismiss several claims: negligent hiring and retention, failure to intercede, and intentional infliction of emotional distress.  Pl. Opp. 27 n.17; *see also* R&R 5.  These claims may be "dismissed at the plaintiff's

request only by court order." Fed. R. Civ. P. 41(a)(2). Those claims are hereby dismissed.

Plaintiff also brought a municipal liability claim against the City under Section 1983. Defendants state, in their opposition brief, that "Plaintiff has agreed to withdraw this claim. The parties will submit an appropriate stipulation of partial dismissal." Def. Br. 1. Upon review of the docket, however, the parties do not appear to have filed that stipulation. The parties are ordered to indicate in letters, no later than October 6, 2022, whether Plaintiff has stipulated to the dismissal of the municipal liability claim, and if not, to describe the current status of that claim.

Finally, to the extent Plaintiff has any remaining claims against "John Doe" defendants, those are dismissed because Plaintiff has not identified them even after the close of discovery. *See Keesh v. Artuz*, No. 97-CV-8417, 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants. Accordingly, the complaint against them must be dismissed.").

## IV. Conclusion

For these reasons, I adopt the R&R in part. Plaintiff's motion for summary judgment on his excessive-force claim is DENIED, and Cheema's cross-motion for summary judgment

is GRANTED as to Plaintiff's Section 1983 claims for false

arrest and excessive force, and state-law claim for assault and

battery.  The parties shall file letters by October 6, 2022,

indicating whether they have stipulated to the dismissal of the

municipal liability claim, and (if not) whether they intend to

do so.


       SO ORDERED.


                     /s/ Eric Komitee
                   ERIC KOMITEE
                   United States District Judge


Dated:     September 30, 2022
          Brooklyn, New York

# EXHIBIT

## "3"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BALWINDER SINGH,

               Plaintiff,                        JUDGMENT
                                                       19-CV-632 (EK) (ST)

               -against-

THE CITY OF NEW YORK, P.O. MANDEEP CHEEMA,
Tax Id. No. 950196, Individually and in his Official
Capacity, and POLICE OFFICERS "JOHN DOE" #1-10,
Individually and in their Official Capacity (the name
John Doe being fictitious, as the true names are
presently unknown),

                         Defendants.
-------------------------------------------------------------- X

      A Memorandum and Order of Honorable Eric Komitee, United States District Judge,

having been filed on September 30, 2022, adopting the Report and Recommendation of

Magistrate Judge Steven Tiscione, dated June 28, 2022, denying Plaintiff's motion for summary

judgment on his excessive-force claim; granting Cheema's cross-motion for summary judgment

as to Plaintiff's Section 1983 claims for false arrest and excessive force, and state-law claim for

assault and battery; and an Order having been filed on December 5, 2022, directing the Clerk of

Court to enter judgment consistent with the parties' *Monell* Stipulation and this Court's

Memorandum and Order dated September 30, 2022, and close this case; it is

      ORDERED and ADJUDGED that Plaintiff's motion for summary judgment on his

excessive-force claim is denied; that Cheema's cross-motion for summary judgment is granted as

to Plaintiff's Section 1983 claims for false arrest and excessive force, and state-law claim for

assault and battery; and the following is stipulated and agreed as follows:

      1. The above-referenced claims for municipal liability brought pursuant to 42 U.S.C. §

1983 against the City of New York are hereby dismissed with prejudice;

2. Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, any and all of the claims that were asserted or could have been asserted by or on behalf of plaintiff Balwinder Singh against defendant the City of New York, including its successors and assigns, for municipal liability pursuant to 42 U.S.C. § 1983, arising out of the facts and circumstances that are the subject of this action, are hereby dismissed and discontinued, with prejudice, and without attorney's fees, costs, or disbursements to any party as against the other;

3. This Stipulation contains all the terms and conditions agreed upon by counsel for defendants and counsel for plaintiff hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein; and

4. This Stipulation shall be binding upon the parties immediately upon signature and shall be submitted to the Court for entry as an Order.

Dated: Brooklyn, NY                                    Brenna B. Mahoney
     December 6, 2022                          Clerk of Court


                                                By: */s/Jalitza Poveda*
                                                   Deputy Clerk

# EXHIBIT

## "4"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------
BALWINDER SINGH,

                              Plaintiff,

                                                    **NOTICE OF APPEAL**

                                                    **CV 19-0632 (EK)(ST)**


                    -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

----------------------------------------------------------------------

  Come now Plaintiff, Balwinder Singh, by and through counsel, hereby gives notice of his appeal to the U.S. Court of Appeals for the Second Circuit from certain portions of the Judgment of the United States District Court for the Eastern District of New York entered in the above captioned cased on December 6, 2022 (Document 63), annexed hereto;

  Further, Plaintiff, by and through counsel, hereby gives notice of his appeal to the U.S. Court of Appeals for the Second Circuit from the District Court's September 30, 2022 Memorandum & Order (Document 57), which Adopted in Part and Reversed in Part the June 28, 2022 Report and Recommendation of the Magistrate Judge (Document 55), annexed hereto;

  Further, by incorporation,[1] Plaintiff, by and through counsel, hereby gives notice of his appeal to the U.S. Court of Appeals for the Second Circuit from the underlying

_____

[1] The District Court's September 30, 2022 Memorandum and Order *sua sponte* undertook *de novo* review

Report and Recommendation of the Magistrate Judge (Document 55) which Denied Plaintiff's Motion for Partial Summary Judgment (Document 46) and Granted in Part and Denied in Part Defendants' Cross Motion for Summary Judgment (Document 48), annexed hereto.

