# 23-24CV

---

## United States Court of Appeals
## for the Second Circuit

---

BALWINDER SINGH,

*Plaintiff-Appellant,*

*against*

THE CITY OF NEW YORK, P.O. MANDEEP CHEEMA, Tax Id.
No. 950196, Individually and in his Official Capacity,
POLICE OFFICERS JOHN DOE #1-10, Individually and in
their Official Capacity (the name John Doe being
fictitious, as the true names are presently unknown),

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of New York

---

**BRIEF FOR APPELLEES**

---

RICHARD DEARING
JAMISON DAVIES
AMY MCCAMPHILL
*of Counsel*

July 19, 2023

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-2317 or -2490
amccamph@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iv

PRELIMINARY STATEMENT ............................................................ 1

ISSUES PRESENTED FOR REVIEW .................................................... 3

STATEMENT OF THE CASE ............................................................. 4

    A.  The police bring an intoxicated, uncooperative Singh to
        the hospital ....................................................................... 4

        1. After Singh's wife calls 911, two EMTs arrive and find
            Singh "in an irrational state" ....................................... 4

        2. The EMTs call the police, in response to Singh's
            "aggressive" behavior and their concerns for their
            safety ....................................................................... 7

        3. The police officers observe Singh to be "incoherent,"
            "erratic and aggressive," and "argumentative" ..................... 9

        4. Singh "grudgingly" agrees to go to the hospital, but
            then suddenly changes his mind ........................................ 12

        5. After Singh makes a sudden movement in the direction
            of Officer Walker, Officer Cheema takes Singh to the
            floor and handcuffs him ........................................... 13

        6. Singh continues to act "aggressive" and
            "argumentative" at the hospital, where doctors record
            his high blood alcohol level ................................... 15

    B.  The district court's order granting summary judgment in
        Singh's ensuing federal action ................................. 16

i

# TABLE OF CONTENTS (cont'd)

**Page**

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT ........... 20

ARGUMENT ................................................................................. 22

POINT I ...................................................................................... 22

THE DISTRICT COURT CORRECTLY GRANTED
SUMMARY JUDGMENT ON SINGH'S EXCESSIVE
FORCE CLAIM ............................................................... 22

A. No reasonable juror could conclude that Officer Cheema's
conduct violated the Fourth Amendment. .............................. 24

1. The momentary force that Officer Cheema used to
restrain Singh was not excessive. ......................................... 26

2. Singh's contrary arguments misconstrue the record
and the law. ........................................................................... 30

B. No precedent clearly establishes that Officer Cheema's
behavior here constitutes excessive force ................................ 37

POINT II ...................................................................................... 41

THIS COURT SHOULD AFFIRM DISMISSAL OF SINGH'S
FALSE ARREST CLAIM .............................................................. 41

A. Singh waived any challenge to dismissal of his false
arrest claim by failing to object to the magistrate's
recommendation ....................................................................... 42

B. Singh's false arrest claim fails on the merits, because
Officer Cheema had at least arguable probable cause to
detain Singh. ............................................................................. 44

POINT III ..................................................................................... 52

## TABLE OF CONTENTS (cont'd)

**Page**

THE DISMISSAL OF SINGH'S STATE LAW ASSAULT
AND BATTERY CLAIMS WAS PROPER, FOR MULTIPLE
REASONS ....................................................................... 52

CONCLUSION .................................................................... 55

CERTIFICATE OF COMPLIANCE........................................ 56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aponte v. Kanbur*,
No. 20-624, 2021 U.S. App. LEXIS 26053 (2d Cir. Aug. 30, 2021)................................................................................................34

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)............................................................................23

*Beshears v. Winters*,
No. 09-2017, 2011 U.S. Dist. LEXIS 4634 (C.D. Ill. Jan. 18, 2011)............................................................................................29

*Brown v. City of N.Y.*,
192 A.D.3d 963 (2d Dep't 2021)........................................................53

*Brown v. City of N.Y.*,
798 F.3d 94 (2d Cir. 2015) ................................................................28

*Cerrone v. Brown*,
246 F.3d 194 (2d Cir. 2001) ..............................................................22

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019)..........................................................................39

*City of Tahlequah v. Bond*,
142 S. Ct. 9 (2021)..................................................................21, 38, 40

*Cowan v. Breen*,
352 F.3d 756 (2003) ...........................................................................24

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018)....................................................................38, 47

*Escalera v. Lunn*,
361 F.3d 737 (2d Cir. 2004) ..............................................................48

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Flanigan v. Town of Colchester*,
171 F. Supp. 2d 361 (D. Vt. 2001) ...................................................... 29

*Graham v. Connor*,
490 U.S. 386 (1989) ............................................................... *passim*

*Hemphill v. Schott*,
141 F.3d 412 (2d Cir. 1998) ............................................................... 30

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010) ........................................................ 22, 31

*Hodge v. City of Long Beach*,
425 F. App'x 33 (2d Cir. 2011) .................................................... 25, 28

*Keene v. Schneider*,
350 F. App'x 595 (2d Cir. 2009) ........................................................ 41

*Kerman v. City of N.Y.*,
261 F.3d 229 (2d Cir. 2001) ........................................................ 48, 52

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) ..................................................................... 39

*Kulak v. City of N.Y.*,
88 F.3d 63 (2d Cir. 1996) ............................................................ 22, 32

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995) ............................................................... 39

*Lloyd v. Tassell*,
384 F. App'x 960 (11th Cir. 2010) ...................................................... 28

*MacLeod v. Town of Brattleboro*,
548 F. App'x 6 (2d Cir. 2013) ........................................................... 31

v

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Mara v. Rilling*,
921 F.3d 48 (2d Cir. 2019) ...................................................... 23, 37, 47

*Mario v. N. Am. Health Plans, Inc.*,
No. 98-cv-264A, 2001 U.S. Dist. LEXIS 25522 (W.D.N.Y.
Sep. 26, 2001) ........................................................................ 43

*Mario v. P & C Food Markets, Inc.*,
313 F.3d 758 (2d Cir. 2002) ......................................................... 42-43

*Mawhirt v. Ahmed*,
8 F. App'x 125 (2d Cir. 2001) .................................................... 54

*Messerschmidt v. Millender*,
565 U.S. 535 (2012) ................................................................. 37

*Morse v. Fitzgerald*,
10-cv-6306 CJS, 2013 U.S. Dist. LEXIS 40661 (N.Y.W.D.
March 20, 2013) .................................................................... 36

*Moss v. Colvin*,
14 Civ. 2331, 2015 U.S. Dist. LEXIS 79569 (S.D.N.Y. June
18, 2015) ............................................................................... 43

*Moss v. Colvin*,
845 F.3d 516 (2d Cir. 2017) ...................................................... 43

*Myers v. Patterson*,
819 F.3d 625 (2d Cir. 2016) ....................................................... 48, 49

*Niagara Mohawk Power Corp. v. Hudson River-Black River
Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012) ......................................................... 53

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't*,
577 F.3d 415 (2d Cir. 2009) ........................................................ 38

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Ortiz v. City of N.Y.,*
No. 15-cv-2206 (DLC), 2016 U.S. Dist. LEXIS 165219
(S.D.N.Y. Nov. 30, 2016) .................................................................... 46

*Panetta v. Crowley,*
460 F.3d 388 (2d Cir. 2006) .............................................................. 47

*Pinero v. Burbran,*
18-cv-4698(AJN), 2021 U.S. Dist. LEXIS 176526 (S.D.N.Y.
Sept. 16, 2021) ................................................................................ 29

*Rivas-Villegas v. Cortesluna,*
142 S. Ct 4 (2021).................................................................... 21, 40

*Root v. Liston,*
444 F.3d 127 (2d Cir. 2006) .............................................................. 21

*Saucier v. Katz,*
533 U.S. 194 (2001)........................................................................ 23

*Scott v. Harris,*
550 U.S. 372 (2007)................................................................... 21, 40

*Shenandoah v. United States DOI,*
159 F.3d 708 (2d Cir. 1998) .............................................................. 54

*Tardif v. City of N.Y.,*
991 F.3d 394 (2d Cir. 2021) .............................................................. 53

*Thomas v. Arn,*
474 U.S. 140 (1985)................................................................... 42, 44

*Tracy v. Freshwater,*
623 F.3d 90 (2d Cir. 2010) ........................................................ *passim*

*Weather v. City of Mount Vernon,*
474 F. App'x 821 (2d Cir. 2012) ........................................................ 36

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Weyant v. Okst,*
  101 F.3d 845 (2d Cir. 1996) ......................................................... 45, 53

*White v. Pauly,*
  580 U.S. 73 (2017) ................................................................................ 37

*Zalaski v. City of Hartford,*
  723 F.3d 382 (2d Cir. 2013) ............................................................... 38

**Statutes**

New York Mental Hygiene Law § 22.09(a) ................................. 45, 47, 50

New York Mental Hygiene Law § 22.09(b) ........................... 44, 45, 46, 51

New York Mental Hygiene Law § 9.41(a) .............................................. 51

## PRELIMINARY STATEMENT

Early one morning, plaintiff Balwinder Singh's wife called 911 to report that her husband drank too much and needed to go to the hospital. The EMTs found Singh "in an irrational state" and uncooperative with their attempts to assist him. He "became aggressive" with the crew, "yelling profanities" and "belligerently approaching" them. The EMTs requested police assistance "ASAP." When the police arrived, they also observed Singh to be "incoherent" and "aggressive." Yet after a few minutes, he "begrudgingly" agreed to go to the hospital.

