# 23-24cv

## United States Court of Appeals for the Second Circuit

BALWINDER SINGH,

*Plaintiff-Appellant,*

v.

THE CITY OF NEW YORK, P.O. MANDEEP CHEEMA,
Tax Id. No. 950196, Individually and in his Official Capacity,
POLICE OFFICERS JOHN DOE #1-10, Individually and in
their Official Capacity (the name John Doe being fictitious,
as the true names are presently unknown),

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

COHEN & FITCH LLP
*Attorneys for Plaintiff-Appellant*
233 Broadway, Suite 900
New York, New York 10279
(212) 374-9115
jfitch@cohenfitch.com

# **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT.................................................................................1

ARGUMENT

I.     DEFENDANTS CANNOT MANIPULATE THE STANDARD OF REVIEW TO SELECTIVELY PRESS THEIR CLAIM OF WAIVER.................................................2

     A. Both Logic and the Language of the District Court's Decision Support the Reviewability of All Claims in this Case .............................................................................3

        i. *The District Court's Review of the Entire Record and the Absence of Any Express Indicia of Partial Review Militate Against Waiver* .......................................3

        ii. *The Decision's Acceptance of the R&R's Conclusion on False Arrest Is Not Indicative of a Lower Standard of Review*.......................................................5

        iii. The Other Reasons Proffered By Defendants Depend on Semantic Omission and Distortion...............................7

     B. Defendants Cannot Simultaneously Claim that Review of the False Arrest Claim is Precluded While Arguing Issues Related to the *Constitutionality* of the Use of Force ...............................9

II.    DEFENDANTS' OPPOSITION PROVIDES NO BASIS TO APPLY STATE LAW QUALIFIED IMMUNITY TO THE CITY ..........................................................................10

     A. Defendants' Argument Rests on a False Premise Underlying the District Court's Dismissal of the State Law Claims................................................................11

III.    SUMMARY JUDGMENT CANNOT BE SUSTAINED BASED ON A ONE-SIDED VIEW OF THE EVIDENCE FAVORING DEFENDANTS ...................................................12

   A. Material Factual Disputes Cannot Simply be Editorialized Away in Order to Justify Dismissal ...........................................14

      i. *Cheema's Perception of Plaintiff's Movements Near the Door Is Not the Only Reasonable Perception of the Facts* ..........................................................................14

      ii. *Defendants' Mollifying Description of the Force Used by Cheema Cannot Resolve This Factual Issue* .................17

   B. It Is Improper to Weigh Competing Proof and Refuse to Consider Evidence Favorable to Plaintiff on Summary Judgment..............................................................................18

      i. *Cheema's Testimony about his Conversation with EMTs Cannot be Accepted in the Face of Contrary Evidence* ..........................................................................19

      ii. *Innocent Explanations CANNOT Resolve Conflicts Within the EMT and Police Paperwork at this Stage*........................22

CONCLUSION..................................................................................26

CERTIFICATE OF COMPLIANCE ....................................................27

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases:**

<u>Almonte v. New York State Div. of Parole</u>,
    2006 WL 149049 (N.D.N.Y. Jan. 18, 2006) .......................................................4

<u>Ambrose v. J.B. Hunt Transport, Inc.</u>,
    2014 WL 585376 (D. Or. Feb. 13, 2014).........................................................15

<u>Brown v. City of New York</u>,
    798 F.3d 94 (2d Cir. 2015)...............................................................................18

<u>Cabisca v. Hogg</u>,
    2020 WL 4390700 (W.D.N.Y. July 31, 2020) ...............................................18

<u>Callahan v. County of Suffolk</u>,
    602 F. Supp. 3d 399 (E.D.N.Y. 2022).............................................................12

<u>Carroll v. Krumpter</u>,
    397 F. Supp. 3d 234 (E.D.N.Y. 2019).............................................................13

<u>Cole v. Rogers</u>,
    2017 WL 1155002 (E.D.N.Y. 2017) ..................................................................8

<u>Deorle v. Rutherford</u>,
    272 F.3d 1272 (9th Cir.2001)....................................................................17, 21

<u>Fischl v. Armitage</u>,
    128 F.3d 50 (2d Cir. 1997)...............................................................................22

<u>Fitzgerald v. Santoro</u>,
    707 F.3d 725 (7th Cir. 2013)............................................................................18

<u>Green v. Town of E. Haven</u>,
    2020 WL 1146687 (2d Cir. 2020).....................................................................20

<u>Grier v. Chu</u>,
    2012 WL 4108106 (S.D.N.Y. 2012) ................................................................22

iii

Heien v. North Carolina,
    574 U.S. 54 (2014)........................................................................10

In re Fosamax Products Liab. Litig.,
    688 F. Supp. 2d 259 (S.D.N.Y. 2010)............................................13

James v. City of Wilkes-Barre,
    2015 WL 4951826 (M.D. Pa. 2015)...............................................21

Jones v. Treubig,
    963 F. 3d 214 (2d Cir. 2020)..........................................................12

Kerman v. City of New York,
    261 F.3d 229 (2d Cir. 2001)...........................................................16

Kerman v. City of New York,
    374 F.3d 93 (2d Cir. 2004).............................................................13

Lespron v. Tutor Time Learning Ctr., LLC,
    550 Fed. Appx. 509 (9th Cir. 2013)...............................................24

Lucente v. County of Suffolk,
    980 F.3d 284 (2d Cir. 2020)...........................................................22

Mario v. P & C Food Markets, Inc.,
    313 F.3d 758 (2d Cir. 2002)...................................................2, 5, 6

