MANDATE

23-24-cv
Singh v. City of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand twenty-four.

PRESENT:
      RICHARD C. WESLEY,
      JOSEPH F. BIANCO,
      EUNICE C. LEE,
          *Circuit Judges*.

---

Balwinder Singh,

    *Plaintiff-Appellant*,

v.                                                    23-24-cv

The City of New York, P.O. Mandeep Cheema, Tax Id. No. 950196, Individually and in his Official Capacity, Police Officers John Doe #1-10, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

    *Defendants-Appellees*.

---

FOR PLAINTIFF-APPELLANT:     JOSHUA P. FITCH, Cohen & Fitch LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:     AMY MCCAMPHILL (Richard Dearing, Jamison Davies, *on the brief*), *for* HON. SYLVIA O.

MANDATE ISSUED ON 03/04/2024

HINDS-RADIX, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant Balwinder Singh appeals from the judgment of the district court, denying his motion for summary judgment and granting the cross-motion for summary judgment by Defendants-Appellees the City of New York (the "City") and Police Officer Mandeep Cheema as to his claims under 42 U.S.C. § 1983, as well as the pendent claims under New York state law. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision.

This lawsuit arose from a February 28, 2018 incident at Singh's apartment in Queens, New York. Singh was intoxicated from drinking alcohol, and his wife called 911 to request that he be taken to a hospital for evaluation. Emergency Medical Technicians ("EMTs") who responded to the call deemed Singh uncooperative and requested assistance from the New York Police Department ("NYPD"). Upon arriving, three NYPD officers—Officers Mandeep Cheema, Justin Davis, and Malinda Walker—spoke with Singh, his wife, and the EMTs, and attempted to convince Singh to go voluntarily, rather than be handcuffed and forcibly removed, to the hospital. Singh chose to go voluntarily, and began to get dressed and ready himself. After Singh put on additional clothes, Officer Walker stood in front of the door and held it ajar so that Singh could walk out. As Singh began to leave with the officers, he stopped and, according to Officer Cheema, stated that

2

Officer Cheema was "going to have to handcuff [him]," briefly gesturing with his arms behind his back in a rear handcuffing position. Joint App'x at 484. As Officer Cheema began to remove his handcuffs from his belt, Singh brought his hands out from behind his back and, according to Officer Cheema, said, "I'm just joking. You're not going to handcuff me." Id. at 485. Then, as Singh turned back and took a step forward, he was forcefully taken to the ground by Officer Cheema, and was then handcuffed and transported to the hospital. Singh was never charged with any crime and alleges that he suffered an aggravation of a prior right shoulder injury and an abrasion to his face from being taken to the ground by Officer Cheema. Officer Cheema testified that he believed that his use of force was necessary because he believed that Singh had taken a "sudden step" towards Officer Walker and that the situation had become unsafe. Id. at 485. Officer Cheema denies that the use of force was the result of his impatience or annoyance with any stalling or indecision by Singh about voluntarily going to the hospital.

In his complaint, Singh asserted claims for violations of his constitutional rights against the City, NYPD Officer Cheema, and ten unnamed NYPD officers, including claims for false arrest, excessive force, and failure to intervene under Section 1983, and various pendent claims under New York state law. After discovery, Singh moved for summary judgment on his excessive force claim and defendants cross-moved for summary judgment on all claims.[1]

On June 28, 2022, the magistrate judge issued a Report and Recommendation ("R&R"), recommending that the district court (1) deny both parties' motions for summary judgment as to the excessive force claim, (2) deny defendants' motion for summary judgment as to the state law

---

[1] In connection with the summary judgment motions, Singh withdrew his Section 1983 claims for failure to intervene and his municipal liability claim against the City, as well as his state law claim for negligent hiring/retention and intentional infliction of emotional distress. Singh also does not challenge the district court's dismissal of the "John Doe" defendants.

3

assault and battery claims, and (3) grant defendants' motion for summary judgment as to the false arrest claims. Neither party objected to the R&R, and on September 30, 2022, the district court adopted the magistrate judge's recommendation in part, granting summary judgment for the defendants on Singh's false arrest claims under federal and state law. The district court, however, declined to adopt the recommendation as to the defendants' motion for summary judgment on Singh's federal excessive force and state law assault and battery claims and granted summary judgment to the defendants on those claims on the ground of qualified immunity. Singh now appeals.