Dated: January 4, 2023

BY: _____

JOSHUA FITCH
COHEN & FITCH LLP
Attorneys for Plaintiff
233 Broadway, Room 900
New York, N.Y. 10279
(212) 374-9115
jfitch@cohenfitch.com

---

the Magistrate Judge's June 28 2022 Report and Recommendation.

# EXHIBIT
## "5"

CLOSED,ACO

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:19-cv-00632-EK-ST

Singh v. The City of New York et al

Assigned to: Judge Eric R. Komitee

Referred to: Magistrate Judge Steven Tiscione

Cause: 28:1983 Civil Rights

Date Filed: 02/01/2019

Date Terminated: 12/06/2022

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

### Plaintiff

**Balwinder Singh**                        represented by **Gerald M. Cohen**
Cohen & Fitch, LLP
225 Broadway
Suite 2700
New York, NY 10007
212-374-9115
Fax: 332-777-2172
Email: gcohen@cohenfitch.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ilyssa S. Fuchs**
Cohen and Fitch LLP
110 E. 59th St.
Suite 3200
New York, NY 10022
212-374-9115
Fax: 332-777-2172
Email: ifuchs@cohenfitch.com
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**The City of New York**                        represented by **Hannah Victoria Faddis**
New York City Law Department
100 Church Street
New York, NY 10007
(212)356-2486
Fax: (212)356-1148
Email: hfaddis@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant

**P.O. Mandeep Cheema**                                       represented by  **Hannah Victoria Faddis**
*Tax Id. No. 950196, Individually and in his*                 (See above for address)
*Official Capacity*                                           *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Police Officers John Doe #1-10**
*Individually and in their Official Capacity*
*(the name John Doe being fictitious, as the*
*true names are presently unknown),*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/01/2019 | 1 | COMPLAINT against P.O. Mandeep Cheema, Police Officers John Doe #1-10, The City of New York filing fee $ 400, receipt number ANYEDC-11158558 Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Balwinder Singh. (Attachments: # 1 Civil Cover Sheet) (Fuchs, Ilyssa) (Entered: 02/01/2019) |
| 02/01/2019 | 2 | Proposed Summons. Re 1 Complaint, by Balwinder Singh (Fuchs, Ilyssa) (Entered: 02/01/2019) |
| 02/04/2019 |   | Case Assigned to Judge Nicholas G. Garaufis and Magistrate Judge Steven Tiscione. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Davis, Kimberly) (Entered: 02/04/2019) |
| 02/04/2019 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Davis, Kimberly) (Entered: 02/04/2019) |
| 02/04/2019 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Davis, Kimberly) (Entered: 02/04/2019) |
| 02/04/2019 | 5 | Summons Issued as to P.O. Mandeep Cheema, Police Officers John Doe #1-10, The City of New York. (Davis, Kimberly) (Entered: 02/04/2019) |
| 02/05/2019 | 6 | SUMMONS Returned Executed by Balwinder Singh. The City of New York served on 2/5/2019, answer due 2/26/2019. (Fuchs, Ilyssa) (Entered: 02/05/2019) |
| 02/19/2019 | 7 | SUMMONS Returned Executed by Balwinder Singh. P.O. Mandeep Cheema served on 2/13/2019, answer due 3/6/2019. (Fuchs, Ilyssa) (Entered: 02/19/2019) |
| 02/26/2019 | 8 | Consent MOTION for Extension of Time to File Answer by The City of New York. (Faddis, Hannah) (Entered: 02/26/2019) |