Once he dressed, however, he placed his hands behind his back and told defendant Officer Mandeep Cheema that the police would need to arrest him. But as the officer reached for his handcuffs, Singh quickly moved his hands to his front and took a step towards the open door and Officer Cheema's partner. In a split-second decision, Officer Cheema assessed Singh's sudden, unexpected movement as a threat, wrapped his arms around Singh and took him down to the floor to handcuff him. On this record, the district court (Komittee, J.) granted summary judgment to Officer Cheema on Singh's false arrest and excessive force claims, and ultimately entered judgment for defendants. This Court should affirm.

Officer Cheema's momentary use of a modest degree of force, in response to Singh's sudden, threatening movement, was not excessive. At the very least, Officer Cheema is entitled to qualified immunity, because his conduct did not violate any clearly established law. There are no genuine disputes of material fact. Singh's intoxication and his erratic, aggressive behavior were contemporaneously documented in the EMT, police, and hospital paperwork. And Singh's sudden, unanticipated movement, and Officer Cheema's proportionate response, were captured on Singh's home security camera.

As for Singh's false arrest claim, by declining to object to the magistrate's recommendations he has forfeited any challenge to its dismissal. But this claim also fails on the merits. Officer Cheema had probable cause to detain Singh for medical evaluation, since Singh appeared incapacitated due to alcohol. At the very least, Officer Cheema had arguable probable cause, and thus is entitled to qualified immunity.

Last, because Officer Cheema's use of force was reasonable under the circumstances, Singh's state-law assault and battery claims also fail as a matter of law.

2

## ISSUES PRESENTED FOR REVIEW

1. Should this Court affirm dismissal of Singh's federal excessive force claim, when (a) Officer Cheema momentarily used a modest degree of force to restrain Singh in response in Singh's sudden, unexpected movement, under tense circumstances, and (b) no clearly established law prohibited such conduct?

2. Should this Court affirm dismissal of Singh's false arrest claim, when (a) Singh never objected to the magistrate's recommended dismissal of this claim, and (b) in any event, Officer Cheema had at least arguable probable cause to detain Singh, when Officer Cheema, the EMTs, and Singh's own wife assessed that he needed to be medically evaluated at a hospital?

3. Should this Court affirm dismissal of Singh's state-law assault and battery claims, where Officer Cheema's behavior was reasonable under the circumstances?

3

## STATEMENT OF THE CASE

### A. The police bring an intoxicated, uncooperative Singh to the hospital

This suit stems from Officer Cheema's actions in bringing Singh to the hospital for medical evaluation, when Singh was intoxicated and uncooperative with emergency personnel.

### 1. After Singh's wife calls 911, two EMTs arrive and find Singh "in an irrational state"

On the day of the incident, at around 6:00 a.m., Singh's wife found him in their living room, and realized he had been drinking beer (Joint Appendix ("JA") 226-27). In her recollection, he "was behaving very funny"—acting "childish" and "immature" (JA1101-02). She observed empty beer bottles by the garbage (JA1100) and grew concerned, because her mother-in-law had warned that "his health will deteriorate quickly if he drinks" (JA1106).

Singh's wife called 911 at about 6:15 a.m., and reported that Singh drank "too much" and needed to go to a hospital (JA99, Ex. D (audio recording) at 0:25 to 0:28, 1:11 to 1:17). When asked if they were fighting, Singh's wife said "yeah" (JA99, Ex. D, at 1:08 to 1:11).

Two EMTs arrived about fifteen minutes later (JA116). Although neither EMT later had an independent recollection of this job (JA893-94, 1015), they contemporaneously documented it in the Prehospital Care Report prepared by EMT Nicole Milonas (JA116-18).[1] That report states that Singh's wife told the EMTs that he "was drinking and is not acting normal" (JA118). She also said that Singh "is a harm to himself" (JA118)).[2] The report noted Singh's history of psychiatric problems, namely "anxiety, bipolar [disorder, and] depression" (JA116). Singh was "non cooperative with unit questioning," and he refused to allow them to take his blood pressure and pulse (JA117-18).

The EMTs observed Singh to be, in part, "alert and oriented," but with "periods of incoherency" (JA118). Although he had a Glasgow Coma

---

[1] While much of the report is written in all caps, this brief quotes the report using regular capitalization for readability.

[2] Singh now asserts that his wife "denies ever saying this" (Brief for Appellant ("App. Br.") 51) but does not cite anywhere in her testimony where she specifically denied making such a statement. Rather, in the passage cited by Singh (App. Br. 17 (citing JA1113)), she states that she "tried to communicate" to the EMTs her husband's "health issues," but "could not communicate well with them" because she does not speak English well.

Score of 15 for alertness (JA117), he was "in an irrational state," with a "semi steady gait" (JA118).[3]

The EMTs concluded that Singh needed medical attention (JA924), and that he was unable to refuse because "[h]e did not have that decision making capacity" (JA926). While Singh was talking to the EMTs, his wife also told him to go with them to the hospital (JA236). Although Singh told the EMTs "I don't need to go to the hospital," his wife still believed that he needed to go (JA1115).

Before the EMTs arrived, Singh told his wife that he'd "be happy to go to the hospital" (JA235). Nonetheless, he refused to go to the hospital with the EMTs (JA235). He admits that he was "angry" to see them, and spoke to them in a "loud" voice (JA235-36). Despite his anger, Singh claims that he "was talking nicely" to the EMTs at the time (JA235).

At the time of the incident, Singh had a home security system that recorded video and sound inside his apartment (JA301, 307-08). He preserved the video recordings from the first four and a half minutes when the EMTs arrived, bearing time stamps 6:32 a.m. to 6:37 a.m.

---

[3] The Glasgow Coma Scale is a "widely used tool for measuring comas and decreases in consciousness." Cleveland Clinic, "Glasgow Coma Scale," *available at* https://perma.cc/9F3F-NP7B (created July 8, 2023).

6

(JA309, 1333, Ex. N (video recording)), without any sound.[4] He did not preserve the recording of the time before the EMTs arrived, when his wife called 911 (JA310).

In Singh's words, he was in a "funny mood" at the time that he spoke to the EMTs (JA237, 345-46). At one point, he stood up and mimed dancing, to show that "[t]his is my house," and that he could "even dance in my house" (JA238). The video recording shows Singh talking to the EMTs from a seated position on the couch for over three minutes (JA1333, Ex. N), then Singh stands up, points his hands to the ceiling twice, and stumbles back to a seated position (*id.* at 3:40 to 3:52).

### 2. The EMTs call the police, in response to Singh's "aggressive" behavior and their concerns for their safety

The Prehospital Care Report documents that Singh, at some point, "became aggressive with [the EMT] crew"; he was "yelling profanities and beligerently [sic] approaching crew" (JA118).

At 6:38 a.m., the EMTs first requested police assistance, messaging to the dispatcher "PLZ SEND RMP [radio motor patrol car], UNCO-OP

---

[4] Singh claims that he does not know how to operate the audio recording feature of his security system (JA307-08).

7

PT" (JA1299). Six minutes later, the EMTs again requested police assistance "ASAP" (JA1300). Singh did not preserve this portion of the video recording, covering the period of time during which the EMTs reported that Singh threatened them and they requested police assistance (JA309-10). Rather, there is a gap in the videos of the incident from 6:37 a.m. to 6:44 a.m.