Monasky v. Taglieri,
    140 S. Ct. 719 (2020)......................................................................5

Nationwide Mut. Fire Ins. Co. v. Almco, Ltd.,
    179 F. Supp. 3d 97 (D.D.C. 2016).................................................15

Negron v. City of New York,
    976 F. Supp. 2d 360 (E.D.N.Y. 2013)............................................17

Outlaw v. City of Hartford,
    884 F.3d 351 (2d Cir. 2018)...........................................................13

iv

Proctor v. LeClaire,
    846 F.3d 597 (2d Cir. 2017).......................................................................21, 25

Ramgoolie v. Ramgoolie,
    2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018)............................................... 4-5

Roberts v. Genting New York LLC,
    68 F.4th 81 (2d Cir. 2023)..............................................................................25

Saucier v. Katz,
    533 U.S. 194 (2001).......................................................................................10

Schoolcraft v. City of New York,
    103 F. Supp. 3d 465 (S.D.N.Y. 2015)............................................................21

Small v. Sec. of Health and Human Services,
    892 F.2d 15 (2d Cir. 1989)...............................................................................1

Spence v. Superintendent, Great Meadow Correctional Facility,
    219 F.3d 162 (2d Cir. 2000)..............................................................................4

Stephenson v. Doe,
    332 F.3d 68 (2d Cir. 2003).......................................................................10, 13

Taylor v. Union P. R.R. Co., Inc.,
    2021 WL 952410 (M.D. La. Mar. 12, 2021) ..................................................15

Thomas v. Arn,
    474 U.S. 140 (1985).........................................................................................4

Triolo v. Nassau County,
    24 F.4th 98 (2d Cir. 2022) .............................................................................12

U.S. v. Male Juv. (95-CR-1074),
    121 F.3d 34 (2d Cir. 1997)......................................................................2, 6, 9

Vogel v. Chipman,
    2009 WL 185663 (E.D. Mich. Jan. 23, 2009) ..............................................21

Warren v. Dwyer,
      906 F.2d 70 (2d Cir. 1990)........................................................ 12-13

Wernick v. Fed. Reserve Bank of New York,
      91 F.3d 379 (2d Cir. 1996)...........................................................14

Wright v. Duncan,
      31 F. Supp. 3d 378 (N.D.N.Y. 2011),
      aff'd, 500 Fed. Appx. 36 (2d Cir. 2012)..........................................4

Zellner v. Summerlin,
      494 F.3d 344 ............................................................................13

Zervos v. Verizon New York, Inc.,
      252 F.3d 163 (2d Cir. 2001).......................................................4, 8

**Rules, Laws & Statutes:**

New York Mental Hygiene Law § 22.09(b)(2)..................................12, 23

## **PRELIMINARY STATEMENT**

Defendants-Appellees' defense of the district court's dismissal of plaintiff's claims relies almost exclusively on the improper resolution of factual disputes and the refusal to acknowledge opposing inferences favoring plaintiff. Similarly, much like the district court's analysis, defendants' arguments are dependent on wholesale mischaracterizations and editorializations of the factual record. In sum, both defendants' opposition brief and the decisions below are premised on the erroneous belief that dismissal is warranted as long as there is *any* version of the evidence reasonably favoring *defendants*. However, as set forth in plaintiff's opening brief and again herein, this inversion of the summary judgment standard was error and requires reversal.

## **ARGUMENT**

## I. **DEFENDANTS CANNOT MANIPULATE THE STANDARD OF REVIEW TO SELECTIVELY PRESS THEIR CLAIM OF WAIVER**

It is well settled that the "failure to object timely to a magistrate's report operates as a waiver of *any* further judicial review of the magistrate's decision." Small v. Sec. of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989)(emphasis added).[1] Notwithstanding, this Circuit has "disregard[ed] the procedural default rule and reach[ed] the merits" in situations where the "purposes

---

[1] Unless otherwise designated, all case quotations herein adopt the alterations contained therein and omit all parallel citations, footnotes, and internal quotation marks.

1

of the waiver rule are not advanced" and the "record indicates that the district court made a *de novo* determination of the Report and Recommendation." U.S. v. Male Juv. (95-CR-1074), 121 F.3d 34, 39 (2d Cir. 1997)(alteration added). Here, there is no question that neither party objected to the magistrate's R&R, and thus, under normal circumstances, *both* parties would have waived judicial review of any of the claims (i.e., false arrest *and* excessive force). However, because the district court decided, *sua sponte*, to "review[] the record" de novo (JA1405), waiver is inappropriate in this case and *all* claims are reviewable. See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002).

Nevertheless, defendants argue that waiver should be applied *exclusively* to plaintiff's false arrest claim. Specifically, although their opposition concedes that de novo review "certainly" occurred (Appellees' Opposition Brief ("Opp. Br.") at 43-44), they conveniently assert that de novo review *only* occurred on the claims/arguments to which *plaintiff* issued no objection, but *not* on the claims/arguments to which *defendants* failed to object. In other words, they urge this Court to apply waiver *solely* on plaintiff's false arrest arguments, but *not* on their own arguments related to the *constitutionality* of the force used by Cheema. As discussed below, this attempt to bifurcate the district court's decision into portions that did, and did not, conduct de novo review must fail.

2

**A.** **Both Logic and the Language of the District Court's Decision Support the Reviewability of All Claims in this Case**

Predictably, defendants aver that the court "accepted [the false arrest] recommendation *without* de novo review." (Opp. Br. at 43). According to defendants, this conclusion is derived from: 1) the courts "adopt[ion] [of] the R&R as to the false arrest claim;" 2) the decision's "express[] defer[ence] to the magistrate's recitation of the facts pertaining to that claim;" 3) "[its] clarify[cation] that recommendations to which neither party objects are subject to clear error review"; and, 4) "[its] explan[ation] that the court was free to review any part of the case 'anew.'" (Id.). These arguments all ring hollow.