We review a district court's grant of summary judgment *de novo*. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The doctrine of "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. 658, 664 (2012). Officials are "entitled to qualified immunity [when] their decision was reasonable, even if mistaken." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (per curiam). "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that

4

right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

I.   **False Arrest Claim under Section 1983**[2]

Singh argues that the district court erred in granting summary judgment in favor of Officer Cheema on the false arrest claim under Section 1983 because Officer Cheema lacked probable cause, or even arguable probable cause for purposes of qualified immunity, to involuntarily detain and transport him to the hospital under the New York Mental Hygiene Law ("NYMHL") based upon his intoxication.  As set forth below, we conclude that Officer Cheema had at least arguable probable cause to detain Singh because of a likelihood of medical harm to himself due to his intoxication and, thus, Officer Cheema was entitled to summary judgment based on qualified immunity.[3]

Probable cause is a complete defense to a constitutional claim of false arrest.  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Under the NYMHL, "[a] person who appears to be incapacitated by alcohol and/or substances to the degree that there is likelihood to result in

---

[2]  Singh did not present any arguments in his opening brief challenging the grant of summary judgment on the false arrest claim under state law.  Moreover, he did not even respond in his reply brief to Appellees' argument that he abandoned that claim.  Therefore, we conclude that Singh has abandoned that claim.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

[3]  As a threshold matter, Appellees argue that Singh waived any challenge to the dismissal of his false arrest claim by failing to object to the magistrate judge's recommendation to grant summary judgment as to that claim.  *See Mario v. P & C Food Mkts, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.").  Singh counters, *inter alia*, that the waiver rule should be disregarded because the district court conducted *de novo* review in adopting the magistrate judge's recommendation.  *See id.* ("Where a district court conducts *de novo* review of an issue that was not raised in objection to magistrate's report, this court may disregard the waiver and reach the merits.").  Although Appellees dispute whether the district court conducted *de novo* review on this claim, we need not address this issue because, even if Singh did not waive the challenge, we conclude that his challenge on the federal false arrest claim fails on the merits and, as noted above, he has abandoned any challenge to the false arrest claim under state law.

harm to the person or to others may be taken by . . . a police officer . . . to a treatment facility for purposes of receiving emergency services." N.Y. MENTAL HYG. LAW § 22.09(b)(2). A person is "incapacitated" if he or she "as a result of the use of alcohol and/or substances, is unconscious or has his or her judgment otherwise so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment." *Id.* § 22.09(a)(2). A seizure under this New York statute is subject to "the same objective reasonableness standard that is imposed by the Fourth Amendment." *Kerman v. City of New York*, 374 F.3d 93, 100 (2d Cir. 2004) (internal quotation marks and citation omitted) (interpreting NYMHL § 9.41). Therefore, "[a] warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotation marks and citation omitted).

Moreover, even if a police officer lacked probable cause, the officer is still "entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). "A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Zalaski*, 723 F.3d at 390). We analyze "the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

6

We have explained that "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Under this standard, "an 'arresting officer is entitled to qualified immunity as a matter of law [only] if the *undisputed facts* and all permissible inferences favorable to the plaintiff show that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan v. Smith*, 439 F.3d 137, 147–48 (2d Cir. 2006) (alterations adopted) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

Here, it is undisputed that Singh's wife called 911 at about 6:15 a.m., reporting that Singh drank too much and that he needed to go to a hospital.[4] Two EMTs arrived about fifteen minutes later. Although Singh's wife disputes whether she told the EMTs that he was a harm to himself, she acknowledged in her deposition that she told them he had "health issues." Joint App'x at 1113. In addition, when asked at her deposition whether she still believed that her husband needed to go to the hospital after the EMTs arrived, she responded, "Yes, absolutely." *Id*. at 1115. The EMTs similarly concluded, as reflected in contemporaneous documentation, that Singh needed medical care, that "[h]e did not have rational thinking," and that "[h]e did not fit the criteria where he was able to refuse care" as "[h]e did not have that decision[-]making capacity." *Id*. at 926. Because the EMTs determined that Singh was being uncooperative and refused to go the hospital voluntarily, they requested police assistance. Officer Cheema and his two fellow officers arrived

---

[4] Appellees note that Singh's bloodwork at the hospital demonstrated that his alcohol levels were over three times the legal limit for intoxication, more than an hour after he had been detained by Officer Cheema. However, information obtained after the arrest is not relevant to the probable cause analysis, and we do not consider that fact here. *See United States v. Martinez*, 465 F.2d 79, 81–82 (2d Cir. 1972) (per curiam).