| | | |
|---|---|---|
| 02/27/2019 | | ORDER granting 8 Motion for Extension of Time to Answer The City of New York answer due 4/29/2019. So Ordered by Magistrate Judge Steven Tiscione on 2/27/2019. (Vasquez, Lea) (Entered: 02/27/2019) |
| 04/29/2019 | 9 | ANSWER to 1 Complaint, by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 04/29/2019) |
| 04/30/2019 | 10 | SCHEDULING ORDER: An in-person initial conference will be held at 10:00 a.m. on May 21, 2019 before the undersigned in Hearing Room N504 in the North Wing. All counsel must attend. Counsel are directed to complete the attached Discovery Plan Worksheet and electronically file same with the Court no later than May 17th. So Ordered by Magistrate Judge Steven Tiscione on 4/30/2019. (Vasquez, Lea) (Entered: 04/30/2019) |
| 04/30/2019 | 11 | First MOTION to Adjourn Conference *currently scheduled for 5/21/19 at 10:00 a.m.* by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 04/30/2019) |
| 04/30/2019 | | ORDER granting 11 Motion to Adjourn Conference: The initial conference scheduled for May 21st will be held at 12:00 p.m. on May 29, 2019. So Ordered by Magistrate Judge Steven Tiscione on 4/30/2019. (Vasquez, Lea) (Entered: 04/30/2019) |
| 05/10/2019 | 12 | Proposed Scheduling Order *Proposed Discovery Plan Worksheet* by Balwinder Singh (Fuchs, Ilyssa) (Entered: 05/10/2019) |
| 05/31/2019 | 13 | Minute Entry for Initial Conference Hearing held on 5/29/2019 before Magistrate Judge Steven Tiscione: Cohen, Fuchs for Plaintiff; Faddis for Defendants. The Court sets the following discovery deadlines: Deadline for completion of Rule 26(a) initial disclosures - 6/5/19; Completion of Phase I discovery - 7/29/19; Deadline for motions to join new parties or amend pleadings - 8/28/19; First requests for production of documents and interrogatories due by - 9/12/19; All fact discovery to be completed by 12/27/19; Exchange of plaintiff's expert reports - 12/27/19; Exchange of defendants' expert reports - 1/27/20; Expert depositions completed by - 2/26/20; All discovery completed by - 2/26/20; Final date to take first step in dispositive motion practice - 3/27/20. An in-person settlement conference will be held on August 13, 2019 at 12:00 p.m. Parties are to submit their respective settlement positions via ex parte electronic filing no later than August 10, 2019. Counsel are to refer to the Settlement Section of this Court's Individual Rules in preparation for the conference. (FTR Log #12:04 - 12:07.) (Vasquez, Lea) (Entered: 05/31/2019) |
| 08/06/2019 | 14 | Consent MOTION to Adjourn Conference *Scheduled for August 13, 2019* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 08/06/2019) |
| 08/12/2019 | | ORDER denying 14 Motion to Adjourn Conference: The conference scheduled for August 13th will proceed as scheduled but instead be held as a status conference. So Ordered by Magistrate Judge Steven Tiscione on 8/12/2019. (Vasquez, Lea) (Entered: 08/12/2019) |
| 08/15/2019 | 15 | Minute Entry for Status Conference held on 8/13/2019 before Magistrate Judge Steven Tiscione: Fuchs, Cohen for Plaintiff; Faddis for Defendants. For the reasons discussed on the record, the settlement conference is adjourned to October 2, 2019 at 12:00 p.m. Parties shall file ex parte submissions by September 30, 2019. (FTR Log #12:07 - 12:38.) (Vasquez, Lea) (Entered: 08/15/2019) |

| 08/22/2019 | 16 | Letter MOTION for Extension of Time to Amend 1 Complaint, , Letter MOTION for Extension of Time to Complete Discovery *based on Adjournment of Settlement Conference* by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 08/22/2019) |
|---|---|---|
| 09/03/2019 |  | ORDER granting 16 Motion for Extension of Time to Amend ; granting 16 Motion for Extension of Time to Complete Discovery: New discovery deadlines will be set at the October 2nd conference is the case cannot be settled. So Ordered by Magistrate Judge Steven Tiscione on 9/3/2019. (Vasquez, Lea) (Entered: 09/03/2019) |
| 09/27/2019 | 17 | Consent MOTION to Adjourn Conference *for October 2, 2019* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 09/27/2019) |
| 09/27/2019 |  | ORDER denying 17 Motion to Adjourn Conference. The October 2nd conference will proceed as scheduled but instead be held as a status conference. So Ordered by Magistrate Judge Steven Tiscione on 9/27/2019. (Vasquez, Lea) (Entered: 09/27/2019) |
| 10/04/2019 | 18 | Minute Entry for Status Conference held on 10/2/2019 before Magistrate Judge Steven Tiscione: Cohen for Plaintiff; Faddis for Defendants. Parties are still awaiting receipt of Plaintiff's medical records, including from Plaintiff's recent surgery. Accordingly, the settlement conference is adjourned to November 25, 2019 at 2:00 p.m. Parties shall submit ex parte settlement statements by November 22, 2019. (FTR Log #12:11 - 12:17.) (Vasquez, Lea) (Entered: 10/04/2019) |
| 11/22/2019 | 19 | Letter *re Plaintiff's Settlement Position* by Balwinder Singh (Fuchs, Ilyssa) (Entered: 11/22/2019) |
| 11/22/2019 | 20 | Letter *Ex Parte Settlement Position Statement* by P.O. Mandeep Cheema, The City of New York (Faddis, Hannah) (Entered: 11/22/2019) |
| 11/26/2019 | 21 | Minute Entry for Settlement Conference held on 11/25/2019 before Magistrate Judge Steven Tiscione: Cohen & Fuchs for Plaintiff; Faddis for Defendants. Settlement discussions were held but the parties were unable to reach a disposition at this time. For the reasons discussed on the record, the deadline for completion of fact discovery is extended to March 31, 2020. The Court will hold a further settlement conference on April 7, 2020 at 11:00 a.m. (FTR Log #2:01 - 2:02, 2:52 - 3:00.) (Vasquez, Lea) (Entered: 11/26/2019) |
| 02/12/2020 |  | Case Reassigned to Judge Eric R. Komitee. Judge Nicholas G. Garaufis no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Mahoney, Brenna) (Entered: 02/12/2020) |
| 03/09/2020 | 22 | Letter MOTION for Extension of Time to Complete Discovery by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 03/09/2020) |
| 03/09/2020 |  | ORDER denying 22 Motion for Extension of Time to Complete Discovery without prejudice to renew once the application complies with this Court's Individual Rules regarding requesting adjournments or extensions of time. So Ordered by Magistrate Judge Steven Tiscione on 3/9/2020. (Vasquez, Lea) (Entered: 03/09/2020) |
| 03/09/2020 | 23 | Letter MOTION for Extension of Time to Complete Discovery by Balwinder Singh. (Attachments: # 1 Exhibit Proposed Discovery Plan) (Fuchs, Ilyssa) (Entered: 03/09/2020) |