Officers Mandeep Cheema, Malinda Walker, and Justin Davis arrived around 6:44 a.m. (JA119, Ex. G. (video recording)). In Singh's own words, he was "really—really—really pissed off" that the police arrived (JA238)

When Officer Cheema arrived, he spoke to one of the EMTs (JA453-54).[5] An EMT told Officer Cheema that Singh "was being uncooperative with them to the point where it made them feel unsafe" (JA455). Singh's "erratic behavior … caused them concern for their safety" (JA457).

---

[5] While Singh now claims that this conversation "is in dispute" (App. Br. 20), he merely points to EMT Milonas's testimony that she didn't remember anything about this job and that she couldn't see from the video that she spoke to Officer Cheema (App. Br. 21). None of that contradicts Officer Cheema's testimony that he spoke to an EMT while he was facing Singh (JA521-22).

### 3. The police officers observe Singh to be "incoherent," "erratic and aggressive," and "argumentative"

Officer Cheema understood from the EMTs that Singh "was intoxicated. He was incoherent. He had signs of an altered mental state, and that they couldn't leave him for fear that something might happen to him if they didn't get him evaluated" (JA455-56). Officer Davis also remembers the EMTs explaining that Singh was "uncooperative," "just too drunk," and had to go to the hospital; the EMTs had determined that "he was under the influence of alcohol at a high level" (JA675-76).

The police officers' observations accorded with what the EMTs had told them. Officer Cheema also observed Singh to be intoxicated (JA497). Singh was acting "erratic and aggressive," with his behavior changing between "being angry, and playful, and excited" (JA505). Singh was "rambling a lot," and was "very incoherent" (JA457). Officer Davis also observed Singh to be "saying random things"; Singh was "argumentative," but not capable of "back and forth argument" or "constructive conversation" (JA692). Moreover, Singh "was slurring his speech" (JA714). Officer Davis felt that Singh "was being verbally

9

aggressive enough that it would pass verbal aggression at some point" (JA698).

In Officer Cheema's recollection, Singh was "yelling and cursing in English and in Punjabi," which Officer Cheema understood (JA457). Officer Davis also recalled Singh to be "[y]elling and arguing"; going "[b]ack and forth" between English and his native language; and "cursing at his wife, angry at her for calling the police" (JA678-79).

Officer Cheema recalled that Singh "kept looking at his wife" and saying, in Punjabi, words to the effect of "[l]ook what you did, you brought all these people here, you're going to pay" (JA458-59). Singh was "pretty much implying to her that he was going to take some type of action towards her once we left" (JA459). Officer Cheema assessed "that the situation was escalating at that point" (JA460, 463, 465).

Singh denies threatening his wife (JA347), but admits that he blamed her for the situation. In his recollection, he told her "this is not right. You—you are sending me to the hospital with handcuffs on. … [T]his is not right" (JA251). And he claims to have told her in Punjabi "you're not doing good to me. … it's not a good thing that you did to me" (JA347).

10

Singh's wife recalls that her husband's "behavior was normal" and that "he was not drunk" by the time he spoke to the EMTs, and denies that Singh "said anything out of anger" to her, the EMTs, or the police (JA1114, 1136). But nonetheless, she still "absolutely" agreed that he "needed to go to the hospital" (JA1115).

After consulting with the EMTs and observing Singh, Officer Cheema agreed with the EMTs' assessment that Singh was so intoxicated that he required medical attention (JA478). Officer Cheema also assessed that Singh was unable to care for himself, based on his intoxication and erratic behavior (JA505). Because Singh's wife was insisting that the police take him to the hospital, Officer Davis suspected that she may have been "fearful" that if the police left "something … might happen" (JA691).

Singh's interactions with the police were captured on his home video recording (JA119, Ex. G), though Singh failed to preserve earlier portions of the recording, including the time period when the EMTs called the police. The first half of the video shows Singh talking to the police while sitting on the couch (JA119, Ex. G, at 0:00 to 3:43). Because Singh either did not capture or did not preserve the audio recording, the parties' conversations are not audible.

11

### 4. Singh "grudgingly" agrees to go to the hospital, but then suddenly changes his mind

Officer Cheema tried to convince Singh to go to the hospital voluntarily (JA465). Officer Walker remembered that Singh was "giving a hard time at first," because "[h]e didn't want to go to the hospital" (JA814). But ultimately Singh "was back and forth" on what he said he would do, since "[t]here was no coherent conversation happening whatsoever" (JA718).

After about five minutes, Singh agreed to go with the police to the hospital (JA242-43). The parties agree that Singh's assent was "grudgingly" given (JA467, 30). The video shows that Singh stood up and dressed for a few minutes—putting on his pants, shoes, and jacket—with the three officers facing and watching him (JA119, Ex. G, at 3:43-7:15).

In Officer Cheema's recollection, Singh changed his mind during this period, saying that he didn't want to go to the hospital after all (JA483). That Singh changed his mind so suddenly concerned Officer Cheema (JA546).

12

### 5. After Singh makes a sudden movement in the direction of Officer Walker, Officer Cheema takes Singh to the floor and handcuffs him

After Singh got dressed, the officers opened the door to exit (JA119, Ex. G, at 7:24 to 7:28). Singh then turned towards the door and moved his hands behind his back (*id.* at 7:57 to 7:58), as he told Officer Cheema, "[f]ine. You're going to have to handcuff me" (JA484-85; *see also* JA736 (Officer Davis's testimony)). At that point, Officer Cheema was "getting ready" to handcuff Singh (JA485, 548). He reached on his belt for his handcuffs (JA119, Ex. G, at 7:57 to 8:00).

Then Singh pulled his arms to his front, saying "I'm just joking. You're not going to handcuff me" and took a sudden step in the direction of Officer Walker and the door (JA485; 119, Ex. G, at 8:01 to 8:02).[6] At the time, Officer Walker was 5 feet two inches tall and weighed about 140 pounds (JA787); the video shows that she was of noticeably smaller stature than Singh (JA119, Ex. G).

---

[6] Originally, in his deposition, Singh stated that he "nicely moved [his] hand" to get a cup of water from his wife before Officer Cheema took him down (JA244-45, 323-34). Singh later changed his story and agreed with Officer Cheema that he moved his hands to his front to accompany his "I'm just joking" statement (JA31).

13

Officer Cheema assessed Singh's sudden, erratic movement as a potential threat. In Officer Cheema's words: "It was a sudden step towards my partner. … At that point, based off of his behavior, and based off of everything that led up to that point, just different levels of aggression that he kept displaying the whole time, his behavior changing, and at that point I no longer felt, like, okay this is a safe scene" (JA485; *see also* 486). Officer Davis agreed that there was "a possibility" that Singh could attack someone (JA740); he "didn't know what was going to happen" at that moment because Singh "was acting erratic" (JA738).

Officer Cheema grabbed Singh from behind, wrapping his arms around Singh's chest, and took him to the ground (JA119, Ex. G, at 8:02 to 8:04). Immediately afterwards, the officers stood the now-handcuffed Singh up and walked him out of the apartment, to the hospital (*id.* at 8:19 to 8:31). Officer Cheema's action caused bruising on Singh's forehead (JA145-53) and allegedly exacerbated Singh's pre-existing shoulder condition (*see* JA137-44).

Afterwards, the officers agreed that Officer Cheema's action was a reasonable reaction to Singh's sudden unexpected movement (JA841-42 (Officer Walker (agreeing that "Singh needed to be forcibly restrained"));

14

744-46 (Officer Davis) (agreeing that Officer Cheema used an appropriate amount of force)). Officer Cheema prepared a police report documenting that he provided aid to Singh (JA120-21). In the section "actions of EDP [emotionally disturbed person]," the form records a "no" for every question, including "[u]nder suspected alcohol influence" (JA121); Officer Cheema later clarified that this notation was "100 percent incorrect" (JA506), because he "didn't understand the [computerized] system fully at that time" (JA497). Officer Cheema "ma[d]e it a point to put a narrative where [he] could actually type out what [his] observations were" (JA497-98). In that narrative, Officer Cheema wrote: "at t/p/o [time/place/occurrence] aided intox/combative removed to Jamaica Hospital for treatment" (JA121 (capitalization removed)).

### 6. Singh continues to act "aggressive" and "argumentative" at the hospital, where doctors record his high blood alcohol level

Singh's hospital records note his "chief complaint[s]" as "aggressive behavior" and "alcohol problem" (JA1308 (capitalization removed)). Singh presented as "hand cuffed by police, verbally abusive, noisy and uncooperative" (JA1308), with "a history of anxiety and bipolar depression" (JA1318).