**i.** ***The District Court's Review of the Entire Record and the Absence of Any Express Indicia of Partial Review Militate Against Waiver***

As a preliminary matter, conspicuously absent from the decision is any express indication that different standards of review were applied to different claims. Obviously, had the court intended there to be such a delineation – as defendants contend – it could have easily done so unequivocally, but it did not. By contrast, the very first sentence of the court's substantive opinion explicitly states that the decision was only reached after "having *reviewed the record*" (JA1405) – not *part* of the record, not the record pertaining *only* to excessive force or qualified immunity, but rather the "record" as a whole.

Moreover, this express statement by the court of "having reviewed the record" (id.) smacks of the de novo review standard, "which requires, inter alia, an examination of the *entire* record." Wright v. Duncan, 31 F. Supp. 3d 378, 406 (N.D.N.Y. 2011), aff'd, 500 Fed. Appx. 36 (2d Cir. 2012)(emphasis added). This is especially true given that the district court in this case was under no obligation to conduct *any* review in the absence of any objection. See, e.g., Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000)("Failure to timely object to a report generally waives any further judicial review); Almonte v. New York State Div. of Parole, 2006 WL 149049, at *3 (N.D.N.Y. Jan. 18, 2006)(recognizing that where, as here, there are no objections, the parties are "entitled to *no judicial review whatsoever*.") (emphasis added). Indeed, despite defendants' contentions, the rules "do[] not require that the district court review the magistrate's report under some *lesser* standard than *de novo* review when no objection is filed." Thomas v. Arn, 474 U.S. 140, 141 (1985)(emphasis added). However, even if it did, clear error is "a *deferential* standard of review" in any event (Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001)) where the court can simply *accept* the findings of the magistrate "on the *face* of the record" (Ramgoolie v. Ramgoolie, 2018 WL 4266015, at *3 (S.D.N.Y. Sept. 6,

4

2018)(emphasis added)), thereby obviating the need for the scope of record review signaled by the court's statement in this case.[2]

Accordingly, the court's review of a record that it was under no obligation to review, the inferences to be drawn from its explicit statements as to the scope of its review, and its silence on any purported divergence in standards of review for particular claims clearly contradicts defendants' arguments for the selective application of waiver in this case.

### ii.    The Decision's Acceptance of the R&R's Conclusion on False Arrest Is Not Indicative of a Lower Standard of Review

Defendants assert that the court's adoption of the magistrate's recommendation as to the false arrest claim is somehow proof that de novo review was not applied to that claim. However, in <u>Mario,</u> this Circuit disregarded the waiver rules under the same circumstances. <u>Id</u>. at 766. Specifically, although the lower court's decision in that case "did not undertake a searching examination [plaintiff's] Title VII claim" and indicated only "briefly, its agreement with the magistrate on the

---

[2] In addition, even the court's adoption of the R&R as to the false arrest claim bespeaks the de novo review standard. Specifically, as the Supreme Court has acknowledged, "[g]enerally, questions of law are reviewed *de novo* and questions of fact, for clear error." <u>Monasky v. Taglieri,</u> 140 S. Ct. 719, 730 (2020). Here, the court concluded that "[s]ummary judgment [wa]s warranted on [the] false-arrest claim, [] for the *reasons* set out in the R&R." (JA1405). As such, it is only logical to conclude that the "reasons" to which the district court was referring included *all* of the "reasons set out in the R&R" – both factual *and* legal. A fortiori, since clear error review would *not* have entailed a review of the *legal* reasons for dismissal, it follows that the district court's statement suggests that its review of the false arrest claim was, in fact, de novo.

merits," this Court rejected the application of waiver because "it [wa]s *not clear* that it considered the claim waived." Id. (alteration added)(emphasis added). Similarly, in Male Juv. (95-CR-1074), this Court refused to apply waiver to *any* aspect of the confession issue even though the district court's decision "accepted one part of the magistrate's analysis while rejecting other parts." Id. at 39. In other words, the application of waiver should not be determined based solely on the scarcity of the court's analysis, but instead upon whether or not it appears from the decision that the court "considered the claim waived." Mario, 313 F.3d at 766; Male Juv. (95-CR-1074), 121 F.3d at 39.

Here, given the court's *sua sponte* review and its explicit acknowledgment of its review of the entire record, it seems rather apparent that the court did not consider *any* claim waived in this case. Likewise, the court's terse agreement on the false arrest claim does not dictate a contrary result. Indeed, given the court's explicit statement that the reasons why it concluded "[s]ummary judgment [wa]s warranted on Singh's false-arrest claim," were "the *reasons* set out in the R&R" (JA1405), it would seem to make little sense for the court to redundantly rehash the magistrate's analysis again. As such, the brevity of the court's agreement with the dismissal of Singh's false arrest claim is not dispositive of waiver.

### iii.   The Other Reasons Proffered By Defendants Depend on Semantic Omission and Distortion

On page 43 of defendants' brief, they provide a list of reasons in support of their argument in favor of bifurcated standards of review, none of which hold water. First, the court's decision did *not* – as defendants suggest – give "express[] defer[ence] to the magistrate's recitation of the facts pertaining to [the false arrest] claim."[3] (Opp. Br. at 43). Rather, the court stated that "[t]he R&R capably set[] out the factual background" (JA1405) without reference to *any* specific claim(s). In fact, the court was explicit that the *only* purpose of restating any facts at all was to "*recite certain key facts underlying*" its qualified immunity discussion. (Id.).  As such, since the court was merely parroting the R&R's factual record for purposes of its qualified immunity analysis and not, as defendants contend, recasting a new record unique to the excessive force claim, defendants' argument fails.