7

at Singh's apartment shortly thereafter, and Officer Cheema learned the following about Singh from the EMTs: "That he was intoxicated. He was incoherent. He had signs of an altered mental state, and that they couldn't leave him for fear that something might happen to him if they didn't get him evaluated."[5] *Id*. at 455–56. Officer Cheema testified that his observations were consistent with the assessment of the EMTs.

Singh disputes other aspects of the record, including whether: (1) his wife reported on the 911 call that he was a harm to himself; (2) he was belligerent or aggressive during his interactions with the EMTs; and (3) Officer Cheema overheard Singh making threats towards his wife. However, even putting aside these additional facts that would have further supported probable cause, arguable probable cause existed for his detention based solely upon the above-referenced uncontroverted evidence in the record, including the information regarding Singh's condition conveyed by the EMTs to Officer Cheema and the other police officers when they arrived on the scene. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In other words, even with all reasonable inferences from the evidence

---

[5] Singh attempts to dispute that this information was conveyed to Officer Cheema by arguing that the video of the incident from his apartment security system does not clearly show Cheema speaking with the EMTs. That sheer speculation, based on a video that contains no sound, is insufficient to create a disputed fact regarding the information conveyed to the police officers at the scene by the EMTs. *See W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." (internal quotation marks and citations omitted)). Moreover, to the extent that there is some evidence in the EMTs' paperwork that indicated that Singh was "alert and oriented," that paperwork also noted that he had "periods of incoherency" and was "in an irrational state," Joint App'x at 118, and there is no indication that the police officers reviewed that paperwork. Thus, any inconsistencies in that paperwork do not undermine the uncontroverted evidence as to what was told to the officers by the EMTs upon their arrival. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of arrest and immediately before it . . . ." (internal quotation marks and citation omitted)).

drawn in Singh's favor, we conclude that "officers of reasonable competence could disagree on whether the probable cause test was met" with respect to Singh's detention under NYMHL § 22.09(b)(2). *See McClellan*, 439 F.3d at 148 (internal quotation marks and citation omitted). Accordingly, summary judgment was warranted on the false arrest claim on the ground of qualified immunity.

## II. Excessive Force Claim under Section 1983

The district court concluded that Officer Cheema was entitled to qualified immunity on the federal excessive force claim because his perception of the events was reasonable as a matter of law and no clearly established law prohibited his use of force against Singh under the circumstances. In rejecting the R&R's recommendation on this issue, the district court found that "no reasonable jury could conclude that [Officer] Cheema violated a legal obligation that was sufficiently clear that every reasonable official would have understood his conduct to violate that obligation." *Singh v. City of New York*, No. 19-CV-632(EK)(ST), 2022 WL 4596733, at *5 (E.D.N.Y. Sept. 30, 2022) (internal quotation marks and citation omitted). Singh argues, *inter alia*, that the district court erred in "conflat[ing] the factual inquiry into the reasonableness of defendant's perception of the facts with the *legal* question of the reasonableness of defendant's belief with respect to the state of the law; and, in resolving the former, the court ignored every single plaintiff-favorable fact and inference in contravention of the summary judgment standard." Appellant's Br. at 29.

As set forth below, we conclude that the district court misapplied the qualified immunity standard on the excessive force claim and erred in holding that Singh had failed to produce

9

sufficient evidence that, when construed most favorably to Singh, precluded summary judgment on the qualified immunity defense.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy*, 623 F.3d at 96. Application of this reasonableness test "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "*Graham* [] stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019). The *Graham* factors and the reasonableness of a use of force are "judged from the perspective of a reasonable officer on the scene," and we must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

As an initial matter, the district court erred in suggesting that the jury, rather than the court, decides the ultimate question as to qualified immunity. *See Singh,* 2022 WL 4596733, at *5; *see also id*. at *9 (concluding that "no reasonable jury could find Cheema liable over a qualified immunity defense"). To be sure, a jury must make a finding with respect to any disputed facts that are material to the qualified immunity analysis including, if necessary, through the use of special interrogatories at the time of the verdict. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).

However, under our precedent, "[o]nce the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *accord Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003).

Moreover, although the district court correctly noted that qualified immunity can protect mistakes by police officers as to the facts of the situation confronting them, the Supreme Court has made clear that qualified immunity only protects "reasonable mistakes." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). And, in this context, we have again emphasized that "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) is the province of the jury, while the reasonableness of an officer's view of the law is decided by the district court." *Jones v. Treubig*, 963 F.3d 214, 231 (2d Cir. 2020); *see also Stephenson*, 332 F.3d at 78 ("[A]s the Supreme Court clarified in *Saucier*, claims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity.").