| 03/09/2020 | | ORDER granting 23 Motion for Extension of Time to Complete Discovery. Fact discovery is extended to May 29, 2020, parties to exchange expert reports by June 20, 2020, expert depositions to be completed by July 29, 2020 and all discovery to be completed by July 31, 2020. The final date to take the first step in dispositive motion practice is extended to August 31, 2020. The settlement conference scheduled for April 7th will instead be held at 11:00 a.m. on June 4, 2020. So Ordered by Magistrate Judge Steven Tiscione on 3/9/2020. (Vasquez, Lea) (Entered: 03/09/2020) |
| --- | --- | --- |
| 05/27/2020 | 24 | Joint MOTION to Adjourn Conference , MOTION for Extension of Time to Complete Discovery by P.O. Mandeep Cheema, The City of New York. (Attachments: # 1 Exhibit Proposed Case Management Plan) (Faddis, Hannah) (Entered: 05/27/2020) |
| 05/29/2020 | | ORDER granting 24 Motion to Adjourn Conference; deferring ruling on 24 Motion for Extension of Time to Complete Discovery. The request to extend discovery for an additional days will be discussed during at the settlement conference. The settlement conference scheduled for June 4th will instead be held at 2:30 p.m. on June 12, 2020 and will be held by phone with all parties. Counsel for Plaintiff shall call into the conference at 2:30 p.m. with the Plaintiff on the line and counsel for Defendants shall call into the conference at 3:00 p.m. with principals on the line. Counsel are further directed to contact the court PRIOR TO JUNE 12TH to obtain the conference call-in information. So Ordered by Magistrate Judge Steven Tiscione on 5/29/2020. (Vasquez, Lea) Modified on 5/29/2020 (Vasquez, Lea). (Entered: 05/29/2020) |
| 06/08/2020 | 25 | Letter *Ex Parte Settlement Statement* by P.O. Mandeep Cheema, The City of New York (Attachments: # 1 Exhibit Defendants' Settlement Offer) (Faddis, Hannah) (Entered: 06/08/2020) |
| 06/16/2020 | 27 | Minute Order for Settlement Conference held on 6/12/2020 before Magistrate Judge Steven Tiscione: Fuchs & Cohen for Plaintiff; Faddis for Defendants. Settlement discussions were held but the parties were unable to reach a disposition at this time. In light of the ongoing NYPD mobilization and restrictions imposed by the pandemic, the Joint MOTION for Extension of Time to Complete Discovery 24 is granted as follows: All fact discovery to be completed by 8/28/20; Exchange of expert reports - 9/29/20; Expert depositions completed by - 10/29/20; All discovery completed by - 10/29/20; Final date to take first step in dispositive motion practice - 11/30/20. (Vasquez, Lea) (Entered: 06/16/2020) |
| 08/28/2020 | 28 | Joint MOTION for Extension of Time to Complete Discovery by P.O. Mandeep Cheema, The City of New York. (Attachments: # 1 Proposed Order) (Faddis, Hannah) (Entered: 08/28/2020) |
| 08/28/2020 | | ORDER deferring ruling and setting hearing on 28 Joint MOTION for Extension of Time to Complete Discovery : A motion hearing by phone will be held before the undersigned at 3:00 p.m. on September 2, 2020 with all counsel. Counsel are directed to connect to the conference using call-in number 888-557-8511 with access code 3152145. So Ordered by Magistrate Judge Steven Tiscione on 8/28/2020. (Vasquez, Lea) (Entered: 08/28/2020) |
| 09/03/2020 | 29 | Minute Order for Motion Hearing held on 9/3/2020proceedings held before Magistrate Judge Steven Tiscione: Fuchs, Cohen for Plaintiff; Faddis for Defendants. For the reasons discussed on the record, the Joint MOTION for Extension of Time to Complete Discovery 28 is granted and the Court adopts the proposed schedule for all remaining discovery [28-1] as follows: All of Fact Discovery Completed By October 27, 2020; Exchange of Expert Reports Completed By November 30, 2020; Expert Depositions |