15

Officer Cheema recalled that Singh was "yelling and cursing" at the hospital (JA568). Similarly, Officer Davis recalled that Singh was "[v]ery argumentative with the doctors" (JA752). Singh admits that he "might [have] behave[d] a little aggressive in the hospital" because he "was a little pissed off again" (JA346).

At about 8:00 a.m., or two hours after Singh's wife called 911, Singh's blood alcohol level was over three times New York's legal limit for intoxication (JA1322, 1373-74 (refencing N.Y. V.T.L. § 31-1192)). Singh was admitted to the hospital, diagnosed with alcohol intoxication, placed on close observation, and given a continuous sodium chloride IV infusion and an injection of lorazepam (JA1310, 1313, 1324). He was discharged around 3:00 p.m., only after he demonstrated a "steady gait" (JA1304, 1310).

## B. The district court's order granting summary judgment in Singh's ensuing federal action

Singh alleges that Officer Cheema arrested him without probable cause and used excessive force in doing so (JA10-23). After discovery, Singh moved for summary judgment on his § 1983 excessive force claim

16

(JA24), and defendants cross-moved for summary judgment on all of Singh's claims (JA156).

In a detailed, lengthy report and recommendation (JA1385-1403), the magistrate recommended that the district court grant summary judgment to defendants on Singh's false arrest claim, and deny the remainder of both parties' motions. With respect to the false arrest claim, the magistrate concluded that Officer Cheema had probable cause to detain Singh under the New York Mental Hygiene Law, because "the circumstances known to [Officer] Cheema indicated that [Singh] was heavily intoxicated to the point that he might pose a danger to himself or others" (JA1396). The magistrate noted that Singh's wife had called 911 to request medical attention for her husband; the EMTs who arrived determined, based on their own observations, that Singh needed medical evaluation; the EMTs requested police assistance because they felt unsafe due to Singh's aggressive movements; the EMTs told the police officers that Singh was uncooperative and needed to go to the hospital for treatment; and finally, Officer Cheema's own observations of Singh "led him to conclude that [Singh] was too intoxicated to care for himself" (JA1396-97). As an alternative basis to dismiss this claim, the magistrate

17

concluded that in any event, defendants are entitled to qualified immunity on Singh's false arrest claim, since the officers had at least arguable probable cause to detain Singh (JA1400).

Neither party objected to the magistrate's report and recommendations, and the district court adopted the magistrate's recommendations in part. Namely, the court granted defendants' motion for summary judgment on Singh's false arrest claim, as recommended by the magistrate (JA1405). The court did not conduct an independent analysis of this claim, but rather adopted the magistrate's analysis, finding no clear error (JA1405, 1409-10). Indeed, the court only reviewed the facts pertinent to the other claims, since the magistrate's report "capably sets out the factual background" on Singh's false arrest claim (JA1405).

But the court rejected the magistrate's recommendation as to Singh's excessive force claim, and granted summary judgment to Officer Cheema. The court concluded Officer Cheema was entitled to qualified immunity because "the undisputed evidence here, including especially the video footage" refutes any contention "that Officer Cheema violated clearly established law" (JA1423). Indeed, "[w]atching the video evidence

18

here, it is not clear that any constitutional violation occurred—let alone a violation of clearly established Fourth Amendment law" (JA1416). Instead, as the court found, the actions of "an officer who used a single, facially reasonable maneuver to subdue a suspect who was undisputedly resisting arrest after a series of erratic actions … do not even approach the point where the shield of qualified immunity begins to lift" (JA1428).

The court noted that neither Singh, nor the magistrate, nor the district court itself had located any case recognizing a clearly established right that Officer Cheema's actions violated (JA1416-17; *see also* JA1417-23 (reviewing case law)). The court further noted that two of the three factors from *Graham v. Connor*, 490 U.S. 386, 396 (1989) used to assess the reasonableness of force "strongly favor" Officer Cheema: Singh's resistance to being handcuffed, and the reasonableness of the conclusion "that Singh posed a risk to officer safety and a risk of flight through the open door" (JA1423-24).

The court also granted summary judgment to defendants on Singh's New York assault and battery claims, recognizing that "the essential elements of excessive force and the state law assault and battery claims

19

are substantially identical" (JA1426 (cleaned up)).[7] Because the force applied by Officer Cheema was objectively reasonable, Singh's state-law claims failed as a matter of law (JA1427).

The court then entered judgment for the defendants (JA1434-35).

## STANDARD OF REVIEW
## AND SUMMARY OF ARGUMENT

This Court should affirm. Singh's only remaining claims at issue on this appeal are § 1983 excessive force and false arrest claims, as well as state-law assault and battery claims. But these claims fail as a matter of law, as the district court correctly held.

Officer Cheema's momentary application of a modest amount of force, in response to Singh's sudden, unexpected movement, did not constitute excessive force under the Fourth Amendment. At the least, Officer Cheema is entitled to qualified immunity because his actions didn't violate any clearly established law. Likewise, Officer Cheema also had probable cause, or at least arguable probable cause sufficient to trigger qualified immunity, to detain Singh because he appeared dangerously incapacitated by alcohol, so Singh's false arrest claim

---

[7] This brief uses "(cleaned up)" to indicate that internal quotation marks, alterations, or citations have been omitted from quotations.

necessarily fails too. As for Singh's state-law assault and battery claims, they also necessarily fail because Officer Cheema's use of force was reasonable under the circumstances.

This Court reviews de novo a district court's grant of summary judgment. *See Root v. Liston*, 444 F.3d 127, 130 (2d Cir. 2006). "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment"—but when, as here, the record contains uncontroverted video evidence, the court "should … view the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378, 381 (2007) (cleaned up); *see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 10-11 (2021) (per curiam) (assessing video footage of police shooting in concluding that officers were entitled to qualified immunity); *Rivas-Villegas v. Cortesluna*, 142 S. Ct 4, 8-9 (2021) (per curiam) (video footage showing that officer kneeled on suspect's back "for no more than 8 seconds" to retrieve a knife proved officers were entitled to qualified immunity).

Here, the uncontroverted video evidence—along with other contemporaneous record evidence, including the EMT report, the EMTs' requests for police assistance, and Singh's hospital records—show that

21

Officer Cheema used a reasonable amount of force in the circumstances, and had probable cause to detain Singh. In response, Singh offers "[m]ere conclusory allegations [and] denials," which "cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (cleaned up); *see also Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (mere speculation or conjecture cannot defeat summary judgment).

Importantly, "[e]ven on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity …, police officers are entitled to draw reasonable inferences from the facts they possess at the time." *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001). Here, based on the facts that he possessed at the time, Officer Cheema acted reasonably. Thus, Singh's claims fail as a matter of law.

## ARGUMENT

### POINT I

### THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON SINGH'S EXCESSIVE FORCE CLAIM

This Court should affirm the dismissal of Singh's excessive force claim against Officer Cheema, since the claim fails as a matter of law.

22

Qualified immunity shields a government official, such as Officer Cheema, from money damages for § 1983 claims unless a plaintiff can show two things: first, that the official "violated a statutory or constitutional right," and that "the right was 'clearly established' at the time of the challenged conduct." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). If there is no violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "That is because a defendant has no need for an immunity shield where there is no viable constitutional claim." *Mara*, 921 F.3d at 68. But even if there is a violation—or a possible one—a defendant "may still be entitled to qualified immunity if the right was not clearly established at the time of his challenged actions. Indeed, a court that decides this second question in a defendant's favor may award qualified immunity without conclusively answering the first" question. *Id.*; *see also Ashcroft*, 563 U.S. at 735.

Based on the incontrovertible record evidence—including the video recording—Officer Cheema did not use excessive force against Singh. But even if there were room for doubt, Officer Cheema is entitled to qualified

23

immunity, because, in any event, he did not violate any clearly established rights of Singh's.

### A. No reasonable juror could conclude that Officer Cheema's conduct violated the Fourth Amendment.

This Court can and should affirm at step one of the qualified immunity analysis, because no reasonable juror could conclude that Officer Cheema's conduct during the momentary take-down maneuver amounted to excessive force. Rather, Officer Cheema made a reasonable split-second assessment about the potential risk that Singh posed, securing his partner's safety while causing minimal alleged injury.