Second, defendants' assertion that the court's mere utterance of the clear error standard, or its "explain[ation] that the court was free to review any part of the case anew" is somehow proof of the *utilization* of the clear error standard is equally misleading. In particular, while the court *referenced* clear error review, it was prefaced by the phrase "generally speaking" and immediately followed by the word

---

[3] A comparison of the district court's recitation of the facts with those contained in the R&R is virtually indistinguishable. Accordingly, while the district court's legal analysis only expounded on the issue of qualified immunity, it is apparent that the court reviewed the entire factual record in this case related to all claims.

"nevertheless" (JA1409-10), which is a contrast transition[4] indicating the use of a standard *contrary* to the general rule. Likewise, in the very next sentence, the court admonished that it was giving the R&R "no presumptive weight" (id.), which is certainly antithetical to the "*deferential* standard of review" clear error is recognized to be. Zervos, 252 F.3d at 168. Third, and perhaps most telling, although defendants make much of the court's statement that it was "free to review the case in whole or in part anew," they conveniently omit the footnote attached to that sentence, which quotes Cole v. Rogers, 2017 WL 1155002, at *1 (E.D.N.Y. 2017) for the proposition that the court could "conduct[] a *de novo* review of the R&R in an abundance of caution" even though "the parties ha[d] waived any objections to the R&R." Id.; (JA1410). Lastly, the court's reference to its ability to "'accept, reject, or modify' any recommendation" is lifted directly from the language of Rule 72(b)(3) itself, which actually mandates de novo review, and thus only further erodes the premise of defendants' position.

In the end, if the standard to determine waiver truly is – as this Court has indicated – based on considerations of whether the district court would be "sandbagged" by appellate review and/or whether the district court "considered the

---

[4] Merriam Webster defines "Contrast Transitions" as a "[w]ords that mean[s] 'contrary to what was just stated'" and "includes *however, nevertheless*, and *nonetheless*." See MERRIAM WEBSTER ONLINE DICTIONARY, available at https://www.merriam-webster.com/grammar/transition-words-list (last visited August 6, 2023)

claims waived" (<u>Mario</u>; <u>Male Juvenile</u>, <u>supra</u>), then there is no question based on the extent of the court's review of the record that waiver is inapplicable in this case.

**B.    Defendants Cannot Simultaneously Claim that Review of the False Arrest Claim is Precluded While Arguing Issues Related to the _Constitutionality_ of the Use of Force**

Perhaps the most troubling aspect of defendants' waiver argument is that they make no attempt to hold themselves to the same standard. While proclaiming the lack of detailed analysis on false arrest is proof of a lesser standard of review on that claim, defendants seemingly have no problem with the decision's lack of analysis on the _constitutional_ question of excessive force. Specifically, while the R&R denied summary judgment on _both_ the question of reasonableness _and_ qualified immunity (JA1394; 1401), the district court _never_ addressed the former. Instead, "[a]s [it] detailed" the court found dismissal appropriate _solely_ "because no clearly established law prohibited the force [Cheema] applied." (JA1405). Not only is the second paragraph of the court's decision explicit in listing qualified immunity as the _only_ basis for dismissal (<u>id</u>.), but at the end of its analysis the court again reiterates that dismissal was warranted because "no reasonable jury could find Cheema liable over a _qualified immunity_ defense." (JA1426). If that was not enough, the court's sermon regarding the "robust debate underway" over "the origins and application" of qualified immunity and the need for courts to "take the law of qualified immunity

as they find it" (JA1427-28) renders the sole basis for court's decision beyond debate.

Accordingly, it would not only be illogical but also palpably unfair under the circumstances to apply waiver to false arrest solely based on the lack of *in-depth* analysis while allowing defendants to argue the issue of reasonableness[5] when they never objected to the R&R and the decision is similarly devoid of any discussion of that issue. In sum, if the waiver rule is founded on an effort to prevent the inequitable sandbagging of a district court, it should likewise not be used to sandbag plaintiff in the same fashion.

## II. DEFENDANTS' OPPOSITION PROVIDES NO BASIS TO APPLY STATE LAW QUALIFIED IMMUNITY TO THE CITY

According to Defendants, "[b]ecause Singh's excessive force claim fails as a matter of law, his state law assault and battery claims also necessarily fail." (Opp. Br. at 53). However, this contention is fundamentally flawed and fails to address the actual basis for the court's dismissal of plaintiff's state law claims.

---

[5] While defendants attempt to disguise their arguments related to the constitutionality of the force as "step one" of the qualified immunity analysis, the Supreme Court and this Circuit have repeatedly recognized that "qualified immunity [] depends on an inquiry distinct from whether an officer has committed a constitutional violation." Heien v. North Carolina, 574 U.S. 54, 63 (2014); Saucier v. Katz, 533 U.S. 194, 195 (2001)("the immunity and excessive force inquiries remain distinct….*Graham* sets forth factors relevant to the merits of a constitutional excessive force claim…[t]he qualified immunity inquiry's concern, on the other hand, is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct"); Stephenson v. Doe, 332 F.3d 68, 78 (2d Cir. 2003).