Here, we conclude that the district court improperly resolved factual disputes in concluding that Officer Cheema was entitled to qualified immunity on the excessive force claim. For example, the district court found that Officer Cheema "used a single, facially reasonable maneuver to subdue a suspect who was *undisputedly resisting arrest* after a series of erratic actions (whether his intent was 'joking' or not)." *Singh,* 2022 WL 4596733, at *10 (emphasis added). However, the factual question as to whether Singh was resisting arrest was certainly disputed. Singh was never told he was under arrest and was never charged with resisting arrest. Furthermore, Officer Cheema

11

indicated in his incident report that Singh did not attempt to physically harm or threaten another person and testified in his deposition that, as to the entire incident, Singh had committed no crime. *See* Joint App'x at 571 (testifying that, at the time he brought Singh to the hospital, "there was no crime that I could think of that he could be charged with"); *see also id*. at 819 (Officer Walker testifying that Singh was not arrested or charged with any crime, and "[i]f he committed a crime, . . . he would have been arrested" for it). Indeed, Officer Davis questioned how Singh could have resisted arrest when there had been no attempt to arrest him prior to him putting his hands (jokingly, according to Singh) behind his back for a moment:

> Q. Just prior to [Singh being taken to the ground by Officer Cheema], did you believe Mr. Singh was resisting apprehension by making that maneuver [*i.e.*, putting his hands behind his back and then forward]?
>
> A. Resisting apprehension? He wasn't – before that maneuver he wasn't being apprehended so how would he resist?

Joint App'x at 749 (objection omitted).

Similarly, the district court erred in finding, as a matter of law, that "[Singh's] quick move toward Officer Walker [was] reasonably interpreted as threatening, and/or as a first step toward flight through the open door." *Singh,* 2022 WL 4596733, at *6; *see also id*. at *8 ("[T]he video shows that it was utterly reasonable for Cheema to conclude that Singh posed a risk to officer safety and a risk of flight through the open door."). Construing the evidence most favorably to Singh, including all reasonable inferences drawn from that evidence, a rational jury could find that Singh's momentary placement of his hands behind his back was done in a joking manner and that his step forward was simply a non-threatening continuation of his initial agreement to go to the hospital voluntarily with the officers, and that any perception by Officer Cheema to the contrary was not reasonable under the circumstances. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 123 (2d Cir. 2004) ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.").

We recognize that there are cases when the video evidence is so conclusive that summary judgment is warranted, even in the face of contradictory testimony and other evidence offered by a plaintiff. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the [video] record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). To the extent that the district court determined that this is one of those cases, we respectfully disagree. First, the video in this case lacks sound and, thus, does not allow a factfinder to consider the nature and tone of the exchange between Officer Cheema and Singh immediately prior to the application of force. Moreover, the vantage point of the video does not allow the factfinder to determine with pinpoint accuracy the distances between Singh and the officers at the time the force was applied and, under the totality of the circumstances, allows for fair debate about how Singh's movement would reasonably be perceived. Indeed, Singh argues that the video supports his position because, *inter alia*, Officer Davis, who had a similar vantage to Officer Cheema, did not react in the video to Singh's step forward and testified at one point in his deposition that he did not perceive Singh's movement as a danger to Officer Walker because she was "not in that proximity," Joint App'x at 700, and Officer Walker also had no visible reaction in the video to Singh's movement.

The conflicting inferences that can reasonably be drawn from the video are perhaps best illustrated by the following testimony by Officer Cheema at his deposition:

13

> Q. . . . Looking at the video from this perspective, did it appear to you that [Singh] was going to attack Officer Walker?
>
> A. Again, looking from the video, I can't say for sure. All I can say is, at that time, that's the thought that I perceived.

Joint App'x at 551 (objection omitted). In addition, although the district court found that Singh's step forward could be interpreted as a "step toward flight," *Singh,* 2022 WL 4596733, at *6, Officer Cheema never testified that he used force because he believed Singh was attempting to flee, but rather because he perceived Singh as posing a threat to Officer Walker.

We emphasize that, despite the reasonable inferences that *could* be drawn in favor of Singh, a rational jury *could* find, based on the video and all of the other evidence in the record, that Officer Cheema's assessment of the situation, including his belief that Singh's movement posed a threat to Officer Walker, was reasonable.[6] However, contrary to the district court's conclusion, a rational jury, assuming it resolved all credibility assessments and drew all reasonable inferences from the evidence *in Singh's favor* (including from the video), could find that Officer Cheema's perception of the situation (including any mistaken perception) was unreasonable under the totality of the circumstances. Thus, there is a genuine dispute of material fact that cannot be resolved by the court, but rather must be left for the jury.[7] *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."); *see also Jones,* 963 F.3d at 230 (concluding

---

[6] For that reason, Singh's cross-motion for summary judgment on the excessive force claim was properly denied.