| | | |
|---|---|---|
| | | Completed By December 28, 2020; COMPLETION OF ALL DISCOVERY January 29, 2021; Final date to take first step in dispositive motion practice: January 29, 2021.COUNSEL SHALL FILE JOINT STATUS REPORTS ON A MONTHLY BASIS BY THE LAST DAY OF EACH MONTH BEGINNING WITH SEPTEMBER 30TH.Parties will advise the Court when a settlement conference would be productive. (FTR Log #AT&T (3:00 - 3:10).) (Vasquez, Lea) (Entered: 09/03/2020) |
| 09/30/2020 | 30 | STATUS REPORT by Balwinder Singh (Fuchs, Ilyssa) (Entered: 09/30/2020) |
| 09/30/2020 | | STATUS REPORT ORDER: Counsel shall file the next status report by 10/30/2020. So Ordered by Magistrate Judge Steven Tiscione on 9/30/2020. (Vasquez, Lea) (Entered: 09/30/2020) |
| 10/23/2020 | 31 | Joint MOTION for Extension of Time to Complete Discovery *and Status Report* by P.O. Mandeep Cheema, The City of New York. (Attachments: # 1 Proposed Order Proposed Case Management Plan) (Faddis, Hannah) (Entered: 10/23/2020) |
| 10/26/2020 | | ORDER granting 31 Motion for Extension of Time to Complete Discovery: All fact discovery to be completed by 11/27/20; Exchange of plaintiff's expert reports - 11/30/20; Exchange of defendants' expert reports - 12/28/20; Expert depositions completed by - 1/29/21; All discovery completed by - 1/29/21; Final date to take first step in dispositive motion practice - 3/1/21. In lieu of the next status report, a telephone conference will be held at 2:00 p.m. on December 2, 2020 with all counsel. Counsel shall call connect to the conference using dial-in number 888-557-8511 with access code 3152145. This conference will not be adjourned. **THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court, is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court.** So Ordered by Magistrate Judge Steven Tiscione on 10/26/2020. (Vasquez, Lea) (Entered: 10/26/2020) |
| 11/30/2020 | 32 | Letter MOTION for Extension of Time to Complete Discovery by Balwinder Singh. (Attachments: # 1 Exhibit Revised Scheduling Plan) (Fuchs, Ilyssa) (Entered: 11/30/2020) |
| 12/06/2020 | 33 | Minute Order for Telephone Conference held on 12/2/2020 before Magistrate Judge Steven Tiscione: Fuchs, Cohen for Plaintiff; Faddis for Defendants. In light of ongoing delays in scheduling caused by pandemic-related restrictions, the Letter MOTION for Extension of Time to Complete Discovery 32 is granted. The deadline for exchange of initial expert reports is extended to December 21, 2020; the deadline for exchange of rebuttal expert reports is extended to January 18, 2021; the deadline for completion of all discovery, including expert depositions, is extended to February 19, 2021; and the deadline for beginning dispositive motion practice is extended to March 19, 2021. **NEXT STATUS REPORT REMAINS DUE BY DECEMBER 30, 2020.** The Court will hold a telephone conference on January 21, 2021 at 10:00 a.m. Counsel shall call connect to the conference using dial-in number 888-557-8511 with access code 3152145. **THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court, is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued** |

| | | |
|---|---|---|
| | | media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court. (FTR Log #AT&T 2:00 - 2:10.) (Vasquez, Lea) (Entered: 12/06/2020) |
| 12/30/2020 | 34 | STATUS REPORT by Balwinder Singh (Cohen, Gerald) (Entered: 12/30/2020) |
| 01/13/2021 | 35 | Consent MOTION for Extension of Time to Complete Discovery by P.O. Mandeep Cheema, The City of New York. (Attachments: # 1 Proposed Order Proposed Revised Discovery Order) (Faddis, Hannah) (Entered: 01/13/2021) |
| 01/14/2021 | | ORDER granting 35 Motion for Extension of Time to Complete Discovery: The deadline for exchange of rebuttal expert reports is extended to February 17, 2021; the deadline for completion of all discovery, including expert depositions, is extended to March 19, 2021; and the deadline for beginning dispositive motion practice is extended to April 19, 2021. A telephone conference will be held at 10:00 a.m. on February 19, 2021 before the undersigned with all counsel. Counsel shall call connect to the conference through dial-in number 888-557-8511 with access code 3152145. **THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court, is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court.** So Ordered by Magistrate Judge Steven Tiscione on 1/14/2021. (Vasquez, Lea) (Entered: 01/14/2021) |
| 02/22/2021 | 36 | Minute Entry for Telephone Conference held on 2/19/2021 before Magistrate Judge Steven Tiscione: Fuchs, Cohen for Plaintiff; Faddis for Defendants. Parties have exchanged expert reports but recently identified certain medical records that had not previously been disclosed despite proper releases being given to the medical providers. Based on these new records, Defendants' request for an extension of the discovery schedule is granted. Defendants shall exchange any rebuttal expert reports based on the newly discovered records by April 5, 2021; all expert depositions shall be completed by May 5, 2021; and the deadline for beginning dispositive motion practice is extended to June 4, 2021. The Court will hold a telephone conference on April 7, 2021 at 10:30 a.m. The parties shall use the same information which was provided for today's conference. **THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court, is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court.** (Vasquez, Lea) (Entered: 02/22/2021) |
| 04/02/2021 | 37 | Consent MOTION to Adjourn Conference *Scheduled for April 7, 2021* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 04/02/2021) |
| 04/02/2021 | | ORDER granting 37 Motion to Adjourn Conference. The telephone conference scheduled for April 7, 2021 will instead be held at 10:00 a.m. on April 22, 2021 before the undersigned with all counsel. Counsel shall call connect to the conference through |