Step one of the qualified immunity inquiry asks "whether the facts… show a constitutional violation." *Cowan v. Breen*, 352 F.3d 756, 761 (2003). The relevant inquiry here is "whether the alleged use of excessive force was objectively reasonable." *Id.* (citing *Graham*, 490 U.S. at 397). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. After all, the reasonableness inquiry must make "allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

To determine whether a use of force is objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (cleaned up). In doing so, the court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Those three factors then "must be weighed against the degree of force used." *Hodge v. City of Long Beach*, 425 F. App'x 33, 34 (2d Cir. 2011) (summary order). However, "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396 (cleaned up). At bottom, courts must ask "whether the officers' actions are objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (cleaned up).

### 1. The momentary force that Officer Cheema used to restrain Singh was not excessive.

Under the circumstances, Officer Cheema reacted reasonably to Singh's sudden, unexpected movement towards his partner. Officer Cheema knew that Singh was intoxicated, that he had been uncooperative with EMTs and the police, and that the EMTs had concerns for their safety due to Singh's behavior. Officer Cheema had also observed Singh for about eight minutes, and—like the EMTs before him and the hospital personnel after him—assessed Singh as "erratic and aggressive" (JA505). In light of that background, Officer Cheema was reasonably concerned for his partner's safety when Singh made a sudden movement towards her. Officer Cheema made a split-second decision to use a minimal amount of force—a momentary take-down maneuver—to secure Singh in handcuffs.

This Court has already recognized that an excessive force claim fails as a matter of law in similar circumstances. In *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010), an officer pulled the plaintiff over; based on the plaintiff's evasive and inconsistent answers to the officer's questions, the officer grew concerned that the plaintiff could be a fugitive from the law. *Id.* at 93. When the officer ordered him to turn around for a

pat-down, the plaintiff "made a quick and sudden movement," and the officer responded by striking him with his flashlight several times. *Id.* at 93, 96-97. With respect to that sudden movement, the plaintiff claimed that he had slipped on ice, but the officer reasonably perceived an "attempt to flee or fight back." *Id.* at 97. This Court affirmed the grant of summary judgment to the officer on this excessive force claim. *Id.*

Similarly, here, in a "split-second judgment," Officer Cheema reasonably perceived that Singh's "sudden movement constituted non-compliant and threatening behavior." *Id.* (cleaned up). Because Officer Cheema had a basis to believe that Singh "pose[d] an immediate threat to the safety" of others, the second *Graham* factor supports the use of force. *Graham*, 490 U.S. at 396. And while Singh was not suspected of any crime and only momentarily resisted voluntary arrest, "from [the officer's] perspective," Singh had, through his sudden movements, "appeared to fail to comply" with Officer Cheema's efforts to safely escort him to the hospital, *Tracy*, 623 F.3d at 97. Thus, the third *Graham* factor also supports the use of force here. By volunteering to be handcuffed and then immediately withdrawing his hands and taking a sudden step

27

forward as Officer Cheema reached for his handcuffs, Singh appeared to actively resist Officer Cheema's command.

Also similar to the facts in *Tracy*, Singh's forward step could have reasonably been perceived as "a first step toward flight through the open door," as the district court correctly pointed out (JA1419). Thus, a reasonable officer could have perceived that Singh was "attempting to evade arrest by flight," under the third *Graham* factor. *Graham*, 490 U.S. at 396.

In light of the circumstances confronting him, Officer Cheema's "use of force was a reasonable and proportionate response." *Tracy*, 623 F.3d at 97. While an officer does not need to use the least amount of force possible to comply with the Fourth Amendment, *see Brown v. City of N.Y.*, 798 F.3d 94, 102-03 (2d Cir. 2015), Officer Cheema applied only a modest "degree of force," *Hodge*, 425 F. App'x at 34, solely for the purpose of safely detaining Singh, further showing that he did not use excessive force here. Courts have recognized that a rapid takedown maneuver, like the one employed here, constitutes a "minimal" use of force. *See Lloyd v. Tassell*, 384 F. App'x 960, 962 (11th Cir. 2010) (discussing "a lateral arm bar takedown" that caused a "forehead abrasion" (cleaned up)); *see also*

28

*Beshears v. Winters*, No. 09-2017, 2011 U.S. Dist. LEXIS 4634, at *19 (C.D. Ill. Jan. 18, 2011) (finding "an arm-bar control technique and take-down maneuver" that lasted "a matter of moments" to be "inherently de minimis" force). In these circumstances, the maneuver that Officer Cheema used was reasonable. *See Flanigan v. Town of Colchester*, 171 F. Supp. 2d 361, 365-66 (D. Vt. 2001) (when officers were trying to take an intoxicated person into custody due to his incapacitation, use of takedown maneuver was reasonable when the person said "no," shook his hands, and took a few steps away).

As for injuries, Singh experienced only forehead bruising (JA145-53) and an alleged aggravation of his longstanding, pre-existing shoulder condition (JA137-44)—a condition which, of course, Officer Cheema had no knowledge of.[8] *Cf. Tracy*, 623 F.3d at 97 (noting that plaintiff's "description of the injuries he suffered—a small laceration or abrasion to the scalp—… bolsters" the "conclusion that [the officer's] use of force was … reasonable and proportionate").

---

[8] The allegation that Singh, unbeknownst to Officer Cheema, "was especially more vulnerable … than the average person does not make" Officer Cheema's use of force "unreasonable," since the applicable standard is "objective reasonableness." *Pinero v. Burbran*, 18-cv-4698(AJN), 2021 U.S. Dist. LEXIS 176526, at *11 (S.D.N.Y. Sept. 16, 2021) (citing *Tracy*, 623 F.3d at 96).

Because no reasonable juror could find that Officer Cheema's momentary application of a modest degree of force was unreasonable in these circumstances, this Court should affirm the grant of summary judgment to Officer Cheema on Singh's excessive force claim.

### 2. Singh's contrary arguments misconstrue the record and the law.

Singh's attempts to cast doubt on the reasonableness of Officer Cheema's actions depend on a misreading of the record. In actuality, none of the material facts are in genuine dispute. *See Hemphill v. Schott*, 141 F.3d 412, 416 (2d Cir. 1998) (noting that summary judgment is appropriate even where parties present different "version[s] of the events" "if the disputed facts were not material").

First, while Singh tries in vain to dispute that he was behaving erratically and demonstrably intoxicated (App. Br. 38-39), his irrational and hostile behavior was contemporaneously documented in the EMT report (JA116-18). Indeed, his behavior was the basis of the EMTs' repeated requests for immediate police assistance (JA1299-1300). The EMTs' concerns for their safety were not based on "vague suspicions" (App. Br. 40 (cleaned up)) but on their observations of Singh's behavior,

as documented in their report. And Singh's high degree of intoxication—notwithstanding his favorable Glasgow Coma Score for consciousness (App. Br. 39)—was the reason why the EMTs determined he needed medical attention, also as documented on the EMT report (JA118), and why Singh's wife called 911 in the first place (JA1101-02 (recalling that Singh "was behaving very funny," "childish," and "immature")). Tellingly, Singh's wife never wavered from her belief that Singh "absolutely" had to go to the hospital (JA1115). Even on the video that Singh chose to preserve, he can be seen acting in an animated, agitated manner: standing up and down, pointing his fingers in the air, and stumbling back to his seat (JA1333, Ex. N, at 3:40 to 3:52). Singh's "conclusory … denials" of his incapacitated appearance are insufficient in the face of this record evidence. *See Hicks*, 593 F.3d at 166 (cleaned up).

Second, Singh is incorrect to suggest that Officer Cheema had no basis to view him as a threat (App. Br. 39-42). Of course, the key issue is whether Officer Cheema reasonably assessed Singh's actions as threatening at the moment that Officer Cheema used force—and he did. *Cf. MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (summary order) (use of taser was objectively reasonable after kneeling

31

suspect "rose to his feet, turned to face the officers with his hands free and outstretched, and refused to return to the ground"). As Officer Cheema explained, the minutes leading up his momentary use of force informed his judgment (JA485-86).

Officer Cheema's assessment of the situation was reasonably informed by his conversations with the EMTs and his own observations. When the officer arrived, he talked to the EMTs, and learned that Singh was being uncooperative with them to the point that they felt unsafe (JA455, 457). Singh's mere speculation that this conversation never occurred (App. Br. 41) can't overcome Officer Cheema's sworn testimony. *See Kulak*, 88 F.3d at 71. Officer Cheema then had about eight minutes to observe for himself Singh's behavior (*see* JA119, Ex. G), and Singh's admitted lack of cooperation with the EMTs and police (JA29-30 (admitting that Singh refused to go to the hospital with the EMTs and only "begrudgingly" agreed to go with the police)).