**A. Defendants' Argument Rests on a False Premise Underlying the District Court's Dismissal of the State Law Claims**

Defendants assert that Singh has "ignore[d] the truism" that the "essential elements of excessive force and [] state law assault and battery claims are substantially identical." (Id.). In other words, according to defendants, "[s]ince Officer Cheema's conduct did not constitute excessive force under the Fourth Amendment, neither did it constitute an assault or battery under state law," and as such, Singh "can't have a viable claim against the City under the doctrine of respondeat superior." (Id. at 53-54).

However, defendants' argument evaporates under the *truism* that the court's decision to dismiss the federal excessive force claim was *not* based on the reasonableness of the force. Rather, it is an immutable fact that the court's federal analysis was based *solely* on the issue of qualified immunity. Not only was this made abundantly clear throughout the court's decision on the federal claim, but it was repeated in its discussion of plaintiff's state law claims – namely, that "[g]iven [the court's] analysis on the excessive force claim…*qualified immunity* applies to the battery claim too." (JA1427). Indeed, the entire assault and battery section of the decision is devoted to a discussion of New York state's "analogue" to qualified immunity. (JA1426-27).

Therefore, plaintiff does not quibble with the similarities between the reasonableness analysis of excessive force under federal law and state law assault

and battery, but rather with defendants' unwillingness or inability to comprehend the nature of court's dismissal. Simply put, defendants' argument utterly fails to address the real error committed by the district court – namely, that individual immunity under federal law "does not somehow transfer to [the] municipal employer" under state law. Triolo v. Nassau County, 24 F.4th 98, 110 (2d Cir. 2022). Therefore, because the court did not dismiss the excessive force claim on the issue of reasonableness, the "state law claim of assault and battery against the [City] is alive due to the potential for vicarious liability for actions of its police officers as its employees" and reversal is mandated. Callahan v. County of Suffolk, 602 F. Supp. 3d 399, 414 (E.D.N.Y. 2022).

## III. SUMMARY JUDGMENT CANNOT BE SUSTAINED BASED ON A ONE-SIDED VIEW OF THE EVIDENCE FAVORING DEFENDANTS

Because plaintiff's seizure was pursuant to New York Mental Hygiene Law ("NYMHL") § 22.09(b)(2), the facts establishing the alleged reasonableness of Cheema's belief that plaintiff was incapacitated to a degree that made him a danger to himself or others, and the evidence establishing the reasonableness of his belief regarding the necessity of force largely overlap. However, one of the critical errors committed by the district court was its failure to recognize that "disputed material issues regarding the reasonableness of an officer's *perception of the facts* (whether mistaken or not) is the province of the *jury*," and not the court. Jones v. Treubig, 963 F. 3d 214, 226-27 (2d Cir. 2020)(emphasis added); Warren v. Dwyer, 906 F.2d 70,

77 (2d Cir. 1990)(Winter, J., dissenting)( "the finding of those facts" is squarely "a matter for the *jury*")(emphasis added); <u>Zellner</u>, 494 F.3d at 368 (same); <u>Outlaw</u>, 884 F.3d at 367 (same); <u>Kerman v. City of New York</u>, 374 F.3d 93, 109 (2d Cir. 2004); <u>Stephenson v. Doe</u>, 332 F.3d 68, 81 (2d Cir. 2003)(same). Indeed, it is only "[*a]fter* the factfinder's deci[sion as to] what the facts were that the officer faced or perceived," that it becomes appropriate for the court to "*then* [] make the ultimate legal determination of whether qualified immunity attaches on those facts." <u>Outlaw v. City of Hartford</u>, 884 F.3d 351, 367 (2d Cir. 2018)(emphasis added)(alteration added).

As such, while defendants' brief suggests that the lower court's decision can be upheld as long as the conclusions drawn by Cheema were deemed reasonable, this is not enough. Rather, defendants must establish "that th[ese] [were the] *only* reasonable conclusion[s] the trier of fact could draw from the record evidence." <u>In re Fosamax Products Liab. Litig.</u>, 688 F. Supp. 2d 259, 266 (S.D.N.Y. 2010)(alteration added). Stated differently, defendants must establish that "no reasonable trier of fact could find in favor of [plaintiff]." <u>Carroll v. Krumpter</u>, 397 F. Supp. 3d 234, 242–43 (E.D.N.Y. 2019)(alteration added). Accordingly, "[i]f a jury reasonably could have found" that Cheema's perception of the facts on those issues was not reasonable, "it was *error* for the district court to hold that, as a matter of law," probable cause existed, the use of force was justified, and/or that Cheema was

entitled to qualified immunity. <u>Wernick v. Fed. Reserve Bank of New York</u>, 91 F.3d

379, 383 (2d Cir. 1996)(emphasis added).

## A. Material Factual Disputes Cannot Simply be Editorialized Away in Order to Justify Dismissal

In support of their argument that Cheema's act of violently slamming plaintiff

to the ground without warning was reasonable (or reasonably mistaken) based on

Cheema's perception of events, defendants repeat some version of the following

arguments throughout their brief,

- "Officer Cheema reacted reasonably to Singh's sudden, unexpected movement towards his partner" (Opp. Br. at 26);

- "from [the officer's] perspective," Singh had, through his sudden movements, "appeared to fail to comply" with Officer Cheema's efforts to safely escort him to the hospital" (<u>id</u> at 27);

- "a reasonable officer could have perceived Singh's movement as a threat, an attempt at flight, resistance to the police, or any combination of these possibilities." (<u>Id</u>. at 40).

While a factfinder could arguably find these perceptions to be reasonable based on

the evidence in this case, none of them can be established *beyond dispute*.

### i. *Cheema's Perception of Plaintiff's Movements Near the Door Is Not the Only Reasonable Perception of the Facts*

Both defendants' brief and the court's decision are replete with modifying

words and phrases like "sudden," "unexpected," and "towards his partner" (Opp. Br.

at 1-49; JA1388-1426), which are used in an attempt to color the factual record.