[7] The jury also must determine whether, even if Officer Cheema's perception of the situation was objectively reasonable, the amount of force used by him was reasonable under the circumstances. *See Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (explaining that a plaintiff may prevail on an excessive force claim, even if he engaged in an initial act of aggression, "if he is able to show that [the officer] used more force than was necessary to subdue him").

14

that "[any] mistaken belief does not shield [the officer] from liability because the evidence in the record, when construed most favorably to [the plaintiff], would have allowed the jury to rationally find that [the officer's] subjective belief regarding ongoing resistance . . . was unreasonable"); *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) ("The assessment of a jury is needed in this case. Even though most of the facts concerning the application of force are undisputed, a jury will have to decide whether Fourth Amendment reasonableness was exceeded when [the plaintiff] was taken to the ground after refusing to put her hands behind her back and when officers struggled with her on the ground and used pepper spray to accomplish handcuffing.").

Finally, the factual disputes that exist at step one of the qualified immunity analysis, with respect to the reasonableness of Officer Cheema's perception of the events and his corresponding use of force, likewise preclude summary judgment at step two of that analysis, with respect to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. It was clearly established at the time of this incident in 2018 that a police officer cannot use significant force against an individual where that individual does not pose an immediate threat to the safety of others or is not actively resisting arrest or attempting to evade arrest by flight. *See Tracy*, 623 F.3d at 98–99; *see also Jones*, 963 F.3d at 225 (holding that, prior to the police incident at issue in 2015, "it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others"). Therefore, here, if a jury found that it was unreasonable at the time of the use of force for Officer Cheema to believe that Singh posed a threat to Officer Walker or anyone else, or that he was resisting arrest or fleeing, then Officer Cheema would not be entitled to qualified immunity

15

because no reasonable officer could believe under those circumstances that his use of force was lawful. Accordingly, the district court erred in concluding that Officer Cheema was entitled to qualified immunity at the summary judgment stage.

### III. State Law Claims for Assault and Battery

Singh argues that the district court also erred in granting summary judgment on his state law assault and battery claims against Officer Cheema and the City on the ground of qualified immunity. We agree.

As a threshold matter, we note that "qualified immunity is an individual affirmative defense that does not protect municipalities" and "under New York law and basic agency principles, a municipal employer is vicariously liable for the wrongs of its employee, even when the employee is individually immune, so long as the wrong was committed within the scope of employment." *Triolo v. Nassau County*, 24 F.4th 98, 110 (2d Cir. 2022). Therefore, the City can be liable under the state law theory of *respondeat superior* for the actions of Officer Cheema, and cannot rely on the doctrine of qualified immunity, even assuming that it protects Officer Cheema.[8]

The City and Officer Cheema argue, even without any reliance on qualified immunity, that they are entitled to summary judgment on the assault and battery claims because Officer Cheema's use of force was objectively reasonable and thus did not violate the Fourth Amendment. However,

---

[8] To the extent the district court may have considered these state law claims to only be asserted against Officer Cheema, and not the City, that reading of the complaint was erroneous. The complaint does not specify that those claims were only asserted against Officer Cheema. Moreover, the City did not construe the complaint in that manner before the district court, but rather treated these claims as applying to all defendants in the summary judgment motion. The magistrate judge indicated the same understanding in the R&R. *See* Joint App'x at 1398 ("Plaintiff's Complaint also alleged New York law claims for assault and battery against Defendants. Defendants move for summary judgment on the alleged assault and battery claims."). Nor does the City suggest on appeal that the assault and battery claims were not asserted against it under a *respondeat superior* theory. Thus, we treat these claims as also asserted against the City.

as we have already explained, a rational jury could find that Officer Cheema's use of force was objectively unreasonable when all the evidence is construed most favorably to Singh. Accordingly, summary judgment on this ground was similarly unwarranted in connection with the state law assault and battery claims.[9]

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[9] The City and Officer Cheema argue in the alternative that, since the federal claims did not survive summary judgment, "this Court should still dismiss the latter claims by declining to exercise supplemental jurisdiction" over the state law claims. Appellees' Br. at 54. That argument likewise fails in light of our determination that the federal excessive force claim survives summary judgment.