| | | |
|---|---|---|
| | | dial-in number 888-557-8511 with access code 3152145.<br><br>**THE PARTIES ARE REMINDED that audio or video recording of proceedings by any party other than the Court, is strictly prohibited by Local Civil Rule 1.8. Violation of this rule may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed appropriate by the Court.**<br><br>So Ordered by Magistrate Judge Steven Tiscione on 4/2/2021. (DeSaro, Matthew) (Entered: 04/02/2021) |
| 04/23/2021 | 38 | Minute Entry for Telephone Conference held on 4/22/2021 before Magistrate Judge Steven Tiscione: Cohen, Fuchs for Plaintiff; Faddis for Defendants. Parties report that discovery is essentially complete. Defendants will be moving for summary judgment and Plaintiff is also contemplating making a dispositive motion. Both parties shall file their premotion conference letters by the June 4, 2021 deadline. Parties report that further settlement discussions would not be productive at this time but will advise the Court if that changes. (Vasquez, Lea) (Entered: 04/23/2021) |
| 06/03/2021 | 39 | Letter *re Plaintiff's Contemplated Summary Judgment Motion* by Balwinder Singh (Attachments: # 1 Exhibit A - Relevant Portions of Cheema Deposition) (Fuchs, Ilyssa) Modified on 6/4/2021 (Guy, Alicia). (Entered: 06/03/2021) |
| 06/04/2021 | 40 | Letter MOTION for pre motion conference *Regarding Defendants' Anticipated Motion for Summary Judgment* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 06/04/2021) |
| 06/08/2021 | 41 | RESPONSE in Opposition re 39 MOTION for pre motion conference *Regarding Plaintiff's Anticipated Motion for Summary Judgment* filed by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 06/08/2021) |
| 06/09/2021 | 42 | Letter *in Opposition re Defendants' Anticipated Motion for Summary Judgment* by Balwinder Singh (Fuchs, Ilyssa) (Entered: 06/09/2021) |
| 06/10/2021 | | ORDER re 39 Motion for Pre Motion Conference; re 40 Motion for Pre Motion Conference -- Plaintiff shall serve his motion by July 12, 2021; Defendants shall serve their cross-motion and opposition by August 26, 2021; Plaintiff shall serve his opposition and reply, if any, by October 12, 2021, and Defendants shall serve their reply, if any, by October 22, 2021. Each submission should be made in a single brief, following the page limits in Rule III.C of the Court's Individual Practices and Rules. As a courtesy to the Court, the parties are encouraged not to file their motion papers and submit courtesy copies until the motion has been fully briefed, unless doing so might cause a party to miss a statutory deadline. *See* Rule III.C.2 this Court's Individual Practices and Rules. Ordered by Judge Eric R. Komitee on 6/10/2021. (Guy, Alicia) (Entered: 06/10/2021) |
| 08/20/2021 | 43 | Consent MOTION for Extension of Time to File *Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment to September 10, 2021* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 08/20/2021) |
| 08/23/2021 | | ORDER granting 43 Motion for Extension of Time to File -- The application is granted on consent. The briefing schedule is amended as follows: Defendants shall serve their cross-motion and opposition by September 10, 2021; Plaintiff shall serve his opposition and reply, if any, by October 27, 2021; and Defendants shall serve their reply, if any, by |

| | | |
|---|---|---|
| | | November 8, 2021. Each submission should be made in a single brief, following the page limits in Rule III.C of the Court's Individual Practices and Rules. As a courtesy to the Court, the parties are encouraged not to file their motion papers and submit courtesy copies until the motion has been fully briefed, unless doing so might cause a party to miss a statutory deadline. *See* Rule III.C.2 this Court's Individual Practices and Rules. Ordered by Judge Eric R. Komitee on 8/23/2021. (Guy, Alicia) (Entered: 08/23/2021) |
| 09/09/2021 | 44 | Consent MOTION for Extension of Time to File *Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 09/09/2021) |
| 09/10/2021 | | ORDER granting 44 Motion for Extension of Time to File -- The application is granted on consent. The briefing schedule is amended as follows: Defendants shall serve their cross-motion and opposition by September 24, 2021; Plaintiff shall serve his opposition and reply, if any, by November 12, 2021; and Defendants shall serve their reply, if any, by November 26, 2021. Pursuant to Rule I.C.1 of this Court's Individual Practices and Rules, requests for extensions of time must be made at least two business days prior to the scheduled deadline. Failure to comply with this rule without showing good cause may result in denial of such requests in the future. The parties should expect that no further extensions will be granted, absent extraordinary circumstances. Ordered by Judge Eric R. Komitee on 9/10/2021. (Guy, Alicia) (Entered: 09/10/2021) |
| 11/22/2021 | 45 | Letter MOTION for Extension of Time to File */Serve Fully Submitted Summary Judgment Motions, etc.* by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 11/22/2021) |
| 11/23/2021 | | ORDER granting 45 Motion for Extension of Time to File -- The application is granted on consent. Defendants shall serve their reply, if any, by November 29, 2021. Regarding the parties' first inquiry, Plaintiff shall file all of the motion papers on ECF. Regarding the parties' second inquiry, the parties are relieved of their obligation to submit courtesy copies, and are directed to consult Rule II.A.4 of this Court's Individual Practices and Rules regarding the filing of non-text exhibits. Ordered by Judge Eric R. Komitee on 11/23/2021. (Guy, Alicia) (Entered: 11/23/2021) |
| 11/29/2021 | 46 | Notice of MOTION for Summary Judgment *re Plaintiff* by Balwinder Singh. (Attachments: # 1 Memorandum in Support re Plaintiff's Motion for Summary Judgment, # 2 Rule 56.1 Statement re Plaintiff's Motion for Summary Judgment, # 3 Declaration Gerald M. Cohen, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G(1-3), # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M) (Fuchs, Ilyssa) (Entered: 11/29/2021) |
| 11/29/2021 | 47 | EXHIBIT *F (corrected)* by Balwinder Singh. Related document: 46 Notice of MOTION for Summary Judgment *re Plaintiff* filed by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 11/29/2021) |
| 11/29/2021 | 48 | MOTION for Summary Judgment *re Defendants Cross-Motion and Opposition to Plaintiff's Motion* by Balwinder Singh. (Attachments: # 1 Memorandum in Support re Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion, # 2 Rule 56.1 Statement re Response to Plaintiff's 56.1 & Defendants Counter-Statement, # 3 Declaration Hannah V. Faddis, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit N, # 18 Exhibit O, # 19 Exhibit P) (Fuchs, Ilyssa) (Entered: 11/29/2021) |