The police report, like the EMT report, contemporaneously documented Singh's intoxicated and aggressive behavior, and showed Officer Cheema's awareness of the same. While Officer Cheema, because he "didn't understand the [computerized] system fully at that time"

32

(JA497), left all the checkboxes on his police report checked as "no," the officer "ma[d]e it a point to put a narrative" with his observations (JA497-98), where he noted that Singh was "intox/combative" (JA121 (capitalization removed)). Thus, contrary to Singh's assertions (App. Br. 40), the police report does not suggest any genuine disputes of material fact, either.

Nor does the "choice" that Officer Cheema presented—between voluntarily going to the hospital or being forcibly brought there—somehow undermine the officer's observations as to Singh's inability to make rational decisions (App. Br. 43). As Singh has recognized, this was never a true "choice" since, either way, Officer Cheema had determined to take the intoxicated Singh to the hospital, "whether he wanted to or not" (App. Br. 7 (referring to situation as a "Hobson's Choice")). Officer

Cheema's attempt to solicit voluntary cooperation instead of using force is both commendable and irrelevant to the use-of-force analysis.[9]

Third, as for Officer Cheema's momentary use of force—the entire basis of Singh's excessive force claim—Singh's attempts to cast doubt on the reasonableness of Officer Cheema's actions are unavailing. For instance, Singh's claim to have just been "joking" when he made his hand gestures (App. Br. 8), is immaterial to Officer Cheema's reasonable perception of Singh's action—just as the plaintiff's allegedly innocent intentions were irrelevant in *Tracy*. 623 F.3d at 97 ("[O]ur focus is not on [plaintiff's] motivations but instead on the sequence of events from the perspective of a reasonable officer at the scene.").[10] Likewise, Singh's

---

[9] Singh's far-fetched argument that Officer Cheema should perhaps be liable for failing to handcuff Singh earlier (App. Br. 42-43) finds little supports in the record and none in the case law. After all, Officer Cheema's use of force was in direct response to Singh's sudden, unexpected movement. And the case Singh cites, *Aponte v. Kanbur*, No. 20-624, 2021 U.S. App. LEXIS 26053, at *14 (2d Cir. Aug. 30, 2021) (summary order) (App. Br. 43) is inapposite, since *Aponte* simply notes that an officer's unlawful entry to an apartment may occasionally be relevant to the excessive force inquiry. In no way does *Aponte*—or any case that we are aware of—suggest that an officer's attempt to encourage cooperation could somehow give rise to an excessive force claim.

[10] Singh's new claim that his step "*backward* towards Officer Cheema" immediately preceded Officer Cheema's use of force (App. Br. 39) is plainly refuted by the video, as well as Singh's own prior admissions (JA31 ("In response to plaintiff taking this step *forward*, Officer Cheema" took "plaintiff down to the ground to handcuff him.") (emphasis added)).

34

gripes that Officer Cheema's use of force was triggered merely by "his act of *choosing* not to be handcuffed" or "walking out to go the hospital" (App. Br. 42) plainly ignore the video record, which shows that Officer Cheema reacted to Singh's sudden, unexpected movement.

Moreover, while Singh tries to take refuge in the fact that none of the officers knew what he would do next (App. Br. 40), that only bolsters the conclusion that Officer Cheema's use of force was reasonable. After all, courts must make "allowance for the fact that police officers are often forced to make split-second judgments" in "uncertain, and rapidly evolving" circumstances. *Graham*, 490 U.S. at 396-97. And while Officer Cheema admitted that he could not "say for sure" whether Singh would have attacked Officer Walker (JA551), after watching the video Officer Cheema said he "still perceive[d the situation] the same way, just like I did at the scene" (JA552).

Singh's legal arguments are just as meritless as his attempts to rewrite the factual record. For instance, Singh is wrong to critique the district court (App. Br. 37) for pointing out that a reasonable officer could have viewed his sudden movement as "a first step toward flight through the open door" (JA1419). Certainly, a reasonable officer could have

reached such a conclusion, which supports the use of some degree of force to restrain Singh. That Officer Cheema thought Singh was approaching Officer Walker instead of the door (App. Br. 37) does not change the analysis, which looks at the objective "facts and circumstances confronting" officers, not the officers' subjective intent. *Graham*, 490 U.S. at 397 (cleaned up). In arguing to the contrary (App. Br. 37-38), Singh relies on a dissenting Supreme Court opinion—rather than controlling law.

Singh also attempts to rely on nonbinding cases in which there was no evidence that the plaintiff posed a risk to anyone, but such fact patterns are night-and-day different from the record here. *Cf. Weather v. City of Mount Vernon*, 474 F. App'x 821, 823 (2d Cir. 2012) (summary order) ("[t]he evidence fully support[ed] the jury's finding that [plaintiff] was not posing an immediate threat to himself or others"); *see also Morse v. Fitzgerald*, 10-cv-6306 CJS, 2013 U.S. Dist. LEXIS 40661, at *31 (N.Y.W.D. March 20, 2013) ("it is undisputed that [p]laintiff did not threaten the officers"). In contrast, here, as in *Tracy*, the officer had a reasonable perception, based on the circumstances, that the plaintiff's sudden movement was a threat.

36

**B. No precedent clearly establishes that Officer Cheema's behavior here constitutes excessive force.**

As explained above, Singh loses at the first step of the qualified immunity analysis, because Officer Cheema's actions did not constitute excessive force. But this Court need not even reach the constitutionality of Officer Cheema's use of force, because Singh's claim also fails on the second step of the qualified immunity analysis. *See Mara*, 921 F.3d at 68 ("a court that decides this second question in a defendant's favor may award qualified immunity without conclusively answering the first" question). As the district court correctly recognized (JA1416), Officer Cheema's conduct did not violate clearly established law.

The qualified immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (cleaned up).

And "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah*, 142 S. Ct. at 11. Indeed, to be clearly established, "every reasonable official [must] understand that what he is doing is unlawful," which occurs when the rule in question is "settled law," and is "dictated by controlling authority or a robust consensus." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (cleaned up).[11]

Qualified immunity is thus a "deliberately forgiving standard of review." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (cleaned up). It gives officials "breathing room to make reasonable but mistaken judgments" and protects all but those who are "plainly incompetent" or "knowingly violate the law." *Id.* (cleaned up).

---

[11] For present purposes, we assume that precedential decisions from this Court clearly establish the law in this Circuit, as this Court has held. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009). But the Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity," and even its "citation to and discussion of various lower court precedents should not be construed as agreeing or disagreeing with them." *Wesby*, 138 S. Ct. at 591 n.8. We reserve the right to argue that only Supreme Court precedent can clearly establish the law in the event this case proceeds to that Court.

38

In excessive force cases, it is "particularly important" to define the purported clearly established right with specificity. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). After all, decisions about the use of force frequently involve "split-second judgments," *Graham*, 490 U.S. at 396-97. Excessive force claims "depend[] very much on the facts of each case," so police officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (cleaned up).

The problem for Singh is, as the district court correctly recognized (JA1417-23), no precedent clearly establishes that Officer Cheema's conduct was unlawful. Rather, as explained above, precedent, including this Court's decision in *Tracy*, firmly points in the other direction: an officer's use of force is not excessive when the officer acts in response to a sudden, threatening move in tense circumstances, and employs only a modest, momentary degree of force. 623 F.3d at 97. And even if "reasonable officers would disagree about the legality" of Officer Cheema's "conduct under the circumstance, … judgment for the officers is appropriate" based on qualified immunity. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). Because Officer Cheema did not violate any

clearly established law, Singh's excessive force claim necessarily fails at the second step of the qualified immunity analysis.

Abandoning any effort to cite to on-point case law, Singh simply argues, as a general matter, that "none of the *Graham* factors were present in this case under plaintiff's version of events" (App. Br. 32). But Singh's "version of events" cannot controvert the video record of the incident, even on summary judgment. *See Scott*, 550 U.S. at 380-81; *see also City of Tahlequah*, 142 S. Ct. at 10-11; *Rivas-Villegas*, 142 S. Ct. at 7-9. That video shows that after Singh moved his hands to his front and took a sudden step forward, Officer Cheema applied a momentary, modest degree of force to secure Singh.