However, the "adjectives that [they] choose to use in describing the [facts] in this

14

case *are not facts*." <u>Ambrose v. J.B. Hunt Transport, Inc.</u>, 2014 WL 585376, at *6 (D. Or. Feb. 13, 2014)(alteration added)(emphasis added). More importantly, "[a]n excess of adjectives cannot cure an absence of evidence" or resolve opposing inferences and factual disputes. <u>Nationwide Mut. Fire Ins. Co. v. Almco, Ltd.</u>, 179 F. Supp. 3d 97, 106 (D.D.C. 2016); <u>Taylor v. Union P. R.R. Co., Inc.</u>, 2021 WL 952410, at *9 (M.D. La. Mar. 12, 2021)("these adjectives are inherently subjective and…would likely require credibility determinations that are, of course, prohibited at the summary judgment stage.").

For example, a reasonable jury might find Cheema's perception regarding the "sudden[ness]" or "unexpected" nature of plaintiff's step to be belied by Cheema's stated goal during his interaction with plaintiff. Specifically, a reasonable factfinder might question how Cheema could possibly claim that it was "sudden" or "unexpected" for plaintiff to take a step towards the door when that is precisely what Cheema had been trying to convince him to do the entire time. To be sure, the video undisputedly shows the Officers opening the door – and holding it open – for this exact purpose. (JA119).[6]

---

[6] The video does not show this step to be sudden in the sense of being quick, hurried, or fast, but instead it appears to be a sauntering movement after plaintiff leans back to speak with Cheema. (<u>Id</u>.). Thus, it seems that both defendants and the court have used the terms sudden and unexpected synonymously.

Similarly, a reasonable jury could find – based on Cheema's own testimony – that his perception of plaintiff's step as one "towards his partner," was also unreasonable compared to the equally reasonable inference that this step was instead simply *towards the open door*.[7] (JA551)("Q. Officer Walker was in the same direction as the doorway? A. Correct."). This is especially true given that, according to defendants, the purpose of the entire encounter was to "solicit voluntary cooperation" (Opp. br. at 34) in order to get plaintiff out the door and to the hospital. A reasonable factfinder could also conclude this innocuous view of the facts to be supported by the video, which even Cheema suggested appears to contradict his stated belief (JA119; JA551), or by the impressions of the *other* officers on the scene, who did not share Cheema's perception of plaintiff's step. (JA700; JA839). Likewise, a reasonable jury could also find this conclusion bolstered by the entries in Cheema's own paperwork, which contradict his stated belief that plaintiff had stepped towards his partner in a threatening manner.

| |
|---|
| (Check all that apply) |
| *"*Attem. Physical Harm to Others: ***No****"* |
| *"*Physically Threatened Others: ***No****"* (JA120-21) |

Ultimately, the point is not that the inferences made by the court were unreasonable, but simply to highlight that there were *other* reasonable inferences to

---

[7] Even Judge Komittee found it possible to reasonably perceive Singh's step as toward the open door (JA1419), notwithstanding that he ultimately shaded this inference to favor defendants by labeling plaintiff's intent as one of "flight." (Id.).

be drawn from the facts, including ones that *favored* plaintiff which the court ignored – like the inference that plaintiff's first step was toward the open door in order to go to the hospital as he had been instructed and solicited to do by Cheema.

### ii. *Defendants' Mollifying Description of the Force Used by Cheema Cannot Resolve This Factual Issue*

Defendants' opposition is also peppered with similar modifying words and phrases describing Cheema's full body suplex of plaintiff. Notably, that

- "no reasonable juror could conclude that Officer Cheema's conduct during the momentary take-down maneuver amounted to excessive force," (id. at 24); and,

- "an officer's use of force is not excessive when the officer acts in response to a sudden, threatening move in tense circumstances, and employs only a modest, momentary degree of force." (Id. at 39).

First, the fact that it took only a "moment" for Cheema to pick up the diminutive Singh and body-slam him to the ground is certainly not dispositive of the reasonableness of the force. See, e.g., Negron v. City of New York, 976 F. Supp. 2d 360, 369 (E.D.N.Y. 2013)(citing Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir.2001)("even a legitimate desire to resolve quickly a potentially dangerous situation is not the type of government interest that, standing alone, justifies the use of force."). Second, defendants' one-sided characterization of the force as "modest" is equally unhelpful, as determining "the degree of force actually employed" is clearly a factual question for a jury. Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001). Indeed, being power-slammed by Cheema's nearly 300-pound frame

surely did not feel "modest" to plaintiff who was ultimately forced to undergo surgery as a result.

Equally dubious is defendants' classification of the force used by Cheema as a "take down maneuver" or "arm bar." (Opp. Br. at 28-29). Specifically, an arm bar is a controlled technique used to "'*guid[e] or escort[]*'" a suspect to the ground (Cabisca v. Hogg, 2020 WL 4390700, at *6 (W.D.N.Y. July 31, 2020)), and utilizes pressure points along the subjects' wrist and elbow to do so. See Fitzgerald v. Santoro, 707 F.3d 725, 729 (7th Cir. 2013). This was no arm bar, let alone a maneuver of any kind apart from brute force, and a reasonable jury could easily conclude that a variety of far less aggressive techniques and measures could have been employed given the situation. See e.g., Brown v. City of New York, 798 F.3d 94, 102–03 (2d Cir. 2015)("the availability of a much less aggressive technique is at least relevant to making the ultimate determination of whether excessive force was used.").