| 11/29/2021 | 49 | MEMORANDUM in Opposition re 48 MOTION for Summary Judgment *re Defendants Cross-Motion and Opposition to Plaintiff's Motion*, 46 Notice of MOTION for Summary Judgment *re Plaintiff Reply in Further Support of Motion* filed by Balwinder Singh. (Attachments: # 1 Rule 56.1 Statement re Response to Defendants' 56.1, # 2 Declaration Gerald M. Cohen, # 3 Exhibit N, # 4 Exhibit O(1-5)) (Fuchs, Ilyssa) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 50 | REPLY in Opposition re 46 Notice of MOTION for Summary Judgment *re Plaintiff*, 49 Memorandum in Opposition, 48 MOTION for Summary Judgment *re Defendants Cross-Motion and Opposition to Plaintiff's Motion in Further Support of Defendants' Motion* filed by Balwinder Singh. (Attachments: # 1 Rule 56.1 Statement re Reply to Plaintiff's Counter-Statement) (Fuchs, Ilyssa) (Entered: 11/29/2021) |
| 12/06/2021 | 51 | USB Drive containing non-text Exhibits submitted by Balwinder Singh. Related document: 46 Notice of MOTION for Summary Judgment *re Plaintiff* filed by Balwinder Singh, 50 Reply in Opposition, filed by Balwinder Singh. (Lee, Tiffeny) (Entered: 12/07/2021) |
| 04/09/2022 | | ORDER REFERRING MOTION: The Parties' motions for summary judgment (ECF Nos 46 48 ) are respectfully referred to Magistrate Judge Steven Tiscione for a Report and Recommendation. Ordered by Judge Eric R. Komitee on 4/9/2022. (Guy, Alicia) (Entered: 04/09/2022) |
| 04/09/2022 | | SCHEDULING ORDER: A telephone conference will be held on April 13, 2022, at 10:30 a.m. before the undersigned. The parties are directed to call 888-808-6929 five minutes before the scheduled start of the conference and use access code 564-7824. Ordered by Judge Eric R. Komitee on 4/9/2022. (Guy, Alicia) (Entered: 04/09/2022) |
| 04/13/2022 | | Incorrect Case/Document/Entry Information -- The Scheduling Order erroneously entered today, April 13, 2022, has been deleted. (Guy, Alicia) (Entered: 04/13/2022) |
| 04/13/2022 | 52 | NOTICE of Appearance by Gerald M. Cohen on behalf of All Plaintiffs (aty to be noticed) (Cohen, Gerald) (Entered: 04/13/2022) |
| 04/13/2022 | 53 | Minute Entry for proceedings held before Judge Eric R. Komitee: Telephone Conference held on 4/13/2022 regarding the Court's referral of the Parties' motions for summary judgment (docket entries 46 & 48 ) to Magistrate Judge Tiscione. The Parties are to advise the Court by May 13, 2022, if they consent to either (a) having Judge Tiscione decide the motions pursuant to 28 U.S.C. § 636(c), rather than simply rendering a report and recommendation, or (b) consent for all purposes. The form to consent to having Magistrate Judge Tiscione decide the referred motion, and the form to consent for all purposes, are attached. To advise the Court of their collective determination, the parties should file the relevant consent form.(Electronically Recorded.) (Attachments: # 1 NOTICE, CONSENT, AND REFERENCE OF A CIVIL ACTION TO A MAGISTRATE JUDGE, # 2 NOTICE, CONSENT, AND REFERENCE OF A DISPOSITIVE MOTION TO A MAGISTRATE JUDGE) (Guy, Alicia) (Entered: 04/16/2022) |
| 05/10/2022 | 54 | Letter *Regarding No Consent to Magistrate Judge* by P.O. Mandeep Cheema, The City of New York (Faddis, Hannah) (Entered: 05/10/2022) |
| 06/28/2022 | 55 | REPORT AND RECOMMENDATIONS re 46 Notice of MOTION for Summary Judgment *re Plaintiff* filed by Balwinder Singh, 48 MOTION for Summary Judgment *re Defendants Cross-Motion and Opposition to Plaintiff's Motion* filed by Balwinder |