Thus, as explained above, a reasonable officer could have perceived Singh's movement as a threat, an attempt at flight, resistance to the police, or any combination of these possibilities. Similarly, Singh disregards multiple other uncontroverted facts that bolster the reasonableness of Officer Cheema's concern for officer safety, including the EMTs' repeated request for immediate police assistance (JA1299,

1300), and the EMTs' contemporaneous observation of Singh as "belligerent" and "aggressive" (JA118 (cleaned up)).[12]

Based on these circumstances, the force that Officer Cheema applied was reasonable. At the very least, it was not clearly unlawful. *See Keene v. Schneider*, 350 F. App'x 595, 597 (2d Cir. 2009) (summary order) (reversing denial of qualified immunity where officers' conduct "resulted in minimal injuries and stopped immediately after [plaintiff] was handcuffed"). Accordingly, Officer Cheema is entitled to qualified immunity, and thus summary judgment, on Singh's excessive force claim.

## POINT II

### THIS COURT SHOULD AFFIRM DISMISSAL OF SINGH'S FALSE ARREST CLAIM

This Court can, and should, affirm the dismissal of Singh's false arrest claim, because Singh has waived any opposition by his failure to object to the magistrate's recommendation that Officer Cheema be granted summary judgment on this claim. But if this Court were to reach

---

[12] That Officer Cheema "never looked at [the EMTs'] paperwork" (App. Br. 41 (cleaned up); *see also id.* at 20) is of no moment, since Officer Cheema talked to EMTs on the scene about their observations (JA455, 457).

41

the merits, it should affirm, because Officer Cheema had at least arguable probable cause to arrest Singh.

### A. Singh waived any challenge to dismissal of his false arrest claim by failing to object to the magistrate's recommendation.

As Singh acknowledges, "generally, a failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision" (App. Br. 25 (quoting *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (cleaned up))). Since Singh did not object to the magistrate's recommendation to dismiss his false arrest claim, he has waived his opposition to the dismissal of that claim.

The rule regarding waiver of objections "is supported by sound considerations of judicial economy," as the Supreme Court has recognized. *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Absent such a rule, the district court would be forced "to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report." *Id.*

While this Court may disregard the waiver rule "where a district court conducts a de novo review of an issue that was not raised in objection" (App. Br. 26 (quoting *Mario v. P & C Food Markets, Inc.*, 313

42

F.3d 758, 766 (2d Cir. 2002) (cleaned up))), that exception does not apply to the dismissal of Singh's false arrest claim. The magistrate recommended dismissal of that claim, neither party objected, and the district court accepted that recommendation without de novo review. Unlike the district court opinion in *Mario v. P & C Food Markets, Inc.*, where the court stated it was issuing its decision "[u]pon a *de novo* review of the report and recommendation," *Mario v. N. Am. Health Plans, Inc.*, No. 98-cv-264A, 2001 U.S. Dist. LEXIS 25522, at *2 (W.D.N.Y. Sep. 26, 2001), here the court did not even arguably conduct a de novo review of the claim at issue. The court stated that it "adopt[s] the R&R" as to the false arrest claim (JA1405), expressly deferred to the magistrate's recitation of the facts pertaining to that claim (JA1405), clarified that recommendations to which neither party objects are subject to clear error review (JA1409-10), and explained that the court was free to review any part of the case "anew" (JA1410 (cleaned up)).[13] While the court certainly

---

[13] In a passing footnote, this Court indicated in *Moss v. Colvin*, 845 F.3d 516, 519 n.2 (2d Cir. 2017) that even a district court's clear error review indicates "that it did not consider the issue waived." But *Moss* differs from this case in two key respects. First, the losing party in that case *had* objected to the magistrate's recommendations. *See id*. Second, the district court's opinion in *Moss* expressly addressed the merits of the claim at issue. *Moss v. Colvin*, 14 Civ. 2331, 2015 U.S. Dist. LEXIS 79569, at *11 (S.D.N.Y. June 18, 2015).

reviewed the other claims de novo, it expressly refrained from addressing the merits of the false arrest claim, instead simply adopting the magistrate's report and recommendation as to that claim, and granting summary judgment to Officer Cheema "for the reasons set out in the R&R" (JA1405).

Thus, this Court should apply its standard waiver rule as to the dismissal of the false arrest claim. To do otherwise would be allow Singh to "sandbag the district judge by failing to object and then appealing." *Thomas*, 474 U.S. at 148 (cleaned up).

### B. Singh's false arrest claim fails on the merits, because Officer Cheema had at least arguable probable cause to detain Singh.

In any event, even if this Court were to reach the merits, it should affirm the dismissal of Singh's false arrest claim, because Officer Cheema had at least arguable probable cause to detain Singh, which entitles Officer Cheema to qualified immunity on this claim. The New York Mental Hygiene Law (NYMHL) authorizes police to detain a person who "appears to be incapacitated by alcohol … to the degree that there is a likelihood to result in harm to the person or to others." NYMHL

44

§ 22.09(b)(2). Under this provision, Officer Cheema had probable cause—or at the very least, arguable probable cause—to detain Singh.

There is probable cause to detain an individual so long as the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution" to believe that the statutory criteria are met. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). And "[p]robable cause to arrest … is a complete defense to an action for false arrest" against police officers. *Id.* (cleaned up).

Officer Cheema had reason to believe, or at least arguable reason to believe, that the statutory criteria for involuntary detention were met here. First, Singh "appear[ed] to be incapacitated by alcohol." NYMHL § 22.09(b)(2). The statute defines "[i]ncapacitated" as meaning "that a person, as a result of the use of alcohol … has his … judgment … so impaired that he … is incapable of realizing and making a rational decision with respect to his … need for treatment." NYMHL § 22.09(a)(2). Here, Officer Cheema knew that the EMTs assessed Singh as incapacitated and in need of medical evaluation, and the officer could see for himself that Singh was intoxicated and "incoherent" (JA455-56, 457,

45

497). *Ortiz v. City of New York*, No. 15-cv-2206 (DLC), 2016 U.S. Dist. LEXIS 165219, at *4 (S.D.N.Y. Nov. 30, 2016), cited by Singh (App. Br. 47, 49) is not the contrary; in that case, there was no evidence, aside from the parties' dueling testimonies, as to how the plaintiff appeared at the time he was seized. Here, Singh's wife's 911 call, the EMT paperwork, and the EMTs' requests for police show that multiple third parties assessed Singh as in need of medical evaluation, corroborating Officer Cheema's observations.

Contrary to Singh's arguments (App. Br. 48), the mere fact that Officer Cheema encouraged Singh to cooperate with the officers does not show that he "believed plaintiff to be capable of making rational decisions." As explained above, *supra* at 33-34, Officer Cheema didn't present Singh with any true choices at all—the only option was to go to the hospital.

Second, Officer Cheema also had basis to conclude that Singh's incapacitation demonstrated "a likelihood to result in harm to the person or to others." NYMHL § 22.09(b)(2). The statue defines "[l]ikelihood to result in harm" as either "(i) a substantial risk of physical harm to the person as manifested by threats of or attempts at … serious bodily harm

*or other conduct* demonstrating that the person is dangerous to himself" or "(ii) a substantial risk of physical harm to other persons as manifested by … violent behavior by which others are placed in reasonable fear of serious physical harm." NYMHL § 22.09(a)(3) (emphasis added). Here, as with the incapacitation requirement, the EMTs and Officer Cheema assessed a significant likelihood that Singh could cause harm to himself or others. Even Singh's wife worried that his conduct, in drinking "too much," could cause him harm (JA99, Ex. D; 1106).

Singh misunderstands the standard for probable cause to arrest, arguing incorrectly—by quoting this Court's precedent entirely out of context—that defendants needed to show that "no reasonable view of the evidence could suggest" that Singh was not a threat to himself or others (App. Br. 50). Not so. Probable cause "is not a high bar." *Wesby*, 138 S. Ct. at 586 (cleaned up). In particular, it "does not demand that an officer's good-faith belief … be correct or more likely true than false." *Mara*, 921 F.3d at 69 (cleaned up). Moreover, "the fact that [another view] may be consistent with the facts alleged … does not negate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (cleaned up).

47

Arguable probable cause, sufficient to entitle Officer Cheema to qualified immunity, is an even lower bar. An officer has arguable probable cause to arrest "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (cleaned up); *see also, e.g.*, *Kerman v. City of N.Y.*, 261 F.3d 229, 237 (2d Cir. 2001) (recognizing that defendants had arguable probable cause, though not probable cause, to enter plaintiff's apartment solely based on anonymous 911 call).

Here, Officer Cheema had probable cause to detain Singh—and at the least, had arguable probable cause—because he had a reasonable belief that Singh could harm himself or others, based the expressed opinion of the EMT team and his own observations. *See Myers v. Patterson*, 819 F.3d 625, 634-36 (2d Cir. 2016) (noting that officer's knowledge of other's observations of plaintiff's dangerous behavior, or officer's observations, could support arguable probable cause to arrest). Indeed, the EMTs called the police after they observed Singh "became aggressive with the crew"; he was "yelling profanities and belligerently approaching" them (JA118 (cleaned up)). To give rise to arguable

48

probable cause, all that is needed is that the EMTs "communicated to [Officer Cheema] a message that he could have reasonably understood as their expression of their professional judgment" that Singh should be detained. *Myers*, 819 F.3d at 634 (cleaned up). The EMTs had such a conversation with Officer Cheema, telling him that Singh was intoxicated and needed to go to the hospital, and that his "erratic behavior … caused them concern for their safety" (JA454-57).

Certainly, by the point that Officer Cheema observed Singh to make a sudden movement towards his partner, Officer Cheema's own observations provided ample basis for probable cause to arrest. Singh tries to downplay this point by claiming that Officer Cheema "had already made the decision" to detain Singh (App. Br. 54), but Singh ignores the key distinction between Officer Cheema's attempts to *persuade* Singh to go to the hospital and Officer Cheema's placing handcuffs on Singh after his sudden movement. All that matters is whether Officer Cheema had probable cause, or at least arguable probable cause, to detain Singh at the time that he did detain him—and Officer Cheema had such probable cause.

49

Singh's other arguments in opposition are unavailing. For the reasons explained earlier, *see supra* at 32-33, the police report gets Singh nowhere. Officer Cheema admitted that the checkboxes were incorrectly filled out (JA497, 506), but the officer contemporaneously specified the reasons for his detention of Singh in the narrative portion: Singh was intoxicated and combative (JA121). Moreover, the statute does not require a showing of "likelihood of specific harm," as Singh argues (App. Br. 52); rather, any "conduct demonstrating that the person is dangerous to himself" will fit the bill. NYMHL § 22.09(a)(3)(i). Similarly, the fact that Singh had a Glasgow Coma Score of 15, indicating that he was alert (App. Br. 5, 11, 52), does not undermine Officer Cheema's probable cause to detain Singh based on the copious other evidence of mental incapacitation at the time. After all, the Glasgow Coma Scale, a "widely used tool for measuring comas and decreases in consciousness," Cleveland Clinic, "Glasgow Coma Scale," *available at* https://perma.cc/9F3F-NP7B, is not dispositive of someone's ability to refuse medical care, as EMT Milonas later explained (JA884-87).

That Officer Cheema had least arguable probable cause to detain Singh is further bolstered by Singh's admission to the hospital. Under

the NYHML, a person brought over his objection to a treatment facility "must be released" if "the examining physician determines … that such person is not incapacitated by alcohol … to the degree that there is a likelihood to result in harm to the person or others." NYMHL § 22.09(b)(5). Here, Singh was seen by a doctor right away (JA1317), yet was *not* discharged from the hospital until after 3:00 p.m., about eight hours after his arrival (JA1304). At the hospital Singh presented as "verbally abusive, noisy and uncooperative" (JA1308); he was diagnosed with alcohol intoxication, given a sedative injection, and placed on IV fluids and "close observation" (JA1313, 1324). Singh's bloodwork showed that his alcohol levels were over three times the legal limit for intoxication, even more than an hour after Officer Cheema detained him. (JA1322, 1373-74 (refencing N.Y. V.T.L. § 31-1192)). Singh's own hospital records thus corroborate Officer Cheema's probable cause assessment.

Moreover, in addition to § 22.09(b)(2), Officer Cheema also had probable cause, or at least arguable probable cause, to detain Singh under NYMHL § 9.41(a), which authorizes detention of a person "who appears to be mentally ill and is conducting himself … in a manner which is likely to result in serious harm to the person or others." Both the EMT

51

records (JA116) and hospital records (JA1318) document Singh's mental health diagnoses of bipolar disorder, anxiety, and depression. And they both show that he was "in an irrational state" (JA116) and "noisy and uncooperative" (JA1308) at the time. He was also "aggressive," "yelling profanities" "belligerently approaching the EMT crew" (JA118 (cleaned up), and "verbally abusive" (JA1308 (cleaned up)). While Singh denies acting aggressive, he admits he engaged in "a little funny behavior" towards the EMTs (JA345-46). Under either provision of the Mental Hygiene Law, "the same objective reasonableness standard is applied to police discretion." *Kerman*, 261 F.3d at 240 n.7.

Under either or both of these provisions, Officer Cheema had probable cause to detain Singh, or at least arguable probable cause. Thus, Officer Cheema is entitled to summary judgment on Singh's false arrest claim.

## POINT III

## THE DISMISSAL OF SINGH'S STATE LAW ASSAULT AND BATTERY CLAIMS WAS PROPER, FOR MULTIPLE REASONS

Singh quibbles that the district court should not have dismissed his assault and battery claims against the City, asserted under the doctrine

52

of respondeat superior (App. Br. 27-29).[14] But Singh ignores the truism—correctly recognized by the district court—that "the essential elements of excessive force and the state law assault and battery claims are substantially identical." (JA1426 (cleaned up)). Because Singh's excessive force claim fails as a matter of law, his state law assault and battery claims also necessarily fail.

The key inquiry for Singh's assault and battery claims—whether Officer Cheema's conduct was objectively reasonable under the circumstances—mirrors the familiar analysis courts undertake when considering federal excessive force claims under § 1983. *See, e.g., Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021); *Brown v. City of N.Y.*, 192 A.D.3d 963, 966 (2d Dep't 2021). Since Officer Cheema's conduct did not constitute excessive force under the Fourth Amendment, *see supra* I(A), neither did it constitute an assault or battery under state law. And since Singh doesn't have a viable state law claim against Officer Cheema,

---

[14] Singh does not raise his state law false arrest claim in his appellate brief, and thus has abandoned that claim. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012). In any event, it also fails as a matter of law, because Officer Cheema's probable cause to detain Singh, *see supra* II(B), operates as a complete defense to such a claim. *See Weyant*, 101 F.3d at 853.

he can't have a viable claim against the City under the doctrine of respondeat superior, either.

And in any event, even if there was any daylight between Singh's federal excessive force claim and his state assault and battery claims,[15] this Court should still dismiss the latter claims by declining to exercise supplemental jurisdiction. Although federal and state force-based claims are often addressed together, it is rare for a federal court to proceed to trial on a state-law claim alone. *See, e.g.*, *Shenandoah v. United States DOI*, 159 F.3d 708, 714 (2d Cir. 1998) (declining to exercise supplemental jurisdiction after affirming dismissal of federal claims); *Mawhirt v. Ahmed*, 8 F. App'x 125, 127 (2d Cir. 2001) (summary order) (stating, despite court's erroneous grant of federal qualified immunity on state-law claims, that "a district court should generally dismiss supplemental state law claims without prejudice where all federal law claims are eliminated before trial"). If this Court declines to affirm the

---

[15] Singh argues that dismissal of the state law claims is inappropriate because the federal excessive force claim was resolved on qualified immunity grounds (App. Br. 27-29). But because Singh's excessive force claim fails at the first step of the qualified immunity analysis (*see supra* I(A))—since Officer Cheema didn't use excessive force against Singh—this Court can and should dismiss Singh's state law claims on the same grounds.

denial of these claims on the merits, it should nonetheless decline to exercise supplemental jurisdiction over these claims.

## CONCLUSION

This Court should affirm.

Dated:  New York, NY
       July 19, 2023

                         Respectfully submitted,

                         HON. SYLVIA O. HINDS-RADIX
                         *Corporation Counsel*
                         *of the City of New York*
                         Attorney for Appellees

By:    _____
                         AMY MCCAMPHILL
                         Assistant Corporation Counsel

                         100 Church Street
                         New York, NY 10007
                         212-356-2317
                         amccamph@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
AMY MCCAMPHILL
   *of Counsel*

55

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 10,929 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____

AMY MCCAMPHILL