### B.   It Is Improper to Weigh Competing Proof and Refuse to Consider Evidence Favorable to Plaintiff on Summary Judgment

Apart from their attempts to resolve factual disputes through the use of adjectives and adverbs, many of defendants' arguments – much like the lower court's analysis – simply ignore any evidence, or inferences drawn therefrom, not favoring defendants. For instance, defendants claim that Cheema's perception of Singh's incapacitation, intoxication, and dangerousness were all reasonable because,

18

- "Officer Cheema *knew* that Singh was intoxicated, that he had been uncooperative with EMTs and the police, and that the EMTs had concerns for their safety due to Singh's behavior" (Opp. Br. at 26); and,

- "[w]hen the officer arrived, he *talked* to the EMTs, and *learned* that Singh was being uncooperative with them to the point that they felt unsafe Singh's mere speculation that this conversation never occurred can't overcome Officer Cheema's sworn testimony." (Id. at 31).

However, every one of these assertions/conclusions is predicated on Cheema's awareness of the EMT's concerns or opinions in the first place, a disputed fact that defendants and the lower court improperly seek to rewrite.

### i. Cheema's Testimony about his Conversation with EMTs Cannot be Accepted in the Face of Contrary Evidence

As defendants' opposition implicitly concedes, if a reasonable jury could find from the evidence that Cheema was unaware of the EMT's concerns or opinions, there would be no basis upon which to establish the reasonableness of Cheema's conclusions beyond doubt. (Opp. Br. at 48-49):

- "all that is needed is that the EMTs *"communicated to [Officer Cheema]* a message that he could have reasonably understood as their expression of their professional judgment that Singh should be detained."[8]

However, this issue is squarely disputed in this case. In particular, the EMTs have no recollection of having any conversation with Cheema or any other police

---

[8] In light of the vagaries of the EMT's descriptions (referenced in Footnote 9), plaintiff would disagree that this was "all that [wa]s needed," but the information provided by the EMTs is certainly relevant to the reasonableness and probable cause determinations especially where, as here, there is evidence that no specific information was ever communicated to Cheema.

officers. (JA932). Further, Cheema admitted that he received no specific information other than "intox male" from the radio run or 911 call. (JA453). Additionally, Cheema admitted that he never saw the EMT's paperwork that contained their observations and opinions. (JA496). Moreover, he testified that he *only* spoke with the EMTs *after* entering the apartment (JA450) and that the conversation with the EMTs happened *first* upon entering. (JA454). However, where a reasonable jury might expect the video to depict something appearing to be a conversation between Cheema and some EMS worker, there is absolutely nothing, which obviously leads to the inference that no such conversation occurred. (JA119). Indeed, the reasonableness of this conclusion is demonstrated by EMT Milonas who, after viewing the video, was all but certain that the conversation Cheema alleged *did not take place*.

> Q.   Based on the video, from the time that the officers entered until now, the one minute mark, can you tell whether or not you've spoken to the officers?
> A.   I saw my face turn towards them, *but I don't think I spoke to them, from what I see*. (JA931).

And, while defendants claim that this evidence "can't overcome Officer Cheema's sworn testimony" (Opp. Br. at 31), that contention is meritless as "the court's job [i]s not to weigh the evidence" on summary judgment. Green v. Town of E. Haven, 2020 WL 1146687 (2d Cir. 2020)(alteration added). "[A]ll that is required" of plaintiff is to "produce[] evidence to raise a fair question" about this

conversation, which the video and Milonas's testimony certainly do. (Proctor v. LeClaire, 846 F.3d 597, 614 (2d Cir. 2017). Accordingly, given the clear dispute regarding what, if any, information was ever communicated to Cheema by the EMTs, none of their assessments can establish the propriety of the court's decision on summary judgment.[9] See, e.g., Schoolcraft v. City of New York, 103 F. Supp. 3d 465, 501–02 (S.D.N.Y. 2015):

> City Defendants contend Dr. Lamstein informed Captain Lauterborn that he "absolutely needed' to find Plaintiff and 'make sure that he was ok," thus satisfying the objective reasonableness of [the seizure]. However, whether Dr. Lamstein actually made this statement to Captain Lauterborn is plainly in dispute…Dr. Lamstein's deposition transcript does not establish that she made those statements, and…Dr. Lamstein's recollection and her earlier deposition testimony arguably conflict. Therefore, Dr. Lamstein's warning cannot serve as a basis for City Defendants' motion for summary judgment.

> Id. (alteration added).

---

[9] In any event, it should be noted that the only information alleged by the EMTs were the nondescript allegations that plaintiff was "non cooperative with unit questioning," that he "became aggressive with crew [and that] began yelling profanities and belligerently approaching crew." (JA116-118). However, not only does plaintiff, his wife, and the video footage directly dispute those allegations, without "facts that would have justified [this] fear," such "vague suspicions" and "generalized concerns, standing alone, cannot justify the use of force." Winterrowd v. Nelson, 480 F.3d 1181, 1185 (9th Cir. 2007(altered from original); accord Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001)("a simple statement by an officer that he fears for his safety, or the safety of others is not enough; there must be objective factors to justify such a concern."). Likewise, these facts also do not move the needle on the reasonableness of Cheema's perception as to the necessity of force because "intoxication alone, or even if *accompanied by verbal obstinacy*, does not necessarily justify the degree of force." Vogel v. Chipman, 2009 WL 185663, at *8 (E.D. Mich. Jan. 23, 2009)(emphasis added). And "[a] reasonable officer would not have committed an individual who was merely intoxicated but not exhibiting any *extraordinary* symptoms that demonstrate a willingness or capability to hurt oneself." James v. City of Wilkes-Barre, 2015 WL 4951826, at *9 (M.D. Pa. 2015).

### ii. Innocent Explanations CANNOT Resolve Conflicts Within the EMT and Police Paperwork at this Stage

Defendants allege that Cheema's assessment of the threat or danger posed by plaintiff, as well as his mental capacity, were reasonable because,

- "multiple third parties assessed Singh as in need of medical evaluation, corroborating Officer Cheema's observations…[and] the EMTs and Officer Cheema assessed a significant likelihood that Singh could cause harm to himself or others." (Opp. Br. at 46-47).

However, setting aside the conflicts mentioned above regarding whether, and to what degree, Cheema and the EMTs *actually* communicated, defendants' contentions are nevertheless completely detached from the summary judgment standard. For starters, plaintiff and his wife both dispute that he was aggressive, belligerent, or incapable of making rational decisions. (JA263; JA345-46; JA237; JA1114; JA1121; JA1136). Accordingly, "[t]his dueling testimony establishes a genuine dispute regarding [this] fact" (Grier v. Chu, 2012 WL 4108106, at *7 (S.D.N.Y. 2012), and the summary judgment standard simply "does not allow [plaintiff's] testimony to be discounted in assessing whether there is sufficient proof to overcome a summary judgment motion" (Lucente v. County of Suffolk, 980 F.3d 284, 304 (2d Cir. 2020)). Indeed, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, *not for the court* on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

Second, Cheema's "own observations" (Opp. Br. at 46) are also directly contradicted by his *own* paperwork. For example, while defendants and the court simply accept Cheema's testimonial assessment of plaintiff as a threat and/or danger of harm, Cheema's paperwork indicates otherwise.

| (Check all that apply) |
| --- |
| "Attem. Physical harm to self: **No**" |
| "Placed self in dangerous situation: **No**" |
| "Spoke of harming self or others: **No**" |
| "Attem. Physical Harm to Others: **No**" |
| "Physically Threatened Others: **No**" |
| "Verbally Threatened Others: **No**" (JA120-21) |

The same is true for his assessment of plaintiff's ability to make rational decisions regarding his own care – a prerequisite for seizure under NYMHL § 22.09(b)(2). (JA120-21):

| (Check all that apply) |
| --- |
| "Unable to care for self: **No**" |

Evidence of plaintiff's cognitive and decision-making capacity can also be found within the EMT's paperwork, which gave plaintiff perfect Glasgow Coma Scores ("GCS") across the board for his alertness, his ability to communicate, and his motor function, all of which could lead a reasonable factfinder to conclude that plaintiff was not incapacitated within the meaning of the NYMHL, and consequently, that Cheemas' conclusions were unreasonable and/or unbelievable.

In response to this evidence, defendants' brief takes the astonishing position that these inconsistencies "do[] not suggest any genuine disputes of material fact" (Opp. Br. at 15), and "do[] not undermine Officer Cheema's probable cause [determination]" (id. at 50). Specifically, they contend that this Court can simply discount these conflicts because,

- "[Cheema] didn't understand the [computerized] system fully at that time… [and] the officer "ma[d]e it a point to put a narrative" with his observations where he noted that Singh was intox/combative" (id. at 15); and,

- "[a]fter all] the Glasgow Coma Scale…is not dispositive of someone's ability to refuse medical care, as EMT Milonas later explained… [and because] copious other evidence of mental incapacitation at the time [existed]." (Id. at 50).

However, although EMT Milonas may have *later* explained that a GCS score is not "dispositive of someone's ability to refuse medical care," (id.), she undeniably *also* testified that "a Glasgow Coma Score of 15, [] indicated that [Singh] had the mental capacity to refuse medical attention at that time." (JA1387; JA886-87). Likewise, "[a]lthough [d]efendants attempt to explain away [Cheema's report], a factfinder is free to accept or reject [d]efendants' explanations…[and] the fact that [Cheema] ha[s] offered shifting and questionable explanations for [his] actions precludes a grant of summary judgment." Lespron v. Tutor Time Learning Ctr., LLC, 550 Fed. Appx. 509, 510–11 (9th Cir. 2013)(alteration added).

24

Thus, while defendants would certainly love for this Court to simply accept their arguments/explanations on these disputed issues, it "is not [this Court's] role on review of a grant of summary judgment [] to weigh that evidence against the evidence favorable to [plaintiff's] claim" and "[i]t is no answer to the evidence [Singh] has amassed to point to *countervailing* evidence." <u>Proctor v. LeClaire</u>, 846 F.3d 597, 614 (2d Cir. 2017)(emphasis added)(alteration added). Rather, this Court's function is to determine "whether a fair-minded [fact-finder] could return a verdict for the [non-moving party] on the evidence presented" and not to "ask whether the evidence *unmistakably* favors one side or the other." <u>Roberts v. Genting New York LLC</u>, 68 F.4th 81, 88 (2d Cir. 2023)(emphasis added)(alteration added). Accordingly, it was error for the court to pick and choose amongst conflicting evidence, or to give defendants the tiebreaker amongst opposing reasonable inferences.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiff respectfully requests that this Court grant plaintiff's appeal in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 9, 2023

                              Respectfully submitted,

By: *<u>/s/ Joshua P. Fitch, Esq.</u>*
     JOSHUA P. FITCH
     COHEN & FITCH LLP
     Attorneys for Plaintiffs
     233 Broadway, Ste 900
     New York, New York 10279

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. I certify that this brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

This brief contains 6,241 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P 32(a)(6) because:

This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

Dated: New York, New York
August 9, 2023