|  |  |  |
|---|---|---|
|  |  | Singh. For the reasons stated in the attached Report & Recommendation, this Court respectfully recommends that (1) Plaintiffs Motion for Summary Judgment be denied; and (2) Defendants Cross-Motion for Summary Judgment be granted in part and denied in part. Objections to R&R due by 7/12/2022. So Ordered by Magistrate Judge Steven Tiscione on 6/28/2022. (Mistry-Sehgal, Nikita) (Entered: 06/28/2022) |
| 08/04/2022 | 56 | Letter *re Request Adoption of Report & Recommendation and Schedule Telephonic Conference to Set Trial Date* by Balwinder Singh (Fuchs, Ilyssa) (Entered: 08/04/2022) |
| 09/30/2022 | 57 | **MEMORANDUM & ORDER ADOPTING REPORT AND RECOMMENDATIONS**. The R&R 55 is adopted in part. Plaintiff's Motion for Summary Judgment on his excessive-force claim 46 is DENIED. Defendant Cheema's Motion for Summary Judgment 48 is GRANTED as to Plaintiff's Section 1983 claims for false arrest and excessive force, and state-law claim for assault and battery. The parties shall file letters by October 6, 2022, indicating whether they have stipulated to the dismissal of the municipal liability claim, and (if not) whether they intend to do so. **ORDER ATTACHED.** Ordered by Judge Eric R. Komitee on 9/30/2022. (Iseman, Eugenie). (Entered: 09/30/2022) |
| 10/06/2022 | 58 | Letter MOTION for Extension of Time to File *Stipulation of Dismissal as to Monell Claim* by Balwinder Singh. (Fuchs, Ilyssa) (Entered: 10/06/2022) |
| 10/07/2022 |  | ORDER granting 58 Motion for Extension of Time to File -- The joint request is granted. No later than November 7, 2022, the parties shall file a stipulation of dismissal. Ordered by Judge Eric R. Komitee on 10/7/2022. (AG) (Entered: 10/07/2022) |
| 11/02/2022 | 59 | Letter *re Parties Inability to Agree on a Stipulation and Order of Voluntary Dismissal* by Balwinder Singh (Attachments: # 1 Exhibit A - Plaintiff's Proposed Stipulation and Judgment, # 2 Exhibit B - Stipulation and Judgment in Jeffrey v. City of New York, et al. 20 CV 2843 (NGG), # 3 Exhibit C - 9/23/21 Email, # 4 Exhibit D - Defendants' Proposed Stipulation) (Fuchs, Ilyssa) (Entered: 11/02/2022) |
| 11/09/2022 |  | SCHEDULING ORDER: A status conference will be held on November 22, 2022, at 9:30 a.m. in Courtroom 6G North before the undersigned. Ordered by Judge Eric R. Komitee on 11/09/2022. (AG) (Entered: 11/11/2022) |
| 11/20/2022 | 60 | Consent MOTION to Adjourn Conference *or Convert to Telephonic Appearance* by P.O. Mandeep Cheema, The City of New York. (Faddis, Hannah) (Entered: 11/20/2022) |
| 11/21/2022 |  | ORDER terminating 60 Motion to Adjourn Conference -- The status conference will proceed as scheduled on November 22, 2022, at 9:30 a.m. Plaintiff's counsel shall appear in person; Defendants' counsel can appear by telephone. Defendant's counsel is directed to call 888-808-6929 five minutes before the scheduled start of the conference and use access code 564-7824. Ordered by Judge Eric R. Komitee on 11/21/2022. (AG) (Entered: 11/21/2022) |
| 11/22/2022 | 61 | Minute Entry for proceedings held before Judge Eric R. Komitee: Status Conference held on 11/22/2022. Case called. Discussion held. As discussed, the parties will submit a stipulation of dismissal as to the sole remaining claim and the Court will enter judgment. (FTR Log #9:38 - 9:52.) (AG) (Entered: 11/22/2022) |
| 12/02/2022 | 62 | STIPULATION of Dismissal *Stipulation of Partial Dismissal as to Monell Claims* by P.O. Mandeep Cheema, The City of New York (Faddis, Hannah) (Entered: 12/02/2022) |

| | | |
|---|---|---|
| 12/05/2022 | | ORDER DISMISSING CASE -- As stipulated and agreed between the parties in the joint Stipulation of Partial Dismissal as to *Monell* Claims [62] filed on December 2, 2022 (the "Monell Stipulation"), all claims for municipal liability brought pursuant to 42 U.S.C. § 1983 against the City of New York shall be dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment consistent with the parties' *Monell* Stipulation and this Court's Memorandum and Order [55] dated September 30, 2022, and close this case. Ordered by Judge Eric R. Komitee on 12/5/2022. (AG) (Entered: 12/05/2022) |
| 12/06/2022 | 63 | CLERK'S JUDGMENT, that Plaintiffs motion for summary judgment on his excessive-force claim is denied; that Cheemas cross-motion for summary judgment is granted as to Plaintiffs Section 1983 claims for false arrest and excessive force, and state-law claim for assault and battery; and the following is stipulated and agreed as follows: 1. The above-referenced claims for municipal liability brought pursuant to 42 U.S.C. § 1983 against the City of New York are hereby dismissed with prejudice; 2. Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, any and all of the claims that were asserted or could have been asserted by or on behalf of plaintiff Balwinder Singh against defendant the City of New York, including its successors and assigns, for municipal liability pursuant to 42 U.S.C. § 1983, arising out of the facts and circumstances that are the subject of this action, are hereby dismissed and discontinued, with prejudice, and without attorneys fees, costs, or disbursements to any party as against the other; 3. This Stipulation contains all the terms and conditions agreed upon by counsel for defendants and counsel for plaintiff hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein; and 4. This Stipulation shall be binding upon the parties immediately upon signature and shall be submitted to the Court for entry as an Order. (Signed by Jalitza Poveda, Deputy Clerk on 12/6/2022) (SG) (Entered: 12/06/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/04/2023 14:41:44 | | |
| **PACER Login:** | joshuafitch | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-00632-EK-ST